## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

QUILL INK BOOKS LIMITED, a foreign corporation ,

        Plaintiff,

v.

RACHELLE SOTO a/k/a ADDISON CAIN, an individual,

        Defendant.

Civil Action No. 1:19-cv-476-LO-MSN

## DEFENDANT RACHELLE SOTO A/K/A ADDISON CAIN'S BRIEF IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFF'S COMPLAINT

In support of her Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(6) and 8(a) and 12(b)(7) and 9(a) of the Federal Rules of Civil Procedure, Defendant Rachelle Soto a/k/a Addison Cain ("Ms. Cain") states as follows:

### INTRODUCTION

This lawsuit is a continuation of a case first brought by Plaintiff Quill Ink Books Limited ("Plaintiff" or "Quill") in the United States District Court for the Western District of Oklahoma, Case No. 18-CV-920-G, against Ms. Cain and ABCD Graphics and Design, Inc., d/b/a Blushing Books Publishing ("Blushing"), a publisher of Ms. Cain's books, as well as certain unidentified John and Jane Does ("Oklahoma Lawsuit"). *See* **Exhibit 1**, Amended Complaint in Oklahoma Lawsuit, filed October 17, 2018. Ms. Cain was dismissed from the Oklahoma Lawsuit because the District Court for the Western District of Oklahoma lacked personal jurisdiction over her. *See* Complaint [Dkt #1] at ¶ 79, April 18, 2019; *see also* **Exhibit 2**, Order Dismissing Soto [Dkt. #31], dated February 13, 2019. Although Blushing is still a defendant in the Oklahoma Lawsuit, such case is still in its initial stages. *Id*.

Like the Oklahoma Lawsuit, this case arises primarily out of take-down notices sent by Blushing under, 17 U.S.C. § 512 *et. seq.*, the Digital Millennium Copyright Act ("<u>DMCA</u>"), to various third-party online publishers and retailers. It is clear from the evidence attached to the Oklahoma Lawsuit and to the present Complaint that Blushing was the party that actually prepared and sent the DMCA notices. Indeed, in this action Plaintiff seeks a declaratory judgment on the rights of Blushing, seeks injunctive relief against Blushing, and alleges a civil conspiracy between Blushing and Ms. Cain despite the fact it did not actually include Blushing as a party to this action.

Although the allegations of Plaintiff's Complaint are copious, many of the allegations arise from actions taken by Zoey Ellis ("<u>Ms. Ellis</u>"), an author whose books are published by Plaintiff.  Ms. Ellis is the one who publicized on social media the fact that her books had been taken down by a few vendors as a result of notices filed under the DMCA by Blushing. While Ms. Cain does not dispute that Blushing filed DMCA notices, these private notices to a few vendors were never public knowledge until Ms. Ellis, **not** Ms. Cain, made them public.

As set forth below, filing a DMCA notice cannot give rise to the state law claims asserted by Plaintiff in this Lawsuit, including the claims for defamation, tortious interference, and civil conspiracy, because they are preempted under the DMCA. Further, Plaintiff has failed to state a claim as to tortious interference, defamation and copyright misuse. Plaintiff's declaratory judgment claim must be dismissed for failure to plead an actual case or controversy under Fed. R. Civ. P. 12(b)(1). Finally, Plaintiff has failed to join a necessary party to this Lawsuit, Blushing, and the claims must be dismissed under Fed. R. Civ. P. 12(b)(7), or alternatively, Blushing must be joined under Rule 19(a) as a required party.

## **BACKGROUND**

Ms. Cain is a USA Today and Amazon Top 25 bestselling author who resides in the State of Virginia. Ms. Cain is best known for her dark romances, including the internationally bestselling *Alpha's Claim* series ("*Alpha's Claim* Series"). Ms. Cain's *Alpha's Claim* Series includes the books entitled *Born To Be Bound: Book One, Born To Be Broken: Book Two* and *Reborn: Book Three*. These books are set in a genre commonly referred to as "Omegaverse." Ms. Cain started writing the first book in the *Alpha's Claim* Series in 2014, after reading other Omegaverse novels and finding them generally lacking male/female partnerships that she enjoyed reading the most. Her first book was published by Blushing on April 8, 2016. The other two books in the *Alpha's Claim* Series were published on June 3, 2016 and September 1, 2016, respectively. All publication and sales activities relating to Ms. Cain's *Alpha's Claim* Series have always been conducted by Blushing and other third-party publishers and retailers (e.g., Amazon). *See* Exs. 1-2 to Compl.

In 2018, Ms. Cain had several authors and fans contact her about new Omegaverse books that had been released, written by Ms. Ellis. These authors and fans told Ms. Cain that they believed Ms. Ellis' first two books entitled *Crave to Capture* and *Crave to Conquer* (with Ms. Ellis' third book in the same series entitled *Crave to Claim* referred to herein as the "*Myth of Omega* Series") copied Ms. Cain's *Alpha's Claim* Series. After reading the *Crave to Capture* and *Crave to Conquer* books herself, Ms. Cain also believed that the book copied important aspects of her own books. She discussed these concerns with her publisher, Blushing.

In April 2018, after fully analyzing and reviewing the books side-by-side, Ms. Cain believed that Ms. Ellis' first two books infringed her own. Blushing agreed, and in order to protect its and Ms. Cain's interests, Blushing sent DMCA takedown notices to third-party online

publishers and retailers, including Amazon, Barnes & Noble, Google Play, and Apple iTunes book store, requesting that they remove the books *Crave To Conquer* and *Crave To Capture* written by Ms. Ellis—and published by Plaintiff—from their platforms. In the DMCA notices, Blushing alleged that Ms. Ellis's works published by Plaintiff violated the copyright of Ms. Cain in her *Born To Be Bound* and *Born To Be Broken* books. Further, in May 2018, Blushing filed DMCA notices on Ms. Ellis' third book because Ms. Cain and Blushing believed it was a derivative work of the prior two works that copied Ms. Cain's *Alpha's Claim* Series.

After Ms. Cain was properly dismissed from the Oklahoma Lawsuit for a lack of personal jurisdiction, Plaintiff initiated this duplicative action on April 18, 2019 against Ms. Cain. Like the Oklahoma Lawsuit, Plaintiff filed this action seeking a declaratory judgment against Ms. Cain and Blushing that the publication of the *Myth of Omega* Series is lawful, injunctive relief against Ms. Cain and Blushing from bringing any lawsuit or threat against Plaintiff or its authors for copyright infringement for the publication of the *Myth of Omega* Series, and damages for alleged copyright misuse, tortious interference, defamation, and civil conspiracy for Ms. Cain and Blushing's actions. *See* Compl. [Dkt #1] Prayer for Relief. However, each of these state law claims against Ms. Cain are merely based on the same facts as the claims under the DMCA, or are merely defenses and not independent causes of actions.

Further, Plaintiff inexplicably did not include Blushing as a party to this action despite the fact that the Complaint makes numerous allegations regarding Blushing's conduct and activities related to its preparation and sending of the DMCA take-down notices. Below is a chart identifying the paragraphs of the Complaint that allege activities directly by Blushing, actions by Blushing in a conspiracy with Ms. Cain, and actions that Plaintiff disingenuously alleges against

Ms. Cain, but as seen from the Exhibits, the allegations in the Oklahoma Lawsuit, and other factual allegations in the Complaint are clearly against Blushing:

| Paragraph | Description of Allegations |
|---|---|
| ¶ 2 | Alleges claims arise out of actions of Ms. Cain and Blushing. |
| ¶ 3 | Alleges conspiracy between Ms. Cain and Blushing to file intentionally and materially false take-down notices. Alleges they were "Ms. Cain's take-down notices" even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in exhibits were sent by Blushing. |
| ¶ 39 | Alleges Ms. Cain acted and conspired with Blushing to prepare and send take-down notices. Sample take-down notices in Exs. 1 and 2 were sent by Blushing. |
| Subheading before ¶ 41 | Identifies Ms. Cain's actions and conspiracy with Blushing in sending first round DMCA notices |
| ¶ 43 | Alleges Ms. Cain instructed Blushing to send take-down notice to Amazon, thereby acknowledging Blushing actually sent the take-down notices. |
| ¶ 45 | Alleges Blushing told Ms. Cain it was working on draft take-down notice. |
| ¶ 46 | Alleges Blushing incorporated list of similarities prepared by Ms. Cain into first round take-down notices, thereby acknowledging Blushing actually sent the take-down notices. |
| ¶ 49 | Alleges Blushing provided Ms. Cain with a draft letter it prepared to send to Amazon. Alleges Blushing suggested to Ms. Cain that it first send a letter to Quill before sending take-down notices. |
| ¶ 51 | Alleges that Ms. Cain and Blushing discussed that Blushing would send the take-down notices. |
| ¶ 53 | Alleges Ms. Cain and Blushing issued first round take-down notices. |
| ¶ 54 | Alleges Ms. Cain and Blushing were in a conspiracy to state falsehoods in the take-down notices and those falsehoods were defamation *per se*. |
| ¶ 55 | Alleges Blushing included falsehoods in take-down notices that were provided by Ms. Cain. Alleges the falsehoods made in take-down notices violate 17 U.S.C. § 512 and are defamation *per se*. |
| ¶¶ 57-58 | Alleges Ms. Cain advised by Blushing that certain sellers had ceased sales due to take-down notice. |
| ¶¶ 59-60 | Alleges Ms. Cain and Blushing discussed whether to file take-down on book 3 even though it was not yet out. |
| ¶ 61 | Alleges Ms. Cain filed second round take-down notice on book 3 even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in exhibits were sent by Blushing. |
| ¶ 63 | Alleges Ms. Cain and Blushing conspired to generate and send second round take-down notice on book 3. The notice in Ex. 2 was sent by Blushing - notice states book 3 is in "violation of two books that we have published"; references "the author" of the book being infringed; and references to "Our author - Addison…." |

| Paragraph | Description of Allegations |
|---|---|
| ¶ 64 | Alleges second round take-down notices were prepared by Ms. Cain and Blushing. |
| ¶ 65 | Alleges the false statements in the second round take-down notices were pursuant to conspiracy between Ms. Cain and Blushing. |
| ¶ 66 | Alleges false statements were provided by Ms. Cain and included in the take-down notices as a result of conspiracy between Ms. Cain and Blushing. Alleges such false statements violate 17 U.S.C. § 512 and are defamation *per se*. |
| ¶ 68 | Alleges Ms. Cain's second round take-down notices contain false and defamatory statements even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in exhibits were sent by Blushing.   Paragraph also quotes take-down notice in which Blushing refers to itself regarding "two books that we have published" and refers to the author in the third person, "scenes in the book that are almost identical to Addison's book. . . ." |
| ¶ 69 | Alleges false statements and misrepresentation provided by Ms. Cain and including in the take-down notices sent by Blushing violate 17 U.S.C. § 512 and are defamation *per se*. |
| ¶ 72 | Alleges Ms. Cain "directed and otherwise caused" the filing of 12-15 or more second round take-down notices. |
| ¶ 76 | Alleges "Ms. Cain's take-down notices violated Copyright Act" even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in Exhibits 1 and 2 were sent by Blushing. |
| ¶ 77 | Alleges Ms. Cain's take-down notices caused other harm to Quill even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in exhibits were sent by Blushing. |
| ¶¶ 87-88 | Alleges take-down notices that were prepared by Ms. Cain and sent by Ms. Cain with the cooperation and agreement of Blushing were republished. |
| ¶ 93 | Alleges "Ms. Cain prepared and filed two DMCA take-down notices" even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in exhibits were sent by Blushing. |
| ¶ 96 | Alleges Ms. Cain made false statements in take-down notices even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in exhibits were sent by Blushing. |
| ¶ 105 | Alleges Ms. Cain used false copyright claims in "her take-down notice" even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in exhibits were sent by Blushing. |
| ¶¶ 110 & 112 | Alleges Ms. Cain interfered with Quill's business relations by filing take-down notices and defaming Quill even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in exhibits were sent by Blushing. |
| ¶ 117 | Alleges Ms. Cain made false statements in Exs. 1-3 even though elsewhere Complaint acknowledges Blushing prepared and sent the notices and sample notices in Exs. 1 and 2 were sent by Blushing. |

| Paragraph | Description of Allegations |
|---|---|
| ¶ 118 | Alleges Ms. Cain conspired with others to publish and communicate false statements. Blushing is only party identified in the Complaint to have allegedly conspired with Ms. Cain. |
| ¶ 121 | Alleges Ms. Cain and Blushing's conduct caused and continue to cause Quill harm. |
| ¶ 122 | Alleges conspiracy between Ms. Cain and Blushing to defame and cause Quill harm. |
| ¶ 123 | Alleges Ms. Cain and Blushing, and others, acted together to violate Va. Code § 18.2-499. |
| ¶ 124 | Alleges conspiracy to include defamatory information in take-down notices that were prepared and sent by Blushing. |
| Count VI/¶ 126 | Seeks a declaratory judgement on whether *Myth of Omega* infringes on any copyright claimed by Ms. Cain or Blushing. |
| Prayer for Relief | Seeks injunctive relief against Ms. Cain and Blushing and its employees, etc. |

Blushing is a corporation incorporated in the State of Virginia with its principal place of business in Charlottesville, Virginia. *See* **Ex. 1**, ¶ 10. As a Virginia-based publisher, this Court would have personal jurisdiction over Blushing. Additionally, although Plaintiff's DMCA and declaratory judgment claims are federal questions for purposes of subject matter jurisdiction, the addition of Blushing to this action would not defeat the diversity of the parties.

## ARGUMENT AND AUTHORITIES

I. **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE, DEFAMATION, CIVIL CONSPIRACY AND COPYRIGHT MISUSE.**

### A.     The Standard Of Review For Failure To State A Claim

A complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief' . . . to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the

"plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard" requires allegations establishing a factual basis for "entitlement to relief." *Id.* at 696 (citation omitted). Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead the factual grounds of entitlement to relief rather than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

For this reason, a court ruling on a motion to dismiss need not accept as true the "legal conclusions" set forth in a complaint. *Iqbal*, 556 U.S. at 663-64. A complaint will not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* at 678 (internal citations omitted). The complaint must offer more than "labels and conclusions," and mere "formulaic recitation of the elements of a cause of action" will not do. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to withstand a motion to dismiss. *Id.*

> **A.    Plaintiff's Claim for Tortious Interference with Business Relationships (Count III) is Preempted by the DMCA and Fails to State a Claim upon which Relief can be Granted.**

Under Virginia law, to establish a prima facie claim for tortious interference with business relationships ("tortious interference"), a plaintiff must plead the following elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of that contractual relationship or business expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 447 (E.D. Va. 2002) (citing *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E. 2d 97 (Va. 1985). However, even if Plaintiff could establish these elements, which it cannot, Plaintiff's claim for tortious interference still fails as a matter of

law because (1) Plaintiff's tortious interference claim is preempted by the DMCA, and (2) Plaintiff fails to state a claim for which relief can be granted.

This district has repeatedly held that claims for tortious interference are preempted by federal copyright law.[1] *See Parks, Millican & Mann, LLC v. Figures Toy Co.*, No. 2:16CV522, 2017 WL 5897901, at *25 (E.D. Va. Nov. 29, 2017) (court holding that plaintiff's claim for tortious interference with contract/business expectancy was preempted by the Copyright Act); *Wigand v. Costech Techs., Inc.*, No. 3:07CV440-HEH, 2008 WL 65517, at *8 (E.D. Va. Jan. 4, 2008); *see also* P*rogressive Corp. v. Integon P & C Corp.*, 947 F.2d 942 (4th Cir. 1991) (unpublished) (affirming dismissal of claim for tortious interference with business expectancy because it was preempted by the Copyright Act). Other courts have held similarly in regards to the DMCA. *See Stevens v. Vodka & Milk, LLC*, 2018 U.S. Dist. LEXIS 43666, *6-7 ("The pervasive nature of the DMCA, including an express remedy for the very wrong that counterclaimants here allege, makes reasonable the inference that Congress left no room for the States to supplement the remedies outlined in the DMCA.") (internal quotations omitted); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 WL 2690437 (N.D. Cal. July 8, 2011); *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1206 (N.D. Cal. 2004) (court found dismissal appropriate because "adherence to the DMCA's provisions simultaneously subject[ed] the copyright holder to state tort law liability" thereby creating "an irreconcilable conflict between state and federal law").

---

[1] The DMCA is a section of the federal Copyright Act. *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. CIV.A. 3:08-CV-1658-, 2009 WL 3075205, at *18 (N.D. Tex. Sept. 25, 2009) (To demonstrate that Virgin Mobile's alleged contract rights are preempted by the federal Copyright Act (**of which DMCA is a section**), . . .) (internal quotations omitted) (emphasis added).

In *Wigand*, Judge Hudson dismissed the plaintiffs' tortious interference claim with prejudice as preempted because it was "part and parcel" of their copyright claim. *Wigand*, 2008 WL 65517, at *8. The *Wigand* court held that "a plaintiff cannot prevail on a state law claim if that claim boils down to nothing more than an assertion that the defendant copied plaintiff's copyrighted materials." *Id.* Therefore, to "avoid preemption, the state cause of action must contain an extra element." *Id.* Here, Plaintiff's claim for tortious interference contains no extra elements. It does nothing more than allege the same facts that serve as the basis for Plaintiff's DMCA claim. *See* Dkt. #1 ¶ 110 ("Cain intentionally interfered with Quill's prospective business relations and expectancies by causing a breach and termination of those relationships and expectancies, *through the filing of the DMCA notices*.") (emphasis added). Accordingly, Plaintiff's tortious interference claim is preempted and must be dismissed with prejudice.

Additionally, Plaintiff fails to state a claim for tortious interference. The *Wigand* court not only found that the plaintiffs' tortious interference claim was preempted, but also held that the plaintiffs failed to state a claim altogether. The court stated that the plaintiffs "merely mirror[ed] the statutory allegation in their Complaint, stating that Wigand had valid business expectancies between herself and her potential clients, Defendants knew of the existence of the valid business expectations, Defendants intentionally interfered with those business expectations, and Wigand did not realize her business expectations as a result of this intentional interference." *Wigand*, 2008 WL 65517, at *7.

Here, Plaintiff also "merely mirrors" the statutory elements. Plaintiff's tortious interference claim states: "Quill had valid and protectable prospective business relations and expectancies"; "Cain had knowledge of Quill's prospective business relations and expectancies"; and "Cain intentionally interfered with Quill's prospective business relations and expectancies . .

10

. through the filing of the DMCA notices of her continuing defamation of Quill." Compl. [Dkt. #1] ¶¶ 109-111. While the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff," "the Court is not bound to accept as true a legal conclusion couched as a factual allegation." *Wigand*, 2008 WL 65517, at *8 (internal quotations omitted). Like in *Wigand*, Plaintiff's claim for tortious interference "is a patchwork quilt of legal conclusions that is insufficient to serve as a basis for relief under Virginia law" and therefore must be dismissed. *Id.*

**B.    Plaintiff's Claim for Defamation (Count IV) Is Also Preempted by the DMCA and Fails to State a Claim.**

Plaintiff has alleged two defamatory statements in its Complaint. The first is the alleged defamation contained in the DMCA notices sent to various vendors by Blushing. Compl. ¶¶ 39, 54, 55, 65-69. The second are posts Ms. Cain or third parties made *after* Ms. Cain was dismissed from the Oklahoma Lawsuit and republications of information posted online by Ms. Ellis about the Oklahoma Lawsuit. *Id.* ¶¶ 80-92. Plaintiff has alleged that these statements are both defamatory *per se* under Virginia law. However, neither one properly states a claim of defamation against Ms. Cain.

Under Virginia law, defamation requires Plaintiff to plead "(1) publication of (2) an actionable statement with (3) the requisite intent." *Virginia Citizens Defense League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018) (citing *Schaecher v. Bouffault*, 290 Va. 83, 772 S.E.2d 589, 594 (2015). Like its claims for tortious interference, Plaintiff's claim of defamation arises solely from the DMCA claims and is preempted. Plaintiff's defamation claim also must be dismissed for failure to state a claim because (1) it fails to plead a publication; (2) the alleged defamatory statement are not of and concerning Quill; and (3) the allegedly defamatory statements are not

false and defamatory. Accordingly, Plaintiff's defamation claims must be dismissed in their entirety.

       **1.**    <u>Plaintiff's State Law Claim for Defamation Claim is Preempted by the DMCA.</u>

Plaintiff's claim for defamation is preempted for the reasons listed above. As stated by the court in *Amaretto Ranch Breedables*, the "DMCA Takedown Notification is a creature of a federal statutory regime," and "that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification." 2011 WL 2690437, at *3 (finding that the plaintiff's state law claims, including defamation, were preempted by the DMCA). Congress's intent to preempt state law claims is further evidenced by the provision of an express remedy for misuse of the DMCA's safe harbor provisions. *See Online Policy Grp.*, 337 F. Supp. 2d 1206.

Plaintiff's claim for defamation—like its tortious interference claim—relies solely on the same allegations as Plaintiff's DMCA claim. This claim contains no extra elements as required by the *Wigand* court. Plaintiff's defamation claim alleges that "Cain repeatedly made false and defamatory statements concerning Quill and its publications, as set forth in detail above and, in addition [to], as described *in hac verba* in Exhibits One, Two, and Three to this Complaint." Dkt. #1 ¶ 117. Exhibit 1 includes documents related to the "First Round" of DMCA notices, Exhibit 2 includes documents related to the "Second Round" of DMCA notices, and Exhibit 3 is a post written by Ms. Cain detailing the circumstances of take-down notices from her point of view. *Id.* ¶¶ 39, 63, 83 and Exs. 1, 2, 3. Therefore, all facts alleged to support Plaintiff's defamation claim are also based on the allegedly improper DMCAn notices. Accordingly, Plaintiff's defamation claim is preempted by the DMCA and should be dismissed.

2.      Plaintiff has Failed to Plead a Publication as Required to State a Claim for Defamation.

Plaintiff must first plead a "publication." *Couric*, 910 F.3d at 783. Numerous courts have held that a speaker may be granted a qualified privilege against defamation claims where the speaker and recipient share a common interest or a duty. *See Larimore v. Blaylock*, 259 Va. 568, 572 (2000). Here, the first allegedly defamatory statements are the DMCA takedown notices themselves, which were made to third party publishers (e.g., Amazon). Compl. ¶¶ 39, 54, 55, 65-69, and Exs. 1 & 2. These third party publishers had a common interest with Blushing in preventing the violation of copyright laws. *See* 15 U.S.C. § 512(c), (f). Such a communication is protected as privileged and not subject to claims of defamation. *See Rossi v. Motion Picture Ass'n of America Inc.*, 391 F.3d 1000, 1007 (9th Cir. 2004) (holding allegedly defamatory statements by a publisher to an ISP about allegedly infringing material were privileged and not actionable).

3.      Plaintiff's Defamation Claim Fails Because the Allegedly Defamatory Statements are not "Of and Concerning" Plaintiff.

To properly plead the second element of a defamation claim, the plaintiff must show, *inter alia*, that the statement at issue is "both false and defamatory" and "of and concerning" the person or entity bringing the lawsuit. *Couric*, 910 F.3d at 783. A statement "is defamatory per se when it can reasonably be understood to suggest that a person is unfit in his or her trade. There must be a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff." *Couric*, 910 F.3d at 784-785 (citations omitted). Whether a statement is defamatory is decided as a matter of law. *Id.* at 784. Allegedly defamatory statements must be construed by "their plain and natural meaning." *Id.* (citation omitted).

Plaintiff alleges that certain defamatory statements were made by Ms. Cain and Blushing against itself, a London corporation and publisher. Compl. ¶¶ 6, 117-122, and Exs. 1-3. However, it is clear from a review of each statement attached in the Exhibits to the Complaint, or referenced within the Complaint, that Ms. Cain never made any defamatory statements against Quill itself. Indeed, each of the allegedly defamatory statements state that **Ms. Ellis** or the ***Myth of Omega* Serie**s violated Ms. Cain's *Alpha's Claim* Series, not that **Quill** infringed. *See* Exs. 1-3 of Compl. Plaintiff admits in its Complaint that the name "Zoey Ellis" is a pseudonym for an actual person, an author of the *Myth of Omega* Series at issue in this Lawsuit. *Id.* ¶¶ 2, 14.  And, each allegedly defamatory statement does not actually refer to Quill at all, but to Ms. Ellis.

The Fourth Circuit Court's analysis in *Couric* is similar to the facts here. In *Couric*, the court analyzed whether the film at issue was "reasonably capable of being understood as suggesting" that one of the plaintiffs, a lawyer, lacked the appropriate competencies required of his profession. *Couric*, 910 F.3d at 785 (internal quotations omitted). The court determined that the questions posed to the plaintiff had nothing to do with his legal expertise and that reading such a meaning into the film would "stretch the footage well beyond its ordinary and common meaning." *Id.* (internal quotations omitted).

In the Complaint, there are no statements made by Ms. Cain that could be interpreted by any recipient to mean that Quill was unfit as a publisher. Any person viewing the statements made by Ms. Cain would only recognize them as being made about Ms. Ellis or her books. *See e.g.*, Ex. 3 to Compl. (lacking any reference to Quill). Stretching Ms. Cain's statements to be about Quill at all, or about Quill's competency as a publisher, would be outside of the statements' ordinary and common meaning. Because the alleged defamatory statements are not

"of and concerning" Quill, Plaintiff's claims of defamation must be dismissed for failure to state a claim.

   **4.**   Plaintiff's Defamation Claim Fails Because Ms. Cain's Statements are Protected under the First Amendment.

Plaintiff's claim also fails because the allegedly defamatory statements are merely subjective commentary on facts—meaning they are shielded from liability by the First Amendment. *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) (holding that where the bases for a conclusion are disclosed, "no reasonable reader would consider the [conclusion] anything but the opinion of the author drawn from the circumstances related"); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 726, 730 (1st Cir. 1992) (a publication criticizing the "Phantom of the Opera" as "a rip-off, a fraud, a scandal, a snake-oil job" "could be understood only as [the author's] personal conclusion about the information presented, not as a statement of fact" where the underlying facts concerning the production's marketing were disclosed); *Levin v. McPhee*, 119 F.3d 189, 191-92 (2d Cir. 1997) ("if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable").

Here, the first allegedly defamatory statement, the DMCA notice, states that Ms. Ellis' books "are in violation of two books that we have published and are under copyright." Ex. 1 to Compl. at p. 5. This statement is then followed by a list of factual statements including a comparison of Ms. Ellis' *Crave to Conquer* book to that of Ms. Cain's *Born to be Bound* book. *Id.* at p. 5-8. Because the conclusory statements made by Blushing in the takedown notice are included with factual statements, the reader (the third-party publisher) is free to make its own conclusion, meaning that Blushing's statements are protected by the First Amendment. *See Partington v. Bugliosi*, 56 F.3d 1147, 1156-57 (9th Cir. 1995).

Likewise, the second allegedly defamatory statements made by Ms. Cain after the Oklahoma Lawsuit was dismissed, includes merely a recitation of her opinions about the same DMCA takedown notices followed with numerous statements about the subsequent claims filed against her by Quill in the Oklahoma Lawsuit. Ex. 3 to Compl. at pp. 1-3. These statements are nothing more than her personal conclusion and subjective view about the information presented, and likewise are shielded from liability. *See Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) (holding that "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable").

Because the allegedly defamatory statements made by Ms. Cain are her own commentary and nothing more, her statements are protected by the First Amendment, and Plaintiff's claims of defamation should be dismissed.

### C.     Plaintiff's Claim for Statutory Civil Conspiracy (Count V) is Also Preempted by The DMCA.

Quill makes numerous allegations in its Complaint about a purported conspiracy that Ms. Cain and Blushing entered into for the purpose of defaming and harming Quill in the sending of the DMCA notices. However, this claim must be dismissed because (1) it is preempted by the DMCA; and (2) is not based on an underlying tort.

As already discussed, the DMCA preempts state law claims which are based on an allegedly improper DMCA takedown filing. Like its claims for tortious interference and defamation, Plaintiff's claim for civil statutory conspiracy under Virginia law fails because it is based on an alleged conspiracy between Blushing and Ms. Cain to file the DMCA notices, and nothing more.

Further, Plaintiff's claims for statutory civil conspiracy fail because there is no underlying tort. *Levingston v. Earle*, No. CV-12-08165, 2013 WL 6119036, at *4 (D. Ariz. Nov. 21, 2013) (citations omitted) ("Liability for civil conspiracy requires that two more individuals agree and thereupon accomplish **an underlying tort** which the alleged conspirators agreed to commit."). Instead, Quill's statutory civil conspiracy claim merely relies on the alleged actions that Blushing and Ms. Cain took in filing the DMCA notices. These allegations without more are insufficient to state a claim under Virginia's civil conspiracy statute.

D.     **Plaintiff's Claim of Copyright Misuse (Count II) Must be Dismissed as a Matter of Law.**

Plaintiff's claim for misuse of copyright must be dismissed. Copyright misuse is not an independent cause of action, but merely an equitable defense to a copyright infringement action. *See Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 972-77 (4th Cir.1990) (holding that misuse of copyright is an affirmative defense). "Misuse of copyright applies where the copyright owner tries to extend the copyright beyond its intended reach, thereby augmenting the physical scope of copyright protection. It typically arises in situations where it is alleged that the copyright owner projected his unique rights in a work onto other, unrelated products or services." *Religious Tech. Ctr. v. Lerma*, 65 USLW 2334 (E.D. Va. 1996). "[T]his defense is an assertion that the copyright holder is using his copyright, 'to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which it is contrary to public policy to grant.' " *Costar Group Inc. v. Loopnet, Inc*., 164 F. Supp. 2d 688, 708 (D. Md. 2001) (quoting *Lasercomb,* 911 F.2d at 977).

Numerous courts have rejected efforts by plaintiffs to raise copyright misuse as a cause of action. *See, e.g., Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) (copyright misuse is not an independent claim when there has been no allegation of copyright

infringement); *Ticketmaster, L.L.C. v. RMG Technologies, Inc.*, 536 F. Supp. 2d 1191, 1198-99 (C.D.Cal.2008) (holding that copyright misuse is only an affirmative defense to a claim for copyright infringement, and does not support an independent claim for damages); *Online Policy Group v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1198 n.4 (N.D. Cal. 2004) ("Plaintiffs cite no legal authority, and the Court is aware of none, that allows an affirmative claim for damages for copyright misuse."); *Ass'n of Am. Med. Colleges v. Princeton Review, Inc.*, 332 F. Supp. 2d 11, 19 (D.D.C. 2004) ("Because the policy reasons underlying the development of the equitable doctrine of copyright misuse are grounded in the unclean hands doctrine, permitting copyright misuse as an independent, affirmative claim would be contrary to the purpose of the doctrine."); *Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 342 F.3d 191, 203-4 (3rd Cir. 2003) (declining to apply copyright misuse doctrine to licensing agreements at issue); *MGM Studios, Inc. v. Grokster, Ltd.*, 269 F. Supp. 2d 1213, 1225 (C.D. Cal. 2003) (stating that "copyright misuse cannot found a claim for damages"). The foregoing case law makes clear that courts do not recognize an affirmative claim for copyright misuse. Accordingly, as Plaintiff's claim for misuse of copyright fails to state a claim for affirmative relief, it should be dismissed.

## II.   PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT (CLAIM VI) SHOULD BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION BECAUSE NO JUSTICIABLE CONTROVERSY EXISTS.

Plaintiff filed its claim for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2201 and Fed. R. Civ. P. 57 seeking a declaration that the *Myth of Omega* Series does not infringe on any copyrights claimed by Ms. Cain or Blushing. Comp. ¶¶ 126-127. This claim fails and must be dismissed because Blushing's act of filing a takedown notice of Ms. Ellis' books under the DMCA does not rise to an actual case and controversy.

Article III of the constitution gives federal courts jurisdiction only over "cases and controversies." U.S. Const. art. III, § 2, cl. 1. "A claim is justiciable if the conflicting contentions

of the parties … present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract. *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Thus, to meet the requirements of the case and controversy standard, there must be standing, which requires an allegation of actual or threatened injury. *Id.* Further, "[t]he Declaratory Judgment Act is not an independent source of jurisdiction and requires an actual case or controversy before a court may declare the rights and other legal relations of any interested party seeking such declaration." *WTGD 105.1 FM v. SoundExchange, Inc.*, 88 F.Supp.3d 580, 583-854 (W.D. Va. 2015) (citing 28 U.S.C. § 2201(a).

Here, Plaintiff has not sufficiently alleged that a copyright infringement claim against it is imminent or likely in order to arise to an actual case or controversy. While Plaintiff has made numerous allegations that Blushing and Ms. Soto filed DMCA notices against Ms. Ellis' *Myth of Omega Series*, this without more is insufficient to show that a copyright infringement claim against Plaintiff was threatened. *See Handshoe v. Perret*, 270 F. Supp. 3d 915, 932-933 (dismissing plaintiff's declaratory judgment claim for copyright infringement because defendants' act of sending takedown notices under 17 U.S.C. § 512 of the DMCA was insufficient and potential copyright claims against the plaintiff were "unasserted, unthreatened, and unknown" and did not present an immediate or real threat); *Pacific Bell Internet Services v. Recording Industry Ass'n of America, Inc.*, No. C03-3560 SI, 2003 WL 22862662, at*4 (N.D. Ca. Nov. 26, 2003) (holding no actual controversy existed between the parties because the takedown notice letters did not threaten litigation); *Opinion Corp. v. Roca Labs, Inc.*, 2016 WL 6824384, at *2-3 (M.S. Fl. Nov. 17, 2016) (finding no case or controversy where the DMCA takedown notices filed by defendant alleged images infringed defendant's copyrights because there were no allegations that defendant threatened to pursue legal remedies against plaintiff).

Because no actual or threatened case or controversy exists, Plaintiff's claim for declaratory judgment should be dismissed.

## III.   PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO JOIN A NECESSARY AND REQUIRED PARTY UNDER FRCP 12(B)(7) AND 19(A)

### A.   The Standard Of Review For Dismissal Under FRCP 12(B)(7) And Joinder

#### 1.   Joinder Generally

Federal Rule of Civil Procedure 12(b)(7) provides that an action may be dismissed for failure to join a party under Rule 19. Federal Rule of Civil Procedure 19 addresses whether an absent party is required and/or indispensable. "The first question under Rule 19(a) is 'whether a party is necessary to a proceeding because of its relationship to the matter under consideration.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (quoting *Teamsters Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 917 (4th Cir. 1999)).   If a court determines that a party is necessary, it must order joinder. *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999); Fed.R.Civ.P. 19(a); 7 WRIGHT & MILLER FEDERAL PRACTICE & PROCEDURE § 1604.[2]

Rule 19 determinations are fact specific and must be made on a case-by-case basis. *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968).   Rule 19 also "takes account of the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases." *Keal*, 173 F.3d at 917.

---

[2] "The burden is on the party raising the defense [failure to join necessary parties] to show that the person who was not joined is needed for a just adjudication." 7 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1609 (3d ed. 2001); *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). A court addressing such a defense may consider evidence presented outside of the pleadings. *R–Delight Holding LLC v. Anders*, 246 F.R.D. 496, 499 (D.Md. 2007). Such evidentiary materials may include affidavits as well as other relevant evidence outside the pleadings. 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1359 (3d ed. 2004) ("The district judge is not limited to the pleadings.").

Rule 19(a) states in relevant part:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)&(B).

As shown below, Blushing is a required party under each of the three separate prongs of Rule 19(a). This action, as a practical matter, will impair or impede the ability of Blushing to protect its interests. *See* Fed.R.Civ.P. 19(a)(2)(A). Further, unless Blushing is added, Ms. Cain could be subject to inconsistent obligations. *See* Fed.R.Civ.P. 19(a)(2)(B). And, complete relief cannot be granted without the addition of Blushing. *See* Fed.R.Civ.P. 19(a)(1).

    **2.**    <u>Rule 57 - Joinder in Declaratory Judgment Actions</u>

Requirements similar to those of Rule 19 are also embodied in Federal Rule of Civil Procedure 57 governing claims for declaratory judgments.  The Advisory Committee Notes to Rule 57 state that to assert a claim for declaratory judgement, "[t]he petitioner must have a practical interest in the declaration sought and **all parties having an interest therein** or adversely affected must be made parties or be cited." (Emphasis added). Thus, under Rule 57, all parties having an interest in the matter subject to a declaratory judgement are required parties. Plaintiff clearly seeks a declaratory judgment as to Blushing's potential copyright claims and

thus, Blushing clearly has an interest that could be adversely affected by a declaratory judgment in this action.

**B.      Blushing Books Is A Required Party Under Rule 19(A)(1) And Rule 57.**

**1.      <u>Complete Relief Cannot be Accorded in the Absence of Blushing.</u>**

Rule 19 provides for compulsory joinder of the absent party when, without such joinder, "the court cannot accord complete relief among the existing parties." Fed. R. Civ. P. 19(a)(1)(A). "The focus of the complete relief requirement is: '(1) whether in the person's absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court, and (2) whether failure to join the absent party would compromise the public interest in avoiding repeated lawsuits on essentially the same subject matter.'" *L.K. v. North Carolina State Bd. of Ed.*, 2010 WL 3239091 at \*9  (E.D. N.C. June  23, 2010) (quoting *Gateway Assoc., Inc. v. Essex-Costello, Inc.*, 380 F.Supp. 1089, 1095 (N.D. Ill. 1974)).

Complete relief cannot be accorded Plaintiff's claims that are predicated on the DMCA take-down notices because the entity that actually prepared and sent the take-down notices is not a party in the case. DMCA provides for liability for "[a]ny person who knowingly and materially misrepresents" that material is infringing. 17 U.S.C. § 512(f). Based on a plain reading of the Complaint and the attached exhibits, however, it is clear that Blushing prepared and submitted the take-down notices that are at issue. *See* Exs. 1 & 2 to Compl. Similarly, Plaintiff's claims for misuse of copyright, tortious interference with business relationships, defamation and civil conspiracy claims, to the extent any survive this Motion, are each predicated upon the preparation and sending of the take-down notices.  *Id*. at Counts II-V.  Thus, any consideration of Plaintiff's claims necessarily implicates Blushing's conduct and whether it knowingly and materially misrepresented any facts in the take-down notices it prepared and sent. Indeed, all of Plaintiff's claims involve allegations against Blushing and Plaintiff cannot obtain a full recovery

22

for its claims without obtaining a binding judgment against Blushing.  As such, Plaintiff cannot be accorded relief if Blushing is not joined as a party.

This case is similar to the facts in *Pennsylvania Intern'l Educ. Service Group, LLC v. Xie*, which was previously decided by this Court. *See* 2015 WL 2195183 (E.D.VA May 11, 2015).  In *Pennsylvania Intern'l*, the absent party was allegedly involved in the tortious interferences with various contracts, breached duties owed and conspired with others to cause damages.  This Court ruled the absent party was required, noting that the missing party was referenced **seven** times in the complaint and that denying joinder would require a separate legal action to resolve those claims even though the "disputes arise out of the same transaction and occurrence of facts that should be resolved in a single action." *Id*. at \*2. Here, the allegations are the missing party, Blushing, is much more extensive than in *Pennsylvania Intern'l.* Plaintiff references Blushing's extensive involvement by referring to it in approximately **forty** paragraphs of the Complaint and alleges, as a basis for many of its claims, the specific take-down notices that Blushing prepared and sent. And, all of Plaintiff's allegations against Blushing arise out of the same transactions and occurrence of facts as its allegations against Ms. Cain.

Moreover, Plaintiff's pursuit of duplicative litigation against Blushing and Ms. Cain in this Court and in the Oklahoma Lawsuit is against the public interest. The risk of duplicitous litigation warned of in *Pennsylvania Intern'l* is already a reality with Plaintiff seeking identical claims against separate defendants in two different district courts. In ordering that Blushing be joined as a required party to this action, this Court will avoid wasteful and duplicative litigation, thereby acting in the interest of justice. Not only do this case and the Oklahoma Lawsuit involve identical claims and factual allegations, but both will involve identical discovery, witnesses and factual development. *See Montgomery v. Schering-Plough Corp.*, 2007 WL 614156, \*3 (E.D.Pa.

Feb. 22, 2007) (finding that by avoiding duplicative litigation in two districts "(1) pretrial discovery can be conducted more efficiently; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the same time serving the public interest; (4) inconsistent results can be avoided."). Failing to order Blushing joined in this action will result in having two lawsuits pending simultaneously in different districts that involve the same operative facts and will involve identical issues of liability. As a result, both the courts and the parties will have to engage in duplicative pleadings, discovery, pre-trial motions, and trials. This inefficiency in the federal judicial system is certainly contrary to the interest of justice. *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to a wastefulness of time, energy and money . . . ."); *Bd. of Trust. v. Baylor Heat. & Air Cond.*, 702 F. Supp. 1253, 1261 (E.D. Va. 1988) ("[T]he pendency of a related action in the transferee forum favors transfer where it would be both feasible and beneficial to consolidate the actions.").

Additionally, Plaintiff cannot be accorded complete relief for either its requested declaratory judgment or injunctive relief in the absence of Blushing. As noted above, in Count IV of its Complaint, Plaintiff seeks a declaratory judgment as to "whether the MYTH OF OMEGA series infringes upon any copyright claimed by Cain **or her publisher**." Compl. at ¶ 126. Additionally, Plaintiff specifically seeks an injunction against Blushing to restrain it and its employees, successors or assigns from bringing any copyright infringement lawsuit against Plaintiff or its author.

This Court cannot accord complete relief to Plaintiff on its declaratory judgment and injunctive relief claims if Blushing is not a party because this Court cannot enter such orders against an absent party.  As the United States Supreme Court long ago explained:

> It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. A judgment rendered in such circumstances is not entitled to the full faith and credit which the Constitution and statute of the United States prescribe and judicial action enforcing it against the person or property of the absent party is not that due process which the Fifth and Fourteenth Amendments requires.

*Hansberry v. Lee*, 311 U.S. 32, 40 (1940) (citations omitted).  "In general, a court may not enter orders against nonparties." *Kenseth v. Deal Health Plan, Inc.*, 722 F.3d 869, 890 n. 7 (7th Cir. 2013), *see also*, *Steans v. Combined Ins. Co. of Am.* 148 F.3d 1266, 1270 (11th Cir. 1998) (recognizing "principle of general application that a judgment *in personam* is not binding on a person who is not designated as a party" (internal quotation marks omitted)).

Moreover, as set out in the comments to Rule 57, a party with an interest in the subject matter of the declaratory judgment must be a party to the action. Plaintiff is seeking to adjudicate Blushing's rights as to any copyright infringement claims it may have against Plaintiff or its author.  Thus, Blushing has an interest in the subject over which Plaintiff is seeking a judgment and must be included as a party.

Similarly, "[a] non-party cannot be bound by the terms of an injunction unless the non-party is found to be acting in active concert or participation with the party against whom injunctive relief is sought." *Elliott v. Kiesematter*, 98 F.3d 47, 56 n. 5 (3d Cir. 1996) (internal quotation marks omitted)); *see also*, *Person v. Miller*, No 86-3880 at *1 (4th Cir. March 2, 1989) ("Under Fed. R. Civ. P. 65(d) court orders are binding upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or

participation with them who receive actual notice of the order by personal service or otherwise." (internal quotation marks omitted); *Talbert v. Smith*, 2007 WL 773910 at *1 (W.D. Va. March 9, 2007) ("It is well settled that except in limited circumstances, which are not alleged here, a court may not order injunctive relief against non-parties.").

Although Plaintiff alleges Ms. Cain and Blushing acted in concert, the facts actually attached to the Complaint demonstrate that Blushing, not Ms. Cain, prepared and filed the various DMCA notices that are the backbone of Plaintiff's claims. *See* Chart on p.5 herein. As previously noted, under the DMCA it is the person who makes the misrepresentation who is liable. 17 U.S.C. § 512(f). Similarly, in the Oklahoma Lawsuit, Plaintiff continues pursuing identical claims and identical injunctive relief against Blushing that is being sought in this case, thereby acknowledging that it needs Blushing as a party to obtain effective injunctive relief. *See* **Ex. 1** at Prayer for Relief. As the party making the alleged misrepresentation, Blushing is required to accord complete relief.

As made clear by Plaintiff's allegations in the Complaint and its pursuit of Blushing in the Oklahoma Lawsuit, Blushing is integral to its alleged claims and it cannot be accorded full relief without Blushing as a party.  Thus, Blushing is a required party to this action.

> **2.** Blushing has an Interest in the Subject of This Action and Resolution of This Action will as a Practical Matter Impair Its Ability to Protect That Interest.

Pursuant to Rule 19(a)(2)(A) and Rule 57, Blushing must be joined because it has "an interest relating to the subject of the action" and it is situated such that that disposing of the action in Blushing's absence may "as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i).

The Complaint makes it clear that Blushing has an interest in this action.  Blushing is mentioned either directly or indirectly in approximately 40 paragraphs of the Complaint.  Among

other allegations, Plaintiff repeatedly refers to Blushing's role preparing and sending the DMCA take-down notices, Blushing's involvement in creating and disseminating allegedly false and defamatory statements, Blushing's violation of copyright law, and harm Plaintiff allegedly suffered as a result of Blushing's actions. Although at times Plaintiff attempts to minimize Blushing's direct interest by referring to "Ms. Cain's take-down notices," other sections of the Complaint and Exhibits 1 and 2 contradict such allegations. *See* Chart on p. 5.

All of the take-down notices in the exhibits demonstrate that Blushing, not Ms. Cain, sent the notices. For example, in Exhibit 1 iBooks is forwarding by email to Quill the take-down notice it received. In the iBooks' May 27, 2018 email, "accounting @blushing books.com" is copied, indicating it received the notice from Blushing. The iBooks email appears to have embedded at least a portion of the take-down notice. In it, the notice refers to "Mrs. Cain's book." Exhibit 1 also includes an April 19, 2018 email from Blushing to B&N in which the re line reads "DMCA take down notice." The email then proceeds to outline the reasons for the take-down notice. Similarly, in Exhibit 2, the May 15, 2018 email from Draft2Digital includes the take-down notice in the body of the email. The notice is clearly from Blushing as it refers to *Myth of Omega* as being "in violation of two books **that we have published**" and "**[o]ur author** - Addison. . . ." *Id*. (emphasis added).

Blushing's absence from this action may impair or impede its interests in this case. As demonstrated above, Blushing clearly has an interest in this litigation as many of Plaintiff's allegations are directed specifically at Blushing's actions and many of those actions, such as preparing and sending the take-down notices, are the bases for potential liability of Blushing itself. Plaintiff's potential relief in this action is intertwined with Blushing's actions and Plaintiff's claims in the Oklahoma Lawsuit. Thus, a decision in this action regarding the

accuracy and legality of the take-down notices could impact Blushing's legal rights and potential liabilities.[3] Moreover, although Ms. Cain and Blushing share some common interests, they do not have identical interests, particularly as it relates to liability under 17 U.S.C. § 512(f). Under the DMCA, Blushing is the party potentially liable for any misrepresentation in the take-down notices. As such, Blushing is a required party.

**3.**    Without Joinder, Ms. Cain will be Subject to a Substantial Risk of Incurring Inconsistent Obligations.

Joinder is required if the interested party's absence may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). The existence of two concurrent proceedings creates a high likelihood that one or more of the parties will be subject to conflicting obligations. *Home Buyers Warranty*, 750 F.3d at 434 (quoting *Owens-Illinois*, 185 F3d at 441).

While it is well-recognized that joint tortfeasors or alleged co-conspirators are not automatically required parties, *see, e.g.*, *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990), the facts of this case demonstrate Blushing is required to avoid inconsistent obligations. Plaintiff is seeking the identical remedies against Blushing in the Oklahoma Lawsuit it is seeking against Ms. Cain in this action, including declaratory judgment and injunctive relief. The parallel proceeding being pursued by Plaintiff creates a substantial risk that the two cases will produce incomplete, inconsistent and inefficient rulings. Not only is it likely that the two cases will arrive at different conclusions on Plaintiff's various claims, but whatever decisions are reached on the numerous overlapping claims will not be binding on the non-parties to each case. Therefore, the substantial risk of inconsistent obligations demonstrates Blushing is a required party.

---

[3] While Ms. Cain takes no position on the question, it is possible that Blushing could be bound by a judgment in this case in certain circumstances. *See Taylor v. Sturgell*, 553 U.S. 880, 893-96 & n. 6 (2008).

**C.     It Is Feasible for the Court to Join Blushing and, therefore, the Indispensable Party Analysis is not Necessary.**

As a Virginia-based company, Blushing is subject to service of process in the State of Virginia. As such, it is feasible that Blushing can be joined as a party to this case. Therefore, there is no need for the Court to engage in the indispensable party analysis.

It is well-recognized that this Court has the authority to order a required party to be joined and to dismiss the action for failure to do so. *Pennsylvania Intern'l.* 2015 WL 2195183  at *3 (quoting  *Republic of Philippines v. Pimentel*, 553 U.S.  851, 861 (2008)).  Therefore, this Court should order Plaintiff to add Blushing as a required party and, if Plaintiff fails to do so within the requisite time, dismiss this action.

## <u>CONCLUSION</u>

For the foregoing reasons, Rachelle Soto a/k/a Addison Cain respectfully requests that the Court dismiss Quill Ink Book Limited's claims under Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 8(a) and 12(b)(7) and 9(a) or for an order joining ABCD Graphics and Design, Inc., d/b/a Blushing Books Publishing as a required party to this action.


May 28, 2019                                    Respectfully submitted,

                                                    /s/ Craig C. Reilly
                                                    Craig C. Reilly, VSB # 20942
                                                    111 Oronoco Street
                                                    Alexandria, Virginia 22314
                                                    T: (703) 549-5354
                                                    E: craig.reilly@ccreillylaw.com
                                                    *Counsel for Defendant*

                                                    Shawn M. Dellegar, OBA # 20973
                                                    Crowe & Dunlevy, P.C.
                                                    321 South Boston Avenue, Sutie 500
                                                    Tulsa, Oklahoma 74103
                                                    T: (918) 592-9800
                                                    E: shawn.dellegar@crowedunlevy.com
                                                    *Counsel for Defendant (Pro Hac Vice Pending)*

Tynia A. Watson, OBA # 30765
Crowe & Dunlevy, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
T: (405) 235-7500
E: tynia.watson@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice Pending)*

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*