**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| QUILL INK BOOKS LIMITED, a foreign corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Civil Action No. 1:19-cv-476-LO-MSN |
| RACHELLE SOTO a/k/a ADDISON CAIN, an individual, | ) ) ) |
| Defendant. | ) |

## DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff's opposition to Ms. Cain's motion to dismiss ignores the key dispositive issues before this Court. As a threshold matter, Plaintiff spends a large part of its brief rehashing or embellishing its allegations from the Complaint in its opposition.[1] Then, Plaintiff ignores federal preemption jurisprudence and instead makes circular arguments as to why the DMCA, part of the Copyright Act and federal law, does not preempt its state law claims based entirely on the same facts as the DMCA. Next, Plaintiff feebly argues that Blushing is not a required party and its case in Oklahoma is too far along to add Blushing as a party here. Finally, Plaintiff entirely ignores Ms. Cain's Motion to Dismiss regarding its claims of Copyright Misuse and Declaratory Judgment on Copyright Infringement.[2]

---

[1] "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Weakley v. Homeland Security Soutions, Inc.*, 2015 WL 11112158, at *5 (4th Cir. May 19, 2015) (citations omitted and collecting cases).

[2] Accordingly, the Plaintiff has failed to controvert Defendant's arguments and the Court is entitled to rule on Defendant's motion to dismiss on the uncontroverted bases asserted therein. *Pueschel v. U.S.*, 369 F.3d 345, 353-54 (4th Cir. 2004)

For the foregoing reasons and those reasons set forth in its opening brief, Ms. Cain respectfully submits that Plaintiff's claims fail as a matter of law, are not justiciable, and/or Plaintiff has failed to join a necessary and indispensable party. Accordingly, all of Plaintiff's claims should be dismissed with prejudice.

## ARGUMENT AND AUTHORITIES

**I.   Plaintiff's State Law Claims are Preempted Because the DMCA Provisions "Occupy the Field" and Leave no Room for State Law Claims.**

Plaintiff first argues that its state law claims are not preempted by the Copyright Act's general preemption provision (17 U.S.C. § 301). Pl.'s Opp. [Dkt. 20] at 10-18. Plaintiff states that § 301 only preempts claims brought under § 106 of the Copyright Act, and it has instead brought DMCA claims under 17 U.S.C. § 512. *Id.* However, Plaintiff's argument relies solely on express federal preemption and ignores the other long-standing facets of federal preemption jurisprudence.[3]

"Under the Constitution's Supremacy Clause, U.S. Const. art. VI, cl. 2, state laws that conflict with applicable federal law are preempted." *Am. Petroleum Inst. v. Cooper*, 718 F.3d

---

[3] Defendants also do not concede that 17 U.S.C. § 301 is inapplicable here. Plaintiff's DMCA and state law claims are based solely on whether Defendant met the requirements of the DMCA in submitting the take down notices at issue (e.g., whether Ms. Cain made a misrepresentation and whether she was a copyright holder under 17 U.S.C. § 106). *See* 17 U.S.C. § 512(f). These requirements and any rights Ms. Cain has under § 106 provide her exclusive rights to reproduce a copy of her work, prepare a derivative work, or distribute a copy or derivative work. 17 U.S.C. § 106(1)-(3). In spite of Plaintiff's insinuation to the contrary that Ms. Cain did not own a copyright (Pl.'s Opp. 2), her copyright is not dependent on a registration, and the DMCA does not require the copyright holder to have a registration to file a notice. *I.M.S. Inquiry Manag. Systems v. Berkshire Inform.*, 307 F.Supp.2d 521, 530-31, n.9 (S.D.N.Y. 2004) ("plaintiff's failure to register its copyrighted work is not a bar to a DMCA action"). In fact, the DMCA was drafted to provide a safe harbor to third-party vendors (such as Amazon in this case) from copyright infringement actions brought by copyright holders, such as Ms. Cain. Thus, Ms. Cain's right to file a DMCA is solely based on rights she has under § 106. Because the DMCA is dependent on rights under § 106 of the Copyright Act, any state law claims based on the same allegations as a claim under the DMCA should also be preempted under § 301 of the Act.

347, 354 (4th Cir. 2013) (citation omitted). Congress may preempt state law in three different manners:

> First, federal law may preempt state law by expressly declaring Congress' intent to do so ("express preemption"). Second, Congress can "occupy the field by regulating so pervasively that there is no room left for the states to supplement federal law" ("field preemption"). And third, a state law is preempted "to the extent it actually conflicts with federal law" ("conflict preemption").

*Id.* (internal citations omitted).

Relevant here is field preemption. "Congress engages in field preemption when it has intended 'to foreclose any state regulation in the *area*,' regardless of any inconsistency between the state regulation and federal standards." *Virginia Uranium, Inc. v. Warren*, 848 F.3d 590, 605 (4th Cir. 2017), *cert. granted*, 138 S. Ct. 2023 (2018), and *af''d*, 139 S. Ct. 1894 (2019) (citing *Arizona v. United States*, 567 U.S. 387 (2012)) (emphasis in original). Field preemption "may be found from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room to supplement it." *Id.* at 594 (citing *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983)).

In an almost identical DMCA case, a federal district court held that field preemption applied and disallowed the plaintiffs' state law tortious interference claim. *See Stevens v. Vodka & Milk, LLC,* 2018 U.S. Dist. LEXIS 43666 (S.D.N.Y March 15, 2018). In *Stevens*, the counterclaimants alleged that the counterclaim defendant (the "defendant") "contacted various online retailers and asked that they stop selling counterclaimants' book, but knew or should have known that the book did not infringe on [the defendant's] copyright." *Id.* at *2. They also alleged that the defendant "knew or should have known that his interference would cause these retailers to stop selling the book and thus breach their contracts with counterclaimants, that this in fact occurred, and that counterclaimants suffered injuries therefrom." *Id.* at *2-3. The defendant argued that the counterclaim was preempted by the DMCA. *Id.* at *3.

The *Stevens* court noted that the DMCA provides two remedies for those who "believe their material has been taken down incorrectly." *Id.* at *3-4. First, "[s]ection 512(g) requires providers to take 'reasonable steps promptly to notify' the poster whose content has been removed." *Id.* at *4 (citing § 512(g)(2)(A)). Second, "Congress also created [a] private cause of action as a remedy for abuse of this notice-and-takedown system." *Id.*

In holding that field preemption applied to the plaintiffs' state law claims, the *Stevens* court stated that "[w]here Congress occupies an entire field, . . . even complementary state regulation is impermissible." *Id.* at *5 (quoting *Arizona v*, 567 U.S. at 401). The court further explained:

> DMCA takedown notices, and the system of which they are a part, are creations entirely of federal law. The DMCA is a complex and comprehensive statutory regime that meticulously details the steps that providers must take to avoid liability and that copyright holders must take to enforce their rights. Congress also included express remedies for alleged infringers by providing for a counter-notice system and a cause of action if fraudulent use of the notice and takedown procedures causes injury. With this detailed process and these two express remedies, Congress intended to "appropriately balance[] the interests of content owners, on-line and other service providers, and information users in a way that will foster the continued development of electronic commerce and the growth of the Internet." ***The pervasive nature of the DMCA, including an express remedy for the very wrong that counterclaimants here allege, "make[s] reasonable the inference that Congress left no room for the States to supplement" the remedies outlined in the DMCA***.

*Id.* at *6-7 (internal citations omitted) (emphasis added).

Additionally, while the *Stevens* court noted that it did not believe the preemption provision of the Copyright Act applied, the court stated that "copyright law has been overwhelmingly controlled by Congress since the Copyright Act of 1976."[4] *Id.* at *7. Therefore,

---

[4] Ordinarily, there is a "rebuttable presumption that Congress, by enacting a federal statute, did not intend to preempt state law." *Am. Petroleum Inst.*, 718 F.3d at 354. However, "[n]o such 'presumption against finding federal pre-emption of a state law cause of action' applies, however, where the field is not 'a field which the States have traditionally occupied.'" *Amgen Inc. v. Sandoz Inc.*, 877 F.3d 1315, 1326 (Fed. Cir. 2017) (quoting *Buckman Co. v. Plaintiffs'*

4

"[f]ederal law's near-total occupation of the field of copyright law further supports an inference that the federal interest in creating remedies to ensure compliance with the DMCA 'is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id.* (citation omitted).

Plaintiff's arguments are inapposite under *Stevens*. As stated earlier, Plaintiff only argues that express preemption does not apply. However, as *Stevens* made clear, state law claims are disallowed under the DMCA via field preemption. *See also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696 CRB, 2011 WL 2690437, at *5 (N.D. Cal. July 8, 2011) (preempting all state law claims based on the DMCA takedown notifications and stating "the preemption analysis turns on whether federal law conflicts with state law and/or occupies a particular field. Such is the case here because DMCA Takedown Notifications are a creature of federal law, and there is a specific federal remedy for their misuse."). Therefore, because Congress has provided exclusive remedies[5] under the DMCA, they have intended to "occupy the field" and there is no room for Plaintiff's state law claims, which are solely based on its claim under the DMCA.[6] Accordingly, Plaintiff's state law claims are preempted and must be dismissed.

---

*Legal Comm.*, 531 U.S. 341, 347 (2001)). As the *Stevens* court stated above, copyright law is traditionally governed by federal law, and therefore the presumption does not apply.

[5] Plaintiff argues that that remedies found within section 512 are not exclusive. Pl.'s Resp. 14 [Dkt. #20] ("Nothing in that subsection, in Section 512 itself, or in the statue as a whole states or suggests that <u>this</u> remedy is exclusive.") (emphasis in original). This is also contrary to *Stevens*. *Stevens* held that because Congress provided express remedies under the DMCA, Congress therefore left no room for additional state remedies. Thus the remedies provided under the DMCA are in fact exclusive.

[6] Plaintiff assets that Ms. Cain's additional social media posts are additional statements that would not be preempted by the DMCA claims. (Pl.'s Opp. 19). However those "additional" statements are merely mirror images of the DMCA statements or mere rebuttals to the Oklahoma lawsuit and clearly not defamatory.

## II. Even if Not Preempted, Plaintiff's State Law Claims Each Fail to State a Claim.

In spite of Plaintiff's assertions in its Complaint, all of the allegedly defamatory statements were not made "of and concerning" Quill, the publisher of the Zoey Ellis books. Zoey Ellis, while a pseudonym, is not a pseudonym for Quill, but a pseudonym for an actual author and individual of the books on which the DMCA notices were filed. Compl. ¶ 2, 14. While Quill was required to be identified in the take down notices per the vendor's forms, the statements Plaintiff alleges were defamatory are only those regarding Zoey Ellis or her Crave Series. Compl. ¶¶ 81, 83. Because whether the statements are defamatory to **Quill** as a matter of law, and they clearly are not, this claim fails as a matter of law and should be dismissed. *See Virginia Citizens Defense League v. Couric*, 910 F.3d 780, 786-87 (4th Cir. 2018). Additionally, the list provided with the allegedly defamatory statements in the take down notice are references to Ms. Cain's and Ms. Ellis' books, which would allow a readers of the statements to make their own comparison of the works. *See* Ex. 1 to Complaint [Dkt. 1-1]. By providing the underlying facts, the statements clearly become merely Blushing and/or Ms. Cain's opinions and are not actionable. *Chapin v. Knight-Ridder*, 993 F.2d 1087, 1093 (4th Cir. 1993).

Plaintiff also misstates the requirements of civil conspiracy. Pl's Opp. at 20. Plaintiff takes a single sentence out of *Dunlap v. Cottmon Transmissions Systems*, 287 VA 207 (2014) to argue that only "wrongful" conduct is required. *Id.* However, a reading of Dunlap makes it clear that "wrongful" conduct in Virginia must be conduct that is illegal or unlawful, in other words, based on an underlying tort. *Id.* at 215-16 (citing numerous Virginia cases for the proposition that an underlying tort is required to support a civil conspiracy claim). Because Plaintiff's has

failed to properly plead tortious interference or any unlawful tortious conduct, its claim for civil conspiracy also fails and should be dismissed.

**III.     Plaintiff's Complaint Must be Dismissed For Failure To Join A Necessary And Required Party Under FRCP 12(b)(7) And 19(a).**

Despite Plaintiff's attempts to muddy the waters and its claim that Blushing is not a necessary party, it fails to rebut Ms. Cain's basic arguments.[7] As set out in Ms. Cain's Motion and herein, Blushing is a required party under all three considerations of FRCP 19(a), including that complete relief cannot be accorded the existing parties in Blushing's absence, Blushing has an interest in the subject of this lawsuit and resolution of it without Blushing will impair Blushing's ability to protect that interest, and, without joining Blushing, Ms. Cain will be subject to a substantial risk of incurring inconsistent obligations.

Plaintiff initially misstates the requirement of Rule 19(a)(1)(A) as requiring that the "complete relief" factor only applies to Ms. Cain. *See* Pl.'s Opp. 26. To the contrary, the "complete relief" factor applies to any existing party—a point supported by *United Sates v. County of Arlington*, 669 F.2d 925 (4th Cir. 1982), which was cited and discussed at length in Plaintiff's Opposition.

Plaintiff cannot achieve complete relief in this action without Blushing. Liability under 17 U.S.C. 512(f) applies only to a person who "knowingly and materially misrepresents" the material is infringing. Plaintiff's Complaint and its exhibits make it clear that Blushing, not Ms. Cain, sent the DMCA take-down notices that are the primary basis for Plaintiff's claims and only Blushing can be liable under DMCA. Indeed, Plaintiff concedes this point by its pursuit of

---

[7] Plaintiff also asserts Blushing is "not an indispensable party within the meaning of Rule 19." Ms. Cain agrees with this point as it is a point she specifically made at p. 29 of her Brief in Support. Presumably, Plaintiff is confusing a "required party" under Rule 19(a) with what is often referred to as an indispensable party under Rule 19(b). It is feasible to join Blushing in this action and, thus, the analysis under Rule 19(b) is not at issue.

Blushing in the Oklahoma Lawsuit for the identical claims it asserts against Ms. Cain in this action.[8]

Rather than address this fundamental issue, Plaintiff attempts to brush it aside by simply calling it a "red herring." It is not a red herring, however, that over 40 paragraphs of the Complaint allege actions or conduct by Blushing and that the evidence clearly indicates Blushing prepared and sent all of the take-down notices at issue. Indeed, Plaintiff's attempt in its Response to show that Ms. Cain and not Blushing sent <u>one</u> of the take-down notices is contradicted by the document cited by the Plaintiff. Plaintiff alleges that page two of six in Exhibit 2 shows a publisher claiming it was contacted directly by Ms. Cain. *See* Pl.'s Opp. 27. But, the actual page referenced by Plaintiff clearly shows that Draft2Digital was referencing the take-down notice it received in the email below the material quoted by Plaintiff. *See* Complaint at Exhibit 2 at p. 2 [Dkt 1]. That take-down notice is clearly written by Blushing as it repeatedly refers to Ms. Cain in the third person and as "our author." *Id*. Plaintiff does not show how it can obtain complete relief on its claims based on the DMCA take-down notices when the entity that actually prepared and sent the notices is not a party to this case.

Simply claiming that Blushing and Ms. Cain are "joint tortfeasors" does not change the fact that Plaintiff's allegations to support its claims against Ms. Cain actually involve the conduct of Blushing. Thus, to determine Plaintiff's claims in this case, this Court must necessarily determine the behavior and actions of Blushing. Such intertwined claims mean that Plaintiff

---

[8] Ms. Cain was dismissed from the Oklahoma Lawsuit on February 13 2019. At that time, no discovery in that action had commenced and Blushing had not yet answered. Thus, Plaintiff could have easily dismissed the Oklahoma Lawsuit in February and proceeded against both parties in Virginia, where both Ms. Cain and Blushing are located. Instead, Plaintiff is pursuing the same claims, including declaratory judgment on copyright infringement over Ms. Cain's books in both cases, in what Defendant believes is an effort to obtain a judgment that would adversely affect Ms. Cain's defense in this case. *See* Docket for *Quill Ink Books Ltd. v. ABCD Graphics and Design Inc.*, Case No. CIV-18-920-G, Western District of Oklahoma.

cannot be accorded complete relief without Blushing. *Landress v. Tier One Solar LLC*, 243 F.Supp.3d 633 642 (M.D. N.C. 2017).

Moreover, Plaintiff simply ignores Ms. Cain's argument that Plaintiff's pursuit of duplicative litigation is inefficient and a waste of judicial resources. "The existence of two concurrent proceedings here creates a 'high likelihood' that one or more of the parties will be subject to conflicting obligations." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014) (quoting *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999)). Instead, Plaintiff claims that the Oklahoma case is further along than it really is or that Blushing could always seek to intervene in this case of its own volition. It is clear that Plaintiff can only pursue its claims against Ms. Cain in Virginia and it is also true that Blushing is subject to the jurisdiction of this Court. Similarly, it is absurd to expect Blushing to voluntarily seek to make itself a party to a second case proceeding simultaneously with the Oklahoma Lawsuit.

Finally, Plaintiff's reference to the "one satisfaction" rule is irrelevant and misplaced. First, Plaintiff seeks more than just a monetary judgement. Plaintiff seeks both injunctive and declaratory relief against Blushing in this action even though Blushing is not a party. Plaintiff ignores the admonition in the comment to Fed. R. Civ. P. 57 that a party with an interest in the subject matter of the declaratory judgement <u>must</u> be a party to the action. *See* Advisory Committee Notes to Rule 57. Second, even related to potential monetary judgment, there is a significant risk Ms. Cain could face inconsistent or multiple obligations. Although Plaintiff alleges Blushing and Ms. Cain are joint tortfeasors, the facts alleged in and attached to the Complaint indicate that is not the case. Thus, it is a real possible that verdicts in the Oklahoma Lawsuit and this case could differ on who is liable under the DMCA or could differ in assigning any responsibility for actual damages between Blushing and Ms. Cain. This danger is especially

9

real because Blushing and Ms. Cain are not parties and will not be defending themselves in each case to which they are not a party.

As noted in Ms. Cain's Brief in Support, this Court has the authority to order Blushing to be joined as a required party and to dismiss this action if Plaintiff fails to do so. Nothing in Plaintiff's Opposition and Response changes this conclusion, and even Plaintiff concedes this Court can take such action.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion to Dismiss, Plaintiff's Complaint should be dismissed in its entirety and with prejudice pursuant under Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 8(a), and 12(b)(7) and 9(a) or for an order joining ABCD Graphics and Design, Inc., d/b/a Blushing Books Publishing as a required party to this action.

July 8, 2019                                               Respectfully submitted,

/s/ Craig C. Reilly
Craig C. Reilly, VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*

Shawn M. Dellegar, OBA # 20973
Crowe & Dunlevy, P.C.
321 South Boston Avenue, Sutie 500
Tulsa, Oklahoma 74103
T: (918) 592-9800
E: shawn.dellegar@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

Tynia A. Watson, OBA # 30765
Crowe & Dunlevy, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
T: (405) 235-7500
E: tynia.watson@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 8, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*