**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| QUILL INK BOOKS LIMITED, a foreign corporation , | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-476-LO-MSN |
| RACHELLE SOTO a/k/a ADDISON CAIN, an individual, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT RACHELLE SOTO A/K/A ADDISON CAIN'S BRIEF IN SUPPORT OF**
**HER MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

On Defendant's motion, the Court dismissed five of the six counts originally asserted by Plaintiff (Dkt. No. 24).  Essentially, the Court found that Plaintiff's state law claims were preempted by provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA"). Nonetheless, the Court granted leave to Plaintiff to replead its state law claims based on alleged acts other than the DMCA take-down notices that are at issue in the surviving count, Count I. Plaintiff filed a First Amended Complaint attempting to assert state law claims for (i) defamation based on statements other than the DMCA notices, (ii) tortious interference "through [Defendant's] continuing defamation," and (iii) statutory conspiracy accomplished through "overt acts of defamation and the propagation of defamatory falsehoods" (Dkt. No. 27).  None of the amended claims has merit or states a claim, and they may be disposed of by motion to dismiss.

First, as shown in **Section II.A.** below, none of the alleged defamatory statements is "of or concerning" Plaintiff; rather, they are directed at "her," an "individual" "author" who writes under the pseudonym **_Zoey Ellis_**.  "Zoey Ellis"—whoever she is—is not a party to this action,

and the corporate Plaintiff cannot assert defamation claims based on statements that might defame the individual, "Zoey Ellis." Moreover, Plaintiff is judicially estopped from claiming that "Zoey Ellis" is merely its "brand" name for the three-part book series at issue or a pseudonym "used by" Plaintiff. Furthermore, in its zeal to smear Defendant, Plaintiff apparently has based its claim in part on a statement directed at a different author which was made by Defendant several years ago. Second, as is shown in **Sections II.B. & C.**, the remainder of Plaintiff's amended allegations also fail to state a claim. In the author Gertrude Stein's famous put-down, which aptly applies to Plaintiff's tort claim allegations, "There is no there there." The amended state law tort claims must be dismissed.

## THE OKLAHOMA ACTION

This action is linked to the Oklahoma action. The Plaintiff's self-contradictory allegations first took root in Oklahoma before being transplanted here.

Last September, Plaintiff Quill Ink Books Limited ("Quill") and "a promising new author," described as "an individual" "residing in London, England," who wrote under the pseudonym "Zoey Ellis" ("Ellis"), filed suit against Rachelle Soto a/k/a Addison Cain ("Cain"), also an author, and her publisher, ABCD Graphics and Design Inc. d/b/a Blushing Books Publishing ("Blushing Books"). *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla., filed Sept. 18, 2018) (Doc. 1, *Complaint*). As originally pleaded, the Oklahoma case arose from the injury to Ellis personally based on defamatory statements made "against Ellis." In Oklahoma, Quill and Ellis alleged that

> This case is about protecting *a promising new author* from Defendant Blushing and Cain's deliberate misuse of copyright law to inflict harm to Plaintiffs' reputation and livelihood. Blushing and Cain's efforts to destroy Plaintiffs include *the publication of false claims of plagiarism <u>against Ellis</u> in online reader communities and the encouragement, solicitation, and coordination of negative reviews and comments anywhere Ellis's works are published*.

*Id.* (*Complaint*, ¶ 3) (emphasis added).   Thus, the purported "publication of false claims of plagiarism **against Ellis"** was the *sine qua non* of the Oklahoma defamation claims.

Significantly, Ellis moved the Oklahoma court for leave to sue pseudonymously instead of using her real name.  *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Sept. 19, 2018) (Doc. 4, *Plaintiffs' Motion for Leave to Proceed Under Pseudonym*).   Asserting her specific, individual, and personal stake in the lawsuit, as well as the individual harm she would suffer were "her real name" disclosed, Ellis argued as follows:

> Ellis writes across several genres under different pseudonyms ranging from romance novels to young adult adventure stories.  Ellis has a good faith belief that disclosure of her real name or other associated pseudonyms will undoubtedly bring about the harm that this lawsuit seeks to prevent—namely the destruction of her reputation as an independent author and member of the community.  If Ellis's identity is made public, and that identity is connected to the other stories written by Ellis outside the dark erotic romance fictionalized in the subject genre, it would cast a negative light on her other works.

*Id.* at 3.   The Oklahoma court, however, denied that motion.  *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Oct. 11, 2018) (Doc. 5, *Order*).   In response, Quill and Ellis took a surprising step.

Rather than reveal Ellis's real name, she was dropped from the Oklahoma suit.  *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Oct. 17, 2018) (Doc. 6, *Amended Complaint*).   In other words, although the *sine qua non* of the Oklahoma defamation claims was the purported reputational injury to "Zoey Ellis," a "promising new author," Ellis was no longer a plaintiff in Oklahoma.

In the Oklahoma action, Cain filed a motion to dismiss for lack of personal jurisdiction, which was granted.  *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Oct. 17, 2018) (Doc. 31, *Order*, filed Feb. 13, 2019).  Quill

then issued a Rule 45 subpoena to Cain for documents and a deposition for use in the Oklahoma case.  After obtaining those documents and taking that deposition, however, Quill instead used them to draft the original complaint filed in this action.

During discovery in Oklahoma, Blushing Books asked for the actual name and address of "Zoey Ellis."  *Id*. (Doc. 60-4 at 4 (**EXHIBIT A** hereto).)  In response, Quill objected that this interrogatory "is directed to a third-party individual who is not a named party in the [Oklahoma] action."  (*Id*. at 5.)  Based on the distinction between itself and "Zoey Ellis" as "a third-party individual," Quill avoided producing any discovery about "Zoey Ellis" in Oklahoma.

Blushing Books and Quill have since settled their Oklahoma claims, and judgment was entered by the Oklahoma district court pursuant to an accepted offer of judgment.  *Id*. (Doc. 91, *Judgment*, filed Sept. 9, 2019).  While Cain can show that the settlement in Oklahoma is a sham, that is for another day.

### THE VIRGINIA ACTION

When drafting the original Complaint and First Amended Complaint in the Virginia case, Ellis has not been named as a plaintiff.  In a transparent effort to "plead around" the absence of "Zoey Ellis" as a plaintiff in the defamation claims, Quill now claims that it publishes works "under the 'Zoey Ellis' brand of books" (Dkt. No. 1, *Complaint* ¶¶ 2, 4; Dkt. No. 27, *First Amended Complaint*, ¶¶ 2, 4).  Quill also claims that "'Zoey Ellis' is *a pseudonym used by Quill* for the identification of a principal author, a British subject resident in England, who is published by Quill, for purposes of publishing certain books" (*Id*., ¶ 14) (emphasis added).  Based on the allegations and arguments it made in the Oklahoma action, however, Quill is judicially estopped from claiming that "Zoey Ellis" is a "brand" or a pseudonym "used by Quill;" rather, "Zoey

Ellis" is the pseudonym of a "third-party individual," who "resides in England," and "who is not a named party" to this action.

Accordingly, as shown below, the defamation claims in this case, if there are any, could only be brought by Ellis. There is no allegation that Cain made an actionable statement "of or concerning" **Quill**. An alleged *per se* defamatory statement gives rise to a personal right of action that can only be maintained by the person to whom it is directed. Each allegedly defamatory statement was directed at "Zoey Ellis," not at Quill. Therefore, Quill's defamation claim must be dismissed for failure to state a claim.

Likewise, as set forth further below, Quill fails to state a claim tortious interference and statutory civil conspiracy because both depend upon Quill's fatally flawed defamation claims. Further, Quill's other slight modifications to its pleading fail to overcome the preemption of the claims already ordered by this Court under the DMCA.

## ARGUMENT

## I.     THE STANDARD OF REVIEW FOR FAILURE TO STATE A CLAIM.

A complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief' . . . to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard" requires allegations establishing a factual basis for "entitlement to relief." *Id.* at 678-79 (citation omitted). Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead the

factual grounds of entitlement to relief rather than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  As shown below, at pivotal junctures in the First Amended Complaint, Quill resorts to formulaic pleading devoid of facts.

For this reason, a court ruling on a motion to dismiss need not accept as true the "legal conclusions" set forth in a complaint. *Iqbal*, 556 U.S. at 663-64.  A complaint will not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id.* at 678 (internal citations omitted).  The complaint must offer more than "labels and conclusions," and mere "formulaic recitation of the elements of a cause of action" will not do.  *Id.*  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to withstand a motion to dismiss.  *Id.*  The lack of factual support is most evident in the defamation allegations.

## II.      QUILL'S AMENDED ALLEGATIONS FAIL TO STATE CLAIMS FOR DEFAMATION, TORTIOUS INTERFERENCE, AND STATUTORY CONSPIRACY.

### A.      QUILL'S COUNT III FOR DEFAMATION FAILS TO STATE A CLAIM.

Under Virginia law, defamation requires that plaintiff plead "(1) publication of (2) an actionable statement with (3) the requisite intent." *Virginia Citizens Defense League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018) (citing *Schaecher v. Bouffault*, 290 Va. 83, 772 S.E.2d 589, 594 (2015)).  Plaintiff also must establish that the alleged defamatory statements published were "of or concerning" the plaintiff.  *The Gazette, Inc. v. Harris*, 229 Va. 1, 37, 325 S.E.2d 713, 738 (1985).  Quill's amended allegations fail to plead all the elements of a defamation claim.

While Quill's First Amended Complaint includes numerous "statements" that Cain purportedly made, the only statements that ***might*** arise to defamation in this case are those made by Cain made ***after*** she was dismissed from the Oklahoma action (Dkt. No. 27, *First Amended*

*Complaint*, ¶¶ 80-85).  In its amended pleading (*Id.*, ¶ 116), Quill confirms that its defamation claim is based on paragraphs 80-85 of its First Amended Complaint, as well purported republications of these statements by third parties (*Id.*, ¶¶ 87-92).  Quill has alleged that Cain's statements and the republications are defamatory *per se* under Virginia law.  (*Id.*, ¶ 84.)  Quill has also alternatively plead that if Blushing Books is found to not be a co-conspirator, then Cain's statements to Blushing are defamatory as well.  (*Id.*, ¶ 118.)  However, each of these statements fail to state a claim of defamation against Cain because (1) none of the statements are "of and concerning" Quill, and Quill should be estopped from claiming "Zoey Ellis" is a pseudonym "used by Quill" or Quill's "brand" of books; (2) none of the statements are defamatory; (3) the republication statements are neither authorized nor made by Cain; and (4) Cain's statements to Blushing Books are privileged.  Accordingly, Quill's defamation claim must be dismissed in its entirety.

### 1. The Court Should Apply Judicial Estoppel.

This case cries out for application of "judicial estoppel" to prevent Quill from now claiming that "Zoey Ellis" is pseudonym "used by Quill" or its "brand" of books.  Through manipulative self-contradiction, Quill now seeks to claim that purportedly defamatory statements concerning "Zoey Ellis" are actionable by Quill.  Quill should be estopped from doing that.

Under judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation omitted).  Federal courts have uniformly recognized that judicial estoppel should be used "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*. at 749-50 (citations and

internal quotation marks omitted).   "The circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id*. at 750 (quoting *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982) *and Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996)).   Therefore, although federal courts have formulated certain tests for the application of judicial estoppel, the doctrine of judicial estoppel is sufficiently elastic to allow it to perform its essential function of protecting the judicial process from a party's manipulative self-contradiction.[1]

Although judicial estoppel is "generally" applied when a party has "prevailed" on an issue, the doctrine is "not necessarily confined to situations where the party asserting the earlier contrary position there prevailed;" rather, judicial estoppel may be "invoked in these circumstances to prevent the party from 'playing fast and loose' with the courts, and to protect the essential integrity of the judicial process." *Allen*, 667 F.2d at 1166, 1167.   At bottom, the "essential function and justification [of judicial estoppel] is to prevent the use of 'intentional self-contradiction … as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id*. at 1167 (citation omitted).   To protect the essential integrity of the judicial process in this action, the Court should apply judicial estoppel to prevent Quill from asserting defamation claims that can only be asserted by the non-party, individual, woman author residing in England, who uses the pseudonym "Zoey Ellis."

Quill repeatedly told the Oklahoma court that "Zoey Ellis" was the pseudonym of an individual—a woman author residing in England.   Quill further contended it did not have to

---

[1]  The general formulation of judicial estoppel in the Fourth Circuit is this: (1) "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation;" (2) "the position sought to be estopped must be one of fact rather than law or legal theory;" (3) "the prior inconsistent position must have been accepted by the court;" and (4) "the party sought to be estopped must have intentionally misled the court to gain unfair advantage." *See Lowery*, 92 F.3d at 223-24.  This formula should not be rigidly applied.

respond to discovery directed to "Zoey Ellis" because she was "a third party individual who is not named in the [Oklahoma] action."  Now, however, Quill is "playing fast and loose" with its allegations and claims that "Zoey Ellis" is a pseudonym "used by Quill" and refers to its "brand of books."  Quill's manipulative self-contradiction cannot be tolerated and should be estopped.

Moreover, Quill's self-contradictions fit neatly under the Fourth Circuit's formula for application of this doctrine.  The first two elements are easily met: First, the positions taken in Oklahoma ("Zoey Ellis" is the pseudonym of a "third party individual" separate from Quill) and here ("Zoey Ellis" is a "pseudonym used by Quill" or Quill's "brand") are inconsistent.  Second, the identity of "Zoey Ellis" is a question of fact—the only truthful identification being that she is an individual woman author residing in England.

Third, the Oklahoma court "accepted" Quill's representation that "Zoey Ellis" was an individual—a "promising new author"—even if no merits adjudication hinged on that.  The motion to proceed pseudonymously was not denied because the Oklahoma court doubted that the "Zoey Ellis" was an individual author, but only because "her" interest in seeking to remain anonymous was merely commercial.  Specifically, the Oklahoma court found that "This matter involves claims related to a fictional romance series authored by ***Plaintiff Ellis under her professional pseudonym Zoey Ellis***."  *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Oct. 11, 2018) (Doc. 5, *Order* at 1) (emphasis added).  The alleged injury to "her" professional reputation, however, did not present "exceptional circumstances" that warranted suing pseudonymously.  *Id.* (Doc. 5, *Order* at 3-4.) In addition, Quill thwarted Blushing Book's attempts to obtain discovery into the actual identity of "Zoey Ellis" pseudonym by objecting that "Zoey Ellis" is a "third party individual who is not a named party in the [Oklahoma] action."  Therefore, Quill successfully contended that "Zoey

Ellis" was the pseudonym of a "third party individual," rather than Quill's own "brand" or a pseudonym "used by" Quill.

Fourth, there can be no doubt that Quill is acting intentionally to mislead the Court. After the motion to proceed pseudonymously was denied, "Zoey Ellis" was dropped as a plaintiff in Oklahoma, and Quill refused to respond to discovery about "Zoey Ellis" because she was a "third-party individual" who was "not a named party" to that action. Now, when trying to assert a state law defamation claim in Virginia, Quill manipulatively tries to argue the opposite of the position it successfully asserted in Oklahoma.

When previously defending the Complaint, Quill contended that "The Complaint makes clear that 'Zoey Ellis' is a brand used by Quill for the identification of a principal author, who is published by Quill. For all practical purposes, at the time the defamatory statements were made, 'Zoey Ellis' was virtually synonymous with Quill." (Dkt. No. 20, *Quill Br. Opp*. at 20 (citing Dkt. No. 1, *Complaint*, ¶ 14.)  Such obvious self-contradiction cannot be chalked-up to mistake or inadvertence. Rather, it is a cynical and deliberate attempt to "play fast and loose" with the facts. "Zoey Ellis" cannot be both "a third party individual who is not a party named in the [Oklahoma] case" and "virtually synonymous with Quill," the sole plaintiff in this case.

Accordingly, the Court should find that Quill is judicially estopped from claiming that "Zoey Ellis" is a "pseudonym used by Quill," or is Quill's "brand," or is "virtually synonymous with Quill" for purposes of determining whether the alleged defamatory statements are "of and concerning" Quill.

### 2. Quill's Defamation Claim Fails Because the Allegedly Defamatory Statements are not "Of and Concerning" Quill.

To properly plead the second element of a defamation claim, the plaintiff must show, *inter alia*, that the statement at issue is "both false and defamatory" and "of and concerning" the

person or entity bringing the lawsuit.  *Virgina Citizens Defense League v. Couric*, 910 F.3d 780, 783 (4th Cir. 2018).  Thus,

> a statement . . . is defamatory per se when it can reasonably be understood to suggest that **a person** is unfit in his or her trade. There must be a nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of **the plaintiff**.

*Id.* at 784-785 (citations omitted) (emphasis added).  Whether a statement is defamatory is decided as a matter of law.  *Id.* at 784.  Allegedly defamatory statements "must be taken as a whole and in the sense in which it would be understood by the readers to whom it was addressed."  *Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013) (internal quotations and citations omitted).  Further, the statements must be "construed by 'their plain and natural meaning.'"  *Couric*, 910 at 784 (citation omitted).  When looking at the First Amended Complaint through this lens, it is clear that Quill's defamation allegations fail at the threshold by failing to meet the "of or concerning" element.

Quill alleges three defamatory statements that Cain purportedly made against Quill, which is a corporation and publisher located in London, England.  These statements are as follows:

- a February 2019 Facebook post about the Oklahoma lawsuit (*Id.* at ¶ 80);

- a post on Cain's website, dated March 11, 2019 (*Id.* at ¶ 83); and

- a "March 20, 2019" Facebook post (*Id.* at ¶ 85).

None of these statements is actionable by Quill.  The third statement, referenced in paragraph 85 of the First Amended Complaint, apparently has been mistakenly included in Quill's allegations.  As for the other two statements (the February 2019 post is attached as **Exhibit C** to this Motion, and the March 11, 2019 post is Exhibit 3 to the First Amended Complaint, Dkt. No. 27-3),

neither is about Quill nor mentions Quill at all.  Indeed, first two posts clearly reveal that all of Cain's statements are directed at "Zoey Ellis," "an individual," "her," "the author," and "Zoey Ellis' books."  For instance, in **Exhibit C** hereto, Cain states "The frivolous lawsuit brought against me in Oklahoma ***by an individual***…" (emphasis added).  There is no mention of Quill or Ellis' publisher in this post.  Each alleged defamatory statement is analyzed separately, starting with the third statement:

*"**March 20, 2019**" Facebook Post (**Exhibit B**):*  Despite purporting to quote a Facebook post made by Cain "against Quill" in paragraph 85, Quill does not attach that post—***because Cain never made that statement "against" or "about" Quill or "Zoey Ellis*****."**

The exact quote—"*Do I believe she plagiarized my story? Yes.*"—was not made about Quill or "Zoey Ellis," nor was that statement made on "March 20, 2019."  Instead, that exact statement was made by Cain on Facebook on **March 24, 2016**, about a different author and book long before she had ever heard of "Zoey Ellis."  (**Exhibit B**).[2]  The exact statement quoted in Paragraph 85 of the First Amended Complaint can be seen on the last page of the 2016 post, in the second line of the paragraph beginning "I know a lot of you are my readers … ."  The 2016 Facebook post was attached to Quill and Ellis' Oklahoma Complaint as a purported example of how Cain "engaged in similar acts with other authors writing omegaverse fan fiction."  *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al*., No. CIV-18-920-G (W.D. Okla. filed Sept. 18, 2018) (Doc. 1 & 1-16, *Complaint*, ¶ 72 & Exhibit 16).  A blogger (*nom de plume*

---

[2]  Pursuant to Rule 10(c), Cain attaches Exhibit B and relies on it in this motion because it was referenced by Quill in the First Amended Complaint but not attached.  It is settled law that documents sufficiently referred to in the complaint may be presented by the defendant and considered by the Court without converting a Rule 12(b)(6) motion into one for summary judgment.  *See Phillips v. LCI Int'l, Inc*., 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995), *aff'd sub nom Gasner v. Board of Supervisors*, 103 F.3d 351 (4th Cir. 1996).

"Golden Angel") who comments on the "omegaverse" fiction, in fact, posted an online article dated March 20, 2019, which, *inter alia*, quotes from Cain's 2016 Facebook post, which the blogger cites as "Cain's Facebook post" and "Exhibit 16" from the Oklahoma case.[3]  That blog post also is referenced in paragraph 89 of First Amended Complaint, which also mistakenly describes Cain's 2016 Facebook post as "about Quill," which it is not.  The prior inclusion of Cain's 2016 Facebook post in the Oklahoma action appears to have been mistakenly expanded into the allegations found in paragraphs 85 and 89 in Quill's amended pleading here in Virginia.

As can be seen from **Exhibit B**, Cain's 2016 statement never references Quill, "Zoey Ellis," or Ellis' books.   Instead, it clearly references another author and another book ("TheDragonsMaiden" and "her story *To Mate an Omega*").   Because the alleged "March 20, 2019" statement is not "of or concerning" Quill—and appears to have been mistakenly included in the First Amended Complaint—this statement cannot be defamatory (either as a statement by Cain or as a "republished" statement), and so fails to state a claim.

*March 11, 2019 Website Post (Dkt. No. 27-3):*  In the March 11, 2019 website post, Cain makes the following statements (emphasis added):

- "When it came to my attention that **Zoey Ellis' books** infringed on my copyright of Born to be Bound, I kept silent on social media, did not engage with **the author**, and remained professional."

- "I stayed silent as **Zoey Ellis** accused me of blackmail, of slander, of harassment–without a shred of evidence."

- "What made this abuse of my character particularly egregious was that **this very same author** was one I had previously encouraged and promoted."

---

[3] http://goldeniangel.blogspot.com/2019/03/copyrights-dcma-abuse-and-lawsuits.html.

- "*After* I had promoted **her book** and **her brand**…"

- "My publisher filed DMCA notices listing examples of infringement to remove **this person's** infringing works from publication."

- "**The individual** continues to pursue claims against my publisher."

- "We must stand as a community and refute the idea that **one author** can bully and manipulate another author…"

(Doc. 27-3, *First Amended Complaint*, Exhibit 3.)   Each of these statements is about "Zoey Ellis," or "her," as an "individual" and an "author."   None mentions Quill, a corporation and publishing house, and none references Quill's "brand."   The statements in this post are not actionable by Quill.

**February 13, 2019 Post (Exhibit C)**:   Finally, the February 13, 2019 post is directed at "**an individual** seeking to deflect criticism about plagiarism," not at Quill (**Exhibit C**) (emphasis added).   Thus, the statement in this post is not "of or concerning "Quill.

In short, all these statements are directed at "Zoey Ellis," or "her," or "an individual," or "an author," not at Quill, a corporation and publisher.   Moreover, as shown above, Quill's attempts to stand in for a real person and author, and to allege that "Zoey Ellis" is *its* pseudonym or *its* "brand," should not be allowed.   In any event, as shown next, when an allegedly *per se* defamatory statement is directed at an individual, only the individual may sue, not an entity with which the individual is associated.

The Fourth Circuit Court's ruling in *Couric* is based on facts similar to those here.   In *Couric*, the court analyzed whether a news film about gun control had defamed the Virginia Citizens Defense League ("VCDL") by intentionally editing the film to make it look as if the VCDL representatives who had been interviewed on the air had no response to Ms. Couric's

pointed questions. *Couric*, 910 at 782-83. The Fourth Circuit agreed with the district court that the film at issue could not be "reasonably construed as implying that the VCDL was unfit as a 'pro-Second Amendment advocacy organization.'" *Id.* at 785. Instead, the Fourth Circuit stated that, "[a]t most, the film suggests that a handful of VCDL members, none of whom are identified as leaders within the organization, could not immediately answer a difficult gun policy question." *Id.* Thus, because the film itself neither identified the status of the VCDL representatives nor implied that VCDL "was unfit" as an "advocacy organization," the statements were not "of and concerning" the VCDL.

Likewise, here, neither of the two statements made by Cain and at issue in the First Amended Complaint could be interpreted by any recipient to mean that ***Quill*** was unfit as a publisher. Any person viewing or reading the statements made by Cain would only recognize them as being made about "***Zoey Ellis***," as an "***individual***" or as an "***author***," or about "***her books***" or "***her brand***." Stretching Cain's statements to be about Quill, or about Quill's fitness as a publisher, would be a gross distortion that is outside of the statements' "plain and natural meaning." Because the alleged defamatory statements are not "of and concerning" Quill, Quill's claims of defamation must be dismissed for failure to state a claim.

The correctness of this outcome under Virginia law is confirmed by decisions from other states' courts, which have held that a corporation cannot assert a defamation claim based on statements that are "of or concerning" officers, stockholders, or other individuals associated with the corporation. For example, in *Brayton v. Cleveland Special Police Co*., 57 N.E. 1085 (Ohio 1900), the defendant allegedly stated that a night watchman had himself committed arson on the guarded premises. When the security company sued for trade libel *per se*, the Supreme Court of Ohio held that "Although a corporation may sue for a slander upon it in the way of its business

or trade, it cannot sue for a slander upon one of its stockholders or officers, if the slander be not in direct relation to the trade or business of the corporation; because the right of action is personal and is confined strictly to the person of whom the slanderous language was uttered." *Id.* at 1086. The Ohio Supreme Court reasoned that although one might argue that a slander of an officer or stockholder "affects" the corporation "directly," allegedly defamatory statements directed at the "personal character" of an officer or stockholder are not spoken in "direct relation" to the corporation's business. *Id.* Similarly, in *Washburn v. Wright*, 261 Cal. App. 2d 789, 793-94 (Cal. App. 1968) (collecting cases), the California Court of Appeal adopted the general rule that if *per se* defamatory words "relate solely" to an individual "in his private or personal capacity, only the individual can complain," not the corporation with which he is associated. That general rule applies here.

If the alleged statements about "plagiarism" committed by "Zoey Ellis" are actionable as defamation *per se* (which Cain does not concede), they are directed at "Zoey Ellis" in her "private and personal capacity" because they purportedly accuse "her" of plagiarism. Just like the night watchman accused of arson in *Brayton*, the allegedly defamatory statements about "plagiarism" are aimed at "Zoey Ellis," an "individual," and are not "directly related" to the fitness of the corporate publisher with which "Zoey Ellis" may be associated, Quill. The defamation count fails on this basis alone—but there is more.

### 3. Quill's Defamation Claim Also Fails Because Cain's Statements Not Defamatory.

The First Amendment may shield a challenged statement from defamation liability if it states the speaker's ***opinion***. *Milkovich v. Loarin Journal Co.*, 497 U.S. 1, 18-19 (1990). Quill's defamation claim not only fails because it is not "of or concerning" Quill, but it also fails because the allegedly defamatory statements made by Cain are merely her subjective

commentary on underlying facts—meaning they are not defamatory at all, but instead shielded from liability by the First Amendment. *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) (holding that where the bases for a conclusion are disclosed, "no reasonable reader would consider the [conclusion] anything but the opinion of the author drawn from the circumstances related"); *accord Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 726, 730 (1st Cir. 1992) (a publication criticizing the "Phantom of the Opera" as "a rip-off, a fraud, a scandal, a snake-oil job" "could be understood only as [the author's] personal conclusion about the information presented, not as a statement of fact" where the underlying facts concerning the production's marketing were disclosed); *Levin v. McPhee*, 119 F.3d 189, 191-92 (2d Cir. 1997) ("if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable"). This settled rule applies to the defamation allegations now at issue.

Here, the allegedly defamatory statements, which were made by Cain after the Oklahoma action was dismissed as to Cain, include merely (i) her opinions about what her readers had told her about Ellis' books, (ii) statements about the claims filed against her by Ellis in the Oklahoma action, and (iii) her opinions of the underlying lawsuit and resulting dismissal from Oklahoma. (Doc. 27-3, *First Amended Complaint*, Ex. 3 at pp. 1-3.) These statements are nothing more than Cain's personal conclusion and subjective view about the information presented, and likewise are shielded from liability. *See Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) (holding that "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable"). Because the allegedly defamatory statements made by Cain are her own commentary and nothing more, her statements are not

defamatory and are protected by the First Amendment.   Accordingly, Quill's claims of defamation should be dismissed on this basis, as well.

### 4.      The Republication Statements are not attributable to Cain.

Quill alleges that its defamation claim against Cain is also based on paragraphs 87-92 of its First Amended Complaint.   These paragraphs are each based on "republications" made by third parties, and as alleged by Quill were made as a result of the DMCA notices and the complaint that Quill and Ellis filed in Oklahoma.   (Doc. 27, *First Amended Complaint*, ¶¶ 87-92.)   The allegations in these paragraphs do not constitute defamation by Cain "against Quill" because Cain did not cause or authorize republication of these statements.

To allege Cain's liability for republished statements, Quill must plead facts to plausibly establish that "republication or repetition" of a defamatory statement "by third persons" (i) "is the natural and probable consequence of" Cain's initial statement, or (ii) that Cain "has presumptively or actually authorized or directed its republication." *Blue Ridge Bank v. Veribanc, Inc.,* 866 F.2d 681, 689 (4th Cir. 1989) (applying Virginia law).   "However, [Cain] is not responsible if the republication is not the natural and probable consequence of [her action] but is the independent and unauthorized act of a third party." (*Id*.).   No authorization or direction is alleged, and Quill's formulaic allegations do not bridge the gap with facts plausibly establishing that republication occurred as a "natural and probable consequence" as opposed to "the independent and unauthorized act of a third party."

Indeed, a similar problem was at issue in *Twombly*, where the plaintiff failed to plead facts showing that it that market actors acted "in concert" rather than independently through "parallel conduct."   The Supreme Court held that an antitrust pleader must allege facts that tend to plausibly establish concerted action, which could not be satisfied by mere "formulaic pleading." *Twombly*, 550 U.S. at 555.   Here, Quill offers only formulaic pleading—merely

alleging that republication was "a foreseeable consequence" of Cain's original statement, instead of an "independent and unauthorized" statement by subsequent speakers seeking to join the debate to have their own say.

Accordingly, Quill's allegations fail to state a claim based on republication.

> **5.    Cain's Statements to Blushing Books are preempted by the DMCA and Fail to State a Claim for Defamation.**

Quill alternatively pleads that if Blushing Books and Cain are not co-conspirators, then the statements made by Cain to Blushing Books are also defamatory statements (Doc. 27, *First Amended Complaint*, ¶ 118).  Plaintiff does not point out which of statements it refers to; however, all of the alleged statements made by Cain to Blushing Books were in furtherance of the DMCA notices filed by Blushing Books and discussed between the two parties.  As such, each of these statements are clearly preempted under the DMCA.

Not only is this alternative claim preempted, but there can be no defamation claim for statements made between Cain and Blushing Books.  Blushing Books was the exclusive publisher of Cain's book series and had a common interest with Cain in protecting its rights in the books.  Accordingly, these communications between similarly interested parties is not a "publication" but is, instead, protected as privileged and not subject to claims of defamation.  *See Larimore v. Blaylock*, 259 Va. 568, 572, 528 S.E.2d 119 (2000).  Thus, Quill's defamation claims fail on this basis as well.

> **B.    PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS (COUNT II) IS STILL PREEMPTED BY THE DMCA AND FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Under Virginia law, to establish a *prima facie* claim for tortious interference with business relationships ("tortious interference"), a plaintiff must plead the following elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of that contractual relationship or

> business expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 447 (E.D. Va. 2002) (citing *Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E. 2d 97 (1985)). However, even if Quill could establish these elements, which it cannot, Quill's claim for tortious interference still fails as a matter of law because (1) Quill's tortious interference claim depends on purported "continuing" defamatory statements, which, as shown above, are not actionable by Quill; (2) Quill's tortious interference claim is still preempted by the DMCA; and (3) Quill fails to state all the elements of interference that would establish a claim for which relief can be granted.

This Court already ruled that state law claims based solely on the DMCA are preempted. (Doc. 24, *Amended Order* at 3-4) (dismissing all of Quill's state law claims, as they were tied to the DMCA takedown notices). To "avoid preemption, the state cause of action must contain an extra element." *Wigand v. Costech Techs., Inc.*, No. 3:07CV440-HEH, 2008 WL 65517, at *8 (E.D. Va. Jan. 4, 2008). Here, Plaintiff attempts to avoid preemption by changing its allegations to be based on Cain's "continuing defamation of Quill." (Doc. 27, *First Amended Complaint*, ¶¶ 108, 110.) However, it is clear from Quill's underlying alleged facts that this revision is merely a conclusory statement with no supporting elements.

In fact, the only interference mentioned in the underlying facts is the interference with Quill's vendors stemming from the DMCA notices. (*Id.*, ¶ 3 ("the filing of intentionally and materially false notices ("take down notices") . . . resulted in interference with Quill's distributor contract with Draft2Digital…"), and ¶ 70 ("On or about May 16, 2018, and thereafter, Quill was advised by various online vendors that take-down notices had been filed against all three books . . . and accordingly, all three books had been removed from sale across their platforms.").) There

is no other mention in the First Amended Complaint of any acts by Cain that disturbed or interfered with Quill's distributor contracts – nor could there be.  Quill's complaint admits that Ellis' books were put back up by its vendors within several months of Quill filing counter-notices.  (*Id.* at ¶¶ 74, 78.)  Thus, the books were put back up by the vendors *at least 6 months before* Cain made allegedly separate defamation statements in February and March 2019.  (*Id.* at ¶¶ 78-85.)  Accordingly, Quill's tortious interference claim is based solely on the DMCA notices and is thus preempted.  This claim now should be dismissed *with prejudice*.

Additionally, Quill fails to state a claim for tortious interference.  In *Wigand*, the Court not only found that the plaintiffs' tortious interference claim was preempted, but also held that the plaintiffs failed to state a claim altogether.  The court stated that the plaintiffs "merely mirror[ed] the statutory allegation in their Complaint, stating that Wigand had valid business expectancies between herself and her potential clients, Defendants knew of the existence of the valid business expectations, Defendants intentionally interfered with those business expectations, and Wigand did not realize her business expectations as a result of this intentional interference."  *Wigand*, 2008 WL 65517, at *7.  The same reasoning bars Quill's amended claims.

Here, Plaintiff also "merely mirrors" the elements.  Quill's tortious interference claim states: "Quill had valid and protectable prospective business relations and expectancies"; "Cain had knowledge of Quill's prospective business relations and expectancies"; and "Cain intentionally interfered with Quill's prospective business relations and expectancies . . . through her continuing defamation of Quill."  (Doc. 27, *First Amended Complaint*, ¶¶ 106-10.)  While the Court "must assume that the allegations of the complaint are true and construe them in the light most favorable to the plaintiff," "the Court is not bound to accept as true a legal conclusion couched as a factual allegation."  *Wigand*, 2008 WL 65517, at *8 (internal quotations omitted).

Like the claim dismissed in *Wigand*, Quill's claim for tortious interference "is a patchwork quilt of legal conclusions that is insufficient to serve as a basis for relief under Virginia law," has no underlying factual support (other than those based solely on the DMCA claims), and therefore, must be dismissed. *Id.* Quill has not, and cannot, overcome this pleading deficiency.

**C.   PLAINTIFF'S CLAIM FOR STATUTORY CIVIL CONSPIRACY (COUNT IV) IS PREEMPTED UNDER THE DMCA AND FAILS TO STATE A CLAIM.**

Quill makes numerous allegations in its First Amended Complaint about a purported conspiracy between Cain and Blushing Books for the purpose of defaming and harming Quill in the sending of the DMCA notices and continuing to defame Quill. However, this claim must be dismissed for any of three reasons:  (1) the alleged "continuing" defamatory statements are not "of and concerning" Quill, so no "underlying tort" has been alleged; (2) these claims are still preempted by the DMCA; and (3) Cain could not conspire with her agent, Blushing Books.

Like Quill's claims for tortious interference, there are no underlying facts alleged to establish that Blushing Books and Cain conspired to continue to defame Quill. All the allegations related to Blushing Books and Cain's "concerted" actions, in fact, are related to the discussions preceding, and the preparation of, the DMCA take-down notices. Therefore, state law claims based on that conduct is preempted under the DMCA or otherwise never resulted in harm to Quill.

Quill points first to paragraph 52 as supporting conspiracy (Doc. 27, *First Amended Complaint*, ¶ 126) – but this is merely a "draft Facebook post" that was ***never posted***, and Quill does not and cannot allege it was. Quill then points to paragraph 62 in which it alleges Cain asks Blushing Books to call Amazon. (*Id.*)  However, this statement is merely in furtherance of the DMCA notices and Cain is requesting that Blushing Books follow up on what Amazon was doing about the DMCA notices. Thus, the allegations in paragraph 62 are clearly preempted and

not a separate action giving rise to a state-law conspiracy claim. Finally, Quill points to Paragraphs 93-95 as evidence of a purported conspiracy between Blushing Books and Cain to remove an additional series authored by Ellis. However, there is absolutely no allegation, nor can there be, that any action by Blushing Books or Cain ever occurred to harm Quill as a result of these statements. No additional take-down notices were filed, there is no allegation that Blushing Books' employee took the action requested by Blushing Books, and no additional letter was sent by Blushing Books or Cain to Amazon or any vendor after July 9, 2018. Accordingly, these allegations fail to state a claim of statutory civil conspiracy and should be dismissed.

Quill's conspiracy claim also fails as alleged because Quill alleges that Cain and Blushing Books are principal and agent. As a matter of law, a principal and agent are incapable of conspiring together because a civil conspiracy claim must include two separate actors in a concerted action. *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003). It is well known that a principal and its agent are not separate persons for purposes of the conspiracy statute. *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 617 (E.D. Va. 2005) (granting defendant's motion to dismiss statutory conspiracy claim because "an agent may not conspire with its principal under the intracorporate immunity doctrine"). Thus, Quill fails to allege that separate actors conspired.

At the time of the alleged acts leading up to the DMCA take down notices, Quill alleges that Blushing Books was Cain's publisher. (Doc. 27, *First Amended Complaint* ¶ 2.) As the authorized, exclusive publisher of Cain's book series, Blushing Books was Cain's agent and acting under the scope of the agreement between itself and Cain when it sent in the take-down notices of Ellis' books. In fact, Quill has admitted that Blushing Books is Ms. Cain's "agent" in

the Oklahoma action.[4]   Moreover, the allegations set forth in the First Amended Complaint, as pleaded by Quill, purport to show that Blushing Books was acting as Cain's agent when it took certain measures to protect Cain and its own rights in Cain's Born Series.  (*Id.* ¶¶ 45, 49-52, 59-63, 93-94, 96.)  Accordingly, Quill's statutory civil conspiracy claim must be dismissed because there is no circumstance in which Quill can prove two separate actors as required by the statute.

Finally, Quill's claim for statutory civil conspiracy fails because there is no underlying tort.  *Levingston v. Earle*, No. CV-12-08165, 2013 WL 6119036, at *4 (D. Ariz. Nov. 21, 2013) (citations omitted) ("Liability for civil conspiracy requires that two more individuals agree and thereupon accomplish ***an underlying tort*** which the alleged conspirators agreed to commit.") (emphasis added); *see also Dunlap v. Cottmon Transmissions Sys.*, 287 Va. 207, 215-16, 754 S.E.2d 313 (2014) (citing numerous Virginia cases for the proposition that an underlying tort is required to support a civil conspiracy claim).  It is obvious that Quill has attempted to avoid the Court's prior Order dismissing Quill's statutory civil conspiracy as relying on the alleged actions that Blushing Books and Cain took in filing the DMCA notices.  Yet, Quill's repleaded claims either depend on the non-actionable "continuing" defamation claims or are merely conclusory statements without allegations of actionable conduct, which are wholly insufficient to state a claim under Virginia's civil conspiracy statute.

---

[4] *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Oct. 17, 2018) (Doc. 40, *Plaintiff's Final Witness and Exhibit List*, filed May 10, 2019 at. p. 3) (describing Blushing Books as Cain's "agent and publisher").

## **CONCLUSION**

For the foregoing reasons, Cain respectfully requests that the Court dismiss Quill's state law claims with prejudice under Rule 12(b)(6).


September 23, 2019                                Respectfully submitted,

/s/ Craig C. Reilly
Craig C. Reilly, VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
E:
*Counsel for Defendant*

Shawn M. Dellegar, OBA # 20973
Crowe & Dunlevy, P.C.
321 South Boston Avenue, Suite 500
Tulsa, Oklahoma 74103
T: (918) 592-9800
E: shawn.dellegar@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice Pending)*

Tynia A. Watson, OBA # 30765
Crowe & Dunlevy, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
T: (405) 235-7500
E: tynia.watson@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice Pending)*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*