**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **QUILL INK BOOKS LIMITED,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 1:19-cv-476-LO-MSN** |
| | ) |
| **RACHELLE SOTO a/k/a ADDISON CAIN,** | ) |
| | ) |
| **Defendant.** | ) |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

Defendant Ms. Cain again asks the Court to dismiss the three state claims pled in this action. The claims have been pled to be independent of the process and substance of filing a false take-down notice under the Digital Millenniums Copyright Act, as required by the Court's prior rulings. The Amended Complaint states a claim for defamation, for tortious interference with business, and for statutory conspiracy, independent of the DMCA claim. The motion should be denied.

## <u>STANDARD</u>

So much of Ms. Cain's argument, particularly on the defamation claim, relies on what she asserts she meant or did, that we are well-reminded this is a motion under Rule 12(b)(6), not Rule 56.

Rule 12(b)(6) permits dismissal of a complaint, or a claim within a complaint, based on the plaintiff's "failure to state a claim upon which relief can be granted." Rule 8 of the Federal Rules requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), so as to " 'give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests,' " *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (omission in original). The Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be "plausible on its face" and thereby "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 570, 127 S.Ct. 1955 (internal citations omitted). The plausibility requirement is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).

Because a 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court " 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.' " *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.,* 684 F.3d 462, 467 (4th Cir.2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir.2011)). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.' " *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Although the truth of the facts alleged in a complaint is assumed, this Court is not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd.,* 213 F.3d 175, 180 (4th Cir. 2000). Moreover, since the Court "may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and

authentic,' " *Kensington Volunteer Fire Dep't,* 684 F.3d at 467 (quoting *Philips v. Pitt Cnty. Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir.2009)), Quill does not object to the Court's consideration of the materials submitted by Ms. Cain relating to the Oklahoma litigation – integral to the estoppel issue – and has appended additional materials from that case to this brief.

## ARGUMENT

## I.      THE AMENDED COMPLAINT STATES A CLAIM OF DEFAMATION

"The Complaint makes clear that 'Zoey Ellis' is a brand used by Quill for the identification of a principal author, who is published by Quill.  For all practical purposes, at the time the defamatory statements were made, 'Zoey Ellis' was virtually synonymous with Quill."

**This**, *verbatim*, is the proposition Ms. Cain argues is intended to "*mislead"* the Court and a "*cynical* and deliberate attempt to '*play fast and loose'* with the facts."  **This** is the proposition Ms. Cain argues Quill should be estopped from arguing.  But **this**, quoted verbatim from Quill's brief on the earlier motion to dismiss, and quoted accusingly by Ms. Cain in her brief now, is nothing other than a straightforward proposition of true and consistent fact.[1]  To argue otherwise misreads the documents from the Oklahoma litigation, ignores a century of settled Virginia law on defamation, and attempts badly to misapply governing law on estoppel.

Indeed, after reading Ms. Cain's brief repeatedly, it is hard to discern *any* inconsistency at all between the allegations in the Complaint and Amended Complaint in this case, and the position Quill successfully took in the Western District of Oklahoma – resulting in a judgment entered by the United States District Court for the Western District of Oklahoma that Ms. Cain now labels a

---

[1]      The quoted first paragraph of this section is from *Quill's Opposition to Motion to Dismiss the [Initial] Complaint,* ECF 20, at 20, which itself cites the original Complaint, ECF 1, at Paragraph 14.  It is quoted by Ms. Cain at page 10 of her *Brief in Support of Motion to Dismiss the Amended Complaint,* ECF 29.

"sham."   The position articulated by Quill in Oklahoma tracked precisely the Amended Complaint's allegations in this Court, ECF 27: "These claims arise out of actions taken by Cain . . . to defame Quill and its Myth of Omega series written under the 'Zoey Ellis' brand of books. . . ."  Amended Complaint, Paragraph 2.  "'Zoey Ellis' is a pseudonym used by Quill for the identification of a principal author, a British subject resident in England, who is published by Quill, for the purposes of publishing certain books."   Amended Complaint, Paragraph 14.  Zoey Ellis is a British subject; she is not party to this case and was not a party to the Oklahoma case when judgment was entered against Ms. Cain's publisher; her name is described in both cases as a pseudonym as well as a brand name for books published by Quill.[2]  As Quill responded in the Oklahoma case when asked by Ms. Cain's publisher for "Zoey Ellis" address, birthday, and U.K. National Insurance health services identification number – in an Interrogatory expressly directed by Cain's publisher "To the author known as Zoey Ellis" -- that interrogatory was "directed to a third-party individual who is not a named party in the present action."[3]  No motion to compel was filed  on that issue.

Ms. Cain's argument on estoppel, like her argument that the defamatory falsehoods she spread were not "of or concerning" Ms. Ellis' publisher, is wrong on the law as well as wrong on the facts.

---

[2]      *See, e.g.,* Attachment 1 to this Memorandum, *Defendant's [Blushing Books]  Responses to Plaintiff's Third Set of Discovery Requests [in the Oklahoma Litigation],* at pages 8-9 (Quill asking, and Blushing Books responding to, multiple interrogatories about "the 'Zoey Ellis' brand of books").

[3]      Exhibit A to Ms. Cain's *Brief in Support of Motion to Dismiss Amended Complaint,* which is Quill's *Objections and Responses* to Ms. Cain's publisher's discovery requests in the Oklahoma case.  Interrogatory 1, at 4-5.

A.     **<u>The Defamation was "Of or Concerning" Quill</u>**

A claim of defamation lies even if the statements do not expressly mention the plaintiff, so long as the statement is "of or concerning" the plaintiff.  This has been Virginia law for over a century.  In *Ewell v. Bouthwell,* 138 Va. 402, 121 S.E. 912 (1924), the then-Supreme Court of Appeals held:

> If . . . the publication does in fact contain such a personal imputation against the plaintiff, then no artful obscurity in the form of its expression will be allowed to defeat the plaintiff's right of action.

138 Va. at 415.   The question is whether the statement is made regarding such a small group (here, a group of one – Quill's principal author) that the plaintiff  may be identified as one regarding whom the statement was made.

> If the class or group involved is a very large one, and there is little or nothing which applies to the particular person who brings the action, his right of recovery will generally be denied.
>
> \* \* \*
>
> On the other hand, if the language employed is directed towards a comparatively small or restricted group of persons, then any member thereof may sue.  For instance, charges against a public board with a few members may support an action for damages to a single member of that board; and so libelous language against the verdict of a jury may be the subject of an action by a single member of that jury.

138 Va. at 409-410.

That is precisely the case here.  Ms. Cain repeatedly referred to the ***work*** of Ms. Ellis, that is, ***her books*** published by Quill,  as "plagiarism" and "stolen from me."  Amended Complaint, Paragraph 81.  Ms. Cain stated, "Zoey Ellis' ***book*** infringed on my copyright," and was "theft of my work."  Amended Complaint, Paragraph 83.  Ms. Cain also stated that the Oklahoma lawsuit (in which Quill itself was plaintiff) was "frivolous," defamation directed at Quill.  Amended

Complaint, Paragraph 81.  Quill, as the publisher and seller of all "Zoey Ellis" books, is an entity that suffered and continues to suffer both reputational and financial harm – despite all of the reseller's eventual rejection of the invalid DMCA notices, Quill is the entity that suffers injury and will continue to be injured until the allegations of plagiarism and theft – post-DMCA allegations - are retracted or disproven in this case.  Amended Complaint, Paragraph 75.

Does an allegation that it is publishing works that are plagiarized, works that are stolen, works that infringe another's copyright, constitute defamation against a publisher?  The question seems to answer itself in the affirmative.  A plaintiff "need not show that he was mentioned by name in the publication.  Instead, the plaintiff satisfies the 'of or concerning' test if he shows that the publication was intended to refer to him and would be so understood by persons reading it ***who knew him***. . . .  In other words, the test is met if the plaintiff shows that the publication was 'in its description or identification ***such as to lead those who knew or knew of the plaintiff*** to believe that the article was intended to refer to (him)."  *Gazette, Inc. v. Harris,* 229 Va. 1, 37, 325 S.E.2d 713 (1985) (multiple citations omitted) (emphasis added).

It bears emphasis that this is a motion to dismiss, not a motion for summary judgment.  The question is whether Quill has alleged enough to enable it to prove that those who knew Quill published "Zoey Ellis" books – Quill's principal author – would have taken the statements to be of or concerning Quill, as well as of or concerning Ellis.  At the very least, this is a question of fact.

> It is not necessary that the plaintiff be designated by name; it is enough that there is such a description or reference to him that those who hear or reasonably understand the plaintiff to be the person intended.  Extrinsic facts may make it clear that a statement refers to a particular individual although the language used appears to defame nobody.

*Id., citing Restatement (Second) of Torts* § 564 comment b as "consistent with the rule in Virginia" ("even though the publication on its face did not refer to the [plaintiffs] by name, the contemporaneous facts sufficiently connected the publication to the plaintiffs to establish an issue for the jury"). *See WJLA-TV v. Levin,* 264 Va. 140, 153, 564 S.E.2d 382 (2002) (statements by a defendant regarding one specific subject, some of which identify plaintiff and some of which do not, to be considered together to determine whether statements are "of or concerning" plaintiff, even where publication identifying plaintiff is not made until after those statements which do not identify plaintiff); *General Products Co. v. Meredith Corp.,* 526 F. Supp. 546, (E.D. Va. 1981) (Merhige, J.) (where article defamed manufacturers of a specific type of product, manufacturer of that product who was not named in the article and asserted it was one of a relatively small group of such manufacturers stated claim for defamation for purposes of motion to dismiss; determination of whether class size is sufficiently small "must await the development of further evidence"); *Graham v. Young Broadcasting of Richmond, Inc.,* 60 Va. Cir. 376 (owner of corporation may sue separately for defamatory statements made concerning corporation; whether persons who knew corporation and owner "could dissociate the two is a question for the jury").[4]

---

[4] The case upon which Ms. Cain relies is not to the contrary. In *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 783 (2018), the Fourth Circuit devoted little analysis to the "of and concerning" argument. The opinion does indicate, however, that the Court of Appeals agreed with the District Court that the appellant organization could not reasonably be construed as unfit as an advocacy organization, based on the failure of a <u>few</u> of its members, <u>none</u> of whom were leaders within the organization, to answer a complex question posed by an interviewer. *Id.* at 785. That is not this case.

B.      **The Elements of Estoppel Are Missing**

Ms. Cain was, on her own motion, dismissed from the Oklahoma case based on a lack of

personal jurisdiction.[5]   The appropriate doctrine in this case is, therefore, non-mutual offensive

collateral estoppel.   The Court of Appeals for the Fourth Circuit has set out clear standards for the

application of estoppel in these circumstances:

> In order for nonmutual offensive collateral estoppel to apply, the
> party asserting it must establish that:
>
> (1) the issue sought to be precluded is identical to the one previously
> litigated;
>
> (2) the issue was actually determined in the prior proceeding;
>
> (3) that determination was a critical and necessary part of the
> decision in the prior proceeding;
>
> (4) the prior judgment must be final and valid; and
>
> (5) the party to be estopped must have had a full and fair opportunity
> to litigate the issue in the prior proceeding.

*AvalonBay Communities, Inc. v. Wilden,* C.A. 1:08-cv-777, 2008 WL 2431572 (E.D. Va. Aug. 7,

2008) (O'Grady, J.), *citing Sedlack v. Braswell Services Group, Inc.*, 134 F.3d 219, 224 (4th Cir.

1998), *aff'd*, 392 Fed. Appx. 209 (4th Cir. Aug. 24, 2010).   *Accord, Treadwell Original Drifters,*

*LLC v. Original Drifters, Inc.,* C.A. 1:15-cv-580, 2016 U.S.Dist.LEXIS 184587 (E.D. Va. Jan. 26,

2016) (O'Grady, J.), *citing In re: Microsoft Corp. Antitrust Litig.,* 355 F.3d 522, 526 (4th Cir.

---

[5]      Quill brought that case in Oklahoma due to the presence of Quill's U.S. distributor in
Oklahoma, and that Oklahoma entity's receipt of a DMCA notice from Ms. Cain.  Ms. Cain was
dismissed from the case on jurisdictional grounds.   Her publisher later formally admitted,
"Ms. Cain misrepresented her involvement with the filing of the DMCA notices against the 'Zoey
Ellis' brand of books to the United States District Court for the Western District of Oklahoma."
"Admitted.  Cain misrepresented her involvement."   Request for Admission 28 and response by
Blushing Books, Attachment 1, at page 28.

2004), *aff'd,* 670 Fed. Appx. 90 (4th Cir. Feb. 24, 2017).  While the fourth factor is present here (the fifth was neither required nor undertaken in Oklahoma), none of the first three are:

- The "issues" are hardly identical.  Not once in the Oklahoma case was the "issue" (of whether Quill, as publisher suffering loss of revenue and reputation from the persistence of the allegations of plagiarism against its principle author, may recover for defamation) raised, briefed, litigated, or decided.

- Whatever issue Ms. Cain seeks to estop Quill from raising here, it was not "actually determined" in the Oklahoma case.  The judgment there was entered under Fed. R. Civ. P. 68, and it is black-letter law that "a judgment entered by confession, consent, or default" does not have a preclusive effect on subsequent litigation because "none of the issues is actually litigated."  *Restatement (Second) of Judgments*, § 27, as cited in *Treadwell Original Drifters, supra, at* *14.

- What Ms. Cain seeks to estop Quill from arguing in this case was certainly not a "critical and necessary part" of the Oklahoma judgment.  Quill alleged a large number of claims in Oklahoma, only one of which involved defamation.  Claims were asserted for a variety of business torts, copyright abuse, and under the Digital Millennium Copyright Act for the filing of a false DMCA take-down notice.  The judgment entered by the Court in the Western District of Oklahoma stipulated that "the take-down notices transmitted pursuant to the Digital Millennium Copyright Act are invalid," as well as that "Zoey Ellis' Myth of Omega series does not plagiarize Addison Cain's Alpha's Claim series."  Attachments 2 (Offer of Judgment) and 3 (Judgment entered on Offer of Judgment in Oklahoma litigation).  Nothing suggests that the issue of whether Quill may maintain a cause of action

for defamation based on statements referring to its principal author was critical or necessary to that judgment.

Of course, and as discussed above in the introduction to this Section of the brief, ***there are no inconsistent statements of fact.*** The Oklahoma case proceeded on the basis that Ms. Cain's publisher made statements about Zoey Ellis that injured Quill. This case is proceeding on the same basis. Ms. Cain's estoppel argument is wrong on the facts and law.

**C.      Accusations of "Theft" and "Plagiarism" are Not Statements of Opinion**

The multiple statements contained in the February 2019 Facebook post and the March 11, 2019 Internet article constitute defamation, and in most cases also are defamatory *per se.* They are not statements of opinion.

The February 2019 Facebook post, directed to thousands of Ms. Cain's followers and shared hundreds of times, stated:

- The Oklahoma lawsuit was frivolous, and that justice had prevailed because it had been rightfully dismissed.

- The Oklahoma lawsuit had been filed to deflect criticism from the plagiarism of Ms. Cain's work.

- That the "Zoey Ellis" books "have already stolen enough from me."

The March 11, 2019 Facebook post, republished an unknown number of times but at least thrice, including on Twitter and Go Fund Me, stated:

- "Zoey Ellis' book infringed on my copyright" and Cain was asked for information on "my book that she infringed."

- The book constituted "theft of my work."

- The book constituted "unauthorized uses of my works."

- The Oklahoma lawsuit contained "every horrible lie one could think to say about me."

Each of these statements can be proven true or false, which is the test in Virginia for determining whether a defamatory statement is one of fact or mere opinion. *Handberg v. Goldberg,* ___ Va. ___, 831 S.E.2d 700 (2019), provides recent Virginia Supreme Court guidance on this issue:

> [F]or a statement to be actionable as defamation, "it must 'have a provably false factual connotation and thus [be] capable of being proven true or false.' " *Schaecher*, 290 Va. at 98, 772 S.E.2d 589 (quoting *Cashion v. Smith,* 286 Va. 327, 336, 749 S.E.2d 526 (2013)). In other words, "[t]he verifiability of the statement in question [is] a minimum threshold issue. If the defendant's words cannot be described as either true or false, they are not actionable." *Id.* (quoting *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.,* 829 F.2d 1280, 1288 (4th Cir. 1987)). From a constitutional perspective, there is simply "no constitutional value in false statements of fact." *Tharpe v. Saunders*, 285 Va. 476, 481, 737 S.E.2d 890 (2013) (quoting *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 340, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)).

831 S.E.2d at 705. Each of the statements alleged here meet this test[6]:

- Was the Oklahoma lawsuit filed, *inter alia*, by Quill frivolous, or was it not frivolous? That can be determined; indeed, the entry of judgment in favor of Quill has determined it.

---

[6]    This exercise is not intended to be comprehensive or to include all of the defamatory statements every time the Brief refers to them, but only to demonstrate that the statements alleged are not opinion. Although not required to do so in federal court, *see Skillstorm v. Electronic Data Sys., LLC,* 666 F. Supp.2d 610, 619 (E.D. Va. 2009), Quill has attempted to set forth, in so far as currently known to it, each defamatory statement with particularity.

- Did the books published by Quill constitute "theft of my work," "stolen" from Ms. Cain, or not?  These statements are either true – her work was stolen and there was theft – or not.

- Did the books published by Quill constitute plagiarism of Ms. Cain's books? Again, this can be determined readily.  Indeed, Ms. Cain already has made that factual determination (Cain statement that Quill book is "not outright plagiarism," Amended Complaint at Paragraph 41), as has her publisher Blushing Books (stipulation that "Zoey Ellis' Myth of Omega series does not plagiarize Addison Cain's Alpha's Claim series" embodied in Oklahoma federal court judgment).

- Did the books published by Quill infringe on Ms. Cain's copyright?  Again, this is a straightforward question with which courts wrestle every day.

To hold that accusations of theft, stealing, plagiarism, copyright infringement, and the filing of frivolous litigation are, as Ms. Cain urges, "nothing more than Cain's personal conclusion and subjective view about the information presented," *Brief in Support,* ECF 29 at 17, would eviscerate the law of defamation in Virginia.  The statements are, in fact, even more susceptible to empirical disproof than the statements the Virginia Supreme Court held to constitute false statements of fact in *Handberg*, *supra*.  Those false statements of fact, not opinion, included claims that the plaintiff educational advocate engaged in "maximizing its billing," was billing for services not provided, and that the advocate could not be trusted because she was "so opportunistic and aggressive about pursuing money."  If those statements are fact, not opinion, then the statements of theft, plagiarism, and copyright infringement in this case are false statements of fact as well.  *Accord, Steele v. Goodman,* 382 F. Supp. 3d 403 (E.D. Va. 2019) (Lauck, J.) (statements that plaintiff was a "serious con man" and his program a "serious fraud" constituted *per se* defamatory statements of fact, not

opinion); *Lanier v. Squiccinari,* 101 Va. Cir. 283 (Chesapeake March 11, 2019) (statements that plaintiff made "notable errors," "incorrectly observed conditions," and made "unreasonable recommendations" in a report are actionable statements of fact, not opinion). *Cf. Sroufe v. Waldron,* ___ Va. ___, 829 S.E. 262 (2019) (statement that educator did not ensure his team understood criteria for program held to be opinion, when defendant testified that "reasonable people could disagree" "in my opinion" about the statement).[7]

Accusations of theft and plagiarism are not opinions; they are *per se* defamatory accusations of an unlawful act. *Food Lion, Inc. v. Melton,* 250 Va. 144, 258 S.E.2d 580 (1995) (accusation of theft is *per se* defamatory and does not require proof of damages). Accusations of plagiarism and copyright infringement are not opinions; they are *per se* imputation (whether made against a writer or the publisher of the writings) of unfitness to perform, or lack of integrity in the performance of, a profession or trade. *Yeagle v. Collegiate Times,* 255 Va. 293, 497 S.E.2d 136 (1998), *citing Fleming v. Moore,* 221 Va. 884, 275 S.E.2d 635 (1981) (discussing *per se* standard); *Tronfeld v. Nationwide Mutual Ins. Co.,* 272 Va. 709, 713, 636 S.E.2d 447 (2006) (statements "which prejudice such person in his or her profession or trade" are *per se* defamatory).

### D. The Amended Complaint Adequately Alleges Republication

Ms. Cain's argument that she did not authorize the republication of her statements addresses only part of Virginia law on the issue. The general principles of republication were articulated by the Virginia Supreme Court in *Weaver v. Beneficial Finance Co.,* 199 Va. 196, 199–200, 98 S.E.2d 687 (1957):

---

[7] Of course, even if Ms. Cain had couched her accusations by saying, "in my opinion, there was plagiarism," that would not convert the statement into an opinion. *Hatfill v. New York Times Co.,* 416 F.3d 320, 333-34 and n.6 (4th Cir. 2005). But she did not.

> Under the weight of authority the author of a libel or slander is not liable for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control, either as on a direct cause of action or by way of aggravation of damages, and such repetition cannot be considered in law a necessary, natural and probable consequence of the original slander or libel. ***But the rule has one important qualification. It is a general principle that every one is responsible for the necessary consequences of his act,*** and it may be that the repetition of a slander or libel may be the ***natural consequence*** of the original publication, in which case the author of the original defamatory matter would be liable. And where the words declared on are slanderous *per se* their repetition by others is the natural and probable result of the original slander.

(Emphasis added.)  These well-settled general principles suggest three responses to Ms. Cain's assertion that she did not as a matter of fact authorize republication (an assertion, one would suppose, perhaps suited for a summary judgment motion but not a motion to dismiss).

*First*, the original speaker is liable for republication if the republication is authorized, *or* if the republication is a natural and probable consequence of the original publication.  One does not post defamatory statements on the Internet and Facebook without understanding that one "natural and probable" consequence is that those statements will be republished.  The Amended Complaint alleges, for example, that the defamatory February 2019 post was directed to thousands of Ms. Cain's "followers" and has been "shared" on hundreds of other Facebook pages.  Amended Complaint, Paragraph 80.  That's what Facebook, after all, is for.  And that is consistent with the other allegations regarding Ms. Cain's conduct – that, for example, her March 11, 2019 web post was shared on Twitter by Jennifer Bene, self-described as one of Ms. Cain's "absolute besties (*i.e.,* best friend)," who also expressly republished the allegation that the lawsuits were filed "after she got caught #plagiarizing."

The specific allegation that republication was a foreseeable consequence of the February 2019 and March 11, 2019 Internet posts is made expressly in the Amended Complaint at Paragraphs 87, 88, 90, 91, and 92; nothing more is required on a motion to dismiss.[8]

**Second,** Ms. Cain may have authorized, but has certainly ratified, the republication of her March 11, 2019 Internet article by the "Go Fund Me" post, intended to raise money for her defense. Although, absent discovery, we do not yet know if she has accepted this money, she has allowed this solicitation to continue in her name. As of the original filing date of this case last Spring, that site (incorporating the republication of the March 11, 2019 Internet article) had been shared over 850 times. Again, that is the entire purpose of such posts – to be republished, a natural and foreseeable consequence of placing defamatory material on the Internet. (Paragraph 92 of the Amended Complaint also alleges that the republication was a foreseeable consequence of the March 11, 2019 post.)

**Third,** where the words are defamatory *per se* – as accusations of theft, frivolous litigation, copyright infringement, and plagiarism certainly are to a publisher – under Virginia law republication is **presumed** to be the natural and probable result. *Weaver, supra.*

---

[8] Ms. Cain's suggestion that the March 20, 2019 republication of her post, "Do I believe she plagiarized my story. Yes." as well as the initial publication of that statement, referred to in Paragraphs 85 and 89 of the Amended Complaint, were a 2019 repost of a 2016 statement that did not relate to Quill or Ms. Ellis, appears to be correct. Those statements form no part of the claims in this case, were included in the form they were by inadvertence for which counsel is responsible, and may be disregarded. Quill will not rely on that statement in any way in this litigation. Should Ms. Cain deem it necessary to file a motion to strike those paragraphs, counsel for Quill will consent.

E.     <u>**No Privilege or Preemption Applies**</u>

Quill pleads, permissibly, in the alternative that if Blushing Books is not a co-conspirator, then the statements made by Ms. Cain to Blushing also are defamatory.  Those statements are set out verbatim (so far as they are currently known) in the Amended Complaint.

First, Ms. Cain argues that such an alternative claim would be pre-empted by the Copyright Act, because "all" of those communications were made "in furtherance" of the filing of a DMCA. This would stretch the preemption principle recognized by this Court in analyzing the initial Complaint past its breaking point.   Not all communications were "in furtherance" of filing a DMCA:

- The April 16, 2018 e-mail in which Ms. Cain concludes that the Quill books are "not outright plagiarism" so there is nothing that can be done.  Paragraph 41.

- The April 16, 2018 e-mail in which Ms. Cain concludes that, since the Quill books did not quote her work, "there really is probably nothing we can do."  Paragraph 42.

- The April 19, 2018 e-mail in which Ms. Cain communicated a draft Facebook post to Blushing, for use after "the books come down."  Paragraph 51.

Second, Ms. Cain argues in passing that, since Blushing was the exclusive publisher of her book series (a fact not drawn from the Amended Complaint), it had a "common interest" with Ms. Cain such that their communications are privileged "and not subject to claims of defamation." *Brief in Support*, ECF 29, at page 19.  Ms. Cain then, unusually, cites *Larimore v. Blaylock*, 259 Va. 568, 528 S.E.2d 119 (2000), for this proposition.  *Larimore*, of course, holds nothing of the sort.  Rather, the teaching of *Larimore* is that a claim of common-interest privilege is for a qualified, not an absolute, privilege – and that qualified privilege is overcome by the existence of

malice (which is, of course, alleged throughout the Amended Complaint).  "Communications between persons on a subject in which the persons have an interest or duty are occasions of privilege. However, the privilege attaching to such occasions is a qualified privilege which may be defeated if the plaintiff proves that the defamatory statement was made maliciously."  259 Va. at 572.  (*Larimore* also was concerned with the notion of privilege in intra-company communications, not  communications between publisher and author.  These latter communications may not be those made in a "common interest," particularly where, as here, the author ignores the publisher's advice, demands that the publisher take action it appears reluctant to take, and later recognizes that the author has made misrepresentations regarding the subject matter.  Not every communication is made in the context of a common interest.)

## II.     THE AMENDED COMPLAINT STATES
## A CLAIM FOR TORTIOUS INTERFERENCE

Ms. Cain's primary argument – that the only injury Quill has suffered was caused by the false DMCAs and accordingly this claim remains pre-empted – is wrong.  Paragraph 75 of the Amended Complaint alleges:

> On several occasions, business partners have informed Quill that the
> vendor refuses to  work with Quill to sell Quill's challenged books
> while there remains a pending claim of plagiarism.  Other vendors
> have indicated that they cannot proceed with planned sales of Quill's
> books while there is a pending claim Quill is a plagiarist.

Paragraph 108 pleads:

> Cain intentionally interfered with Quill's prospective business relations and expectancies by causing a breach and termination of those relationships and expectancies, through her continuing defamation of Quill.

Paragraph 110 contains a corresponding allegation regarding existing business relationships.

Paragraph 113 pleads:

> Cain's interference caused Quill to suffer economic losses and other damages as set forth herein.

Ms. Cain's only other concern is that the Amended Complaint pleads the elements of this claim, rather than facts supporting it.  The allegations of the existence of contracts, expectancies, and injury are sufficient and plain.  This more than meets the "notice" pleading standard. *Yukon Pocahontas Coal Co. v. Island Creek Coal Co., Inc.*, 428 F.Supp.2d 490, 496 (2006).  "A plaintiff is only required to include such detail that will notify the defendant of the claims against him." *Id*.

## III.     THE  AMENDED COMPLAINT PLEADS A CONSPIRACY CLAIM

Ms. Cain is correct that an underlying wrongful act is necessary to support the statutory conspiracy claim; this claim is viable only to the extent the independent defamation claim remains viable, given the Court's earlier decision respecting Copyright Act preemption.  Moreover, tortious interference with a business relationship can constitute an unlawful act for the purpose of pleading a claim for civil conspiracy. *Dunlap v. Cottman Transmission Systems, LLC,* 287 Va. 207, 218, 754 S.E.2d 313, 319 (2014).

Ms. Cain is wrong, however, that this claim fails, or is pre-empted, or even depends on whether Blushing Books and Ms. Cain were legally able to conspire.  Each of the overt acts pled

in Paragraph 126 of the Amended Complaint occurred independently of the DCMA filing (or, in one case, if we believe Ms. Cain's factual characterization, was a telephone call meant to pressure Amazon to take down Quill's books more quickly – a factual issue).

As to the legal capacity to conspire, the mere fact that Ms. Cain hired Blushing Books to publish some (or all) of her works does not constitute the publisher as her agent for all purposes.[9] We do not have the contract between Blushing and Ms. Cain; what it says is a factual issue.  A publisher certainly can be an "agent" for purposes of printing and shipping a book, while not being an agent for other, even unlawful, purposes.  The activities described in Paragraphs 93 and 94, for example, relate to an agreement not to publish Ms. Cain's books, but to completely shut down a proposed new series under the Zoey Ellis name – a series unrelated to the DMCAs.  The allegations describe a plan to "shut her down **completely** as an author," (emphasis added), and few if any publisher-author agency agreements include within their scope the destruction of other authors or publishers.  Similarly, Paragraphs 95 and 96 relate to actions taken at the end of May and beginning of July, 2018, well after the filing of the DMCA notices, and describe plans to encourage fake sales and returns to injure Quill.  That is not within the scope of a normal agency agreement.

This issue arises most often in the context of allegations that corporations have conspired with their employees.  In such cases, the scope of agency is usually equivalent to the scope of employment, and determined by reference to general principles.  Here, Ms. Cain is arguing that Blushing was her agent for all purposes – for encouraging false sales and encouraging purchasers to lie when returning books, or for shutting down competitors.  As in cases where employee-

---

[9]       The fact that an Oklahoma witness list referred to Blushing Books as "agent and publisher" is neither dispositive nor relevant.  Witness lists are made for identification, not for purposes of legal argument, and Paragraph 118 of the Amended Complaint expressly recognizes, in this case, the possibility that Blushing and Cain are not co-conspirators.

employer relationships are at issue, the scope of agency here is an issue of fact, not amenable to disposition on motion to dismiss. (And it is certainly not amenable to dismissal under Rule 12(b)(6) based on factual assertions that some of the things the two planned to do did not come to fruition, or did not cause injury; at any rate, attempting to conspire violates the statute as well.)  *See, e.g., Fortress Holdings II, LLC v. Patty,* 95 Va. Cir. 402 (Norfolk 2017) ("At a minimum, the inquiry as to whether Van and Patty were acting within the scope of their agency—a question not addressed in the Complaints—is a question of fact that "requires an investigatory hearing" in this context."), citing *Fox v. Deese*, 234 Va. 412, 428 (1987);  *Fidelity Nat. Title Ins. Co. v. Washington Settlement Group,* 87 Va. Cir. 77 (Fairfax 2013) (overruling demurrer as to single-actor issue because "Whether Ms. Oh and Mr. Lee were, in fact, acting as agents . . . within the scope of their employment is a factual issue to be determined by the evidence.  Accordingly, on demurrer, the Court holds that Plaintiffs' civil conspiracy claims are not barred by the intracorporate immunity doctrine."), citing *Fox; Colgate v. Disthene Group,* 86 Va. Cir. 218 (Buckingham 2013) (Roush, J.) ("This doctrine, known as the "intracorporate immunity" doctrine, has an exception: if an employee, officer, or agent has an "independent personal stake" in the conspiracy, a conspiracy with the corporation may be found. Moreover, where an agent of a corporation engages in activity that is not authorized by the corporation, i.e., activity beyond the scope of their employment, a conspiracy with the corporation may be found."), *quoting Buffalo Wings Factory, Inc. v. Mohd,* 622 F.Supp.2d 325, 335–336 (E.D.Va. 2007).

The scope of agency requires factual development after discovery, and dismissal is inappropriate.

## CONCLUSION

This Court should deny the Motion to Dismiss the Amended Complaint.

October 15, 2019                                         Respectfully submitted,

**QUILL INK BOOKS LIMITED**

By:   /s/ John M. Bredehoft
      John M. Bredehoft
      Virginia State Bar No. 33602
      KAUFMAN & CANOLES, P.C.
      150 West Main Street, Suite 2100
      Norfolk, Virginia 23510
      757-624-3000
      757-624-3225 (direct)
      888-360-9092 (facsimile)
      jmbredehoft@kaufcan.com
      *Counsel for Plaintiff*
      *Quill Ink Books Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2019, I electronically filed the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss the Complaint with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

/s/ John M. Bredehoft