# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| QUILL INK BOOKS, LTD. *Plaintiff*, v. RACHELLE SOTO a/k/a Addison Cain, *Defendant*. | Case No. 1:19-cv-476 Hon. Liam O'Grady |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss. Dkt. 28. Defendant has moved to dismiss Counts II, III, and IV of the First Amended Complaint. The Motion has been fully briefed, Dkt. 33, Dkt. 34, and the Court dispensed with oral argument because it would not aid the decisional process.

### I. Background

This case arises from a dispute between two romance novel authors. Defendant Rachelle Soto (also known as Addison Cain) and her publisher have accused books written by the pseudonymous "Zoey Ellis" and published by Plaintiff, of plagiarizing Defendant's novels and have sent DMCA takedown notices regarding the allegedly plagiarizing novels. Plaintiff sued both Defendant and her publisher in federal court in Oklahoma, but Defendant was dismissed from that case on personal jurisdiction grounds. Plaintiff then filed the present suit.

Plaintiff Quill Ink Books Limited originally sued alleging six counts: intentional DMCA misrepresentation in violation of 17 U.S.C. § 512(f), copyright misuse, tortious interference,

defamation, statutory conspiracy in contravention of Va. Code § 18.2-499, and a declaratory judgment count regarding the question of infringement. Defendant moved to dismiss all but the intentional DMCA misrepresentation count. This Court held Plaintiff's state law claims to be preempted because they were based directly upon DMCA takedown claims. Dkt. 24 at 4. Accordingly, the motion to dismiss was granted and the Amended Order dismissed the state law claims without prejudice. That Order specifically allowed for amendment of the defamation claim if Plaintiff were able to state a valid defamation claim which was independent of the takedown notices.

Plaintiff subsequently filed the First Amended Complaint ("FAC") at issue here. Dkt. 27. The FAC consists of four counts: intentional DMCA misrepresentation, and three state claims. The state law claims—tortious interference, defamation, and statutory conspiracy—can only survive if they are no longer "tied directly to the allegedly fraudulent DMCA takedown notices." Dkt. 24 at 4. Defendant has moved to dismiss the state law claims.

## II. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). While "detailed factual allegations" are not required, a plaintiff must provide more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."

*Twombly*, 550 U.S. at 555 (citations omitted). In considering the sufficiency of a complaint in response to a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448 (citing *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

### III. Analysis

*A. Defamation (Count III)*

Plaintiff Quill's defamation assertions fail to state a claim because the statements at issue are not actionable. The statements which Quill identifies as defamatory are not of or concerning Quill, nor are they directed towards a small group of which Quill is a member.

A claim for defamation in Virginia requires "(1) publication of (2) an actionable statement with (3) the requisite intent." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (citing *Gazette, Inc. v. Harris*, 229 Va. 1 (1985)) (footnote omitted). "Whether statements complained of in a defamation action fall within the type of speech which will support a state defamation action is a matter for the trial judge to determine as a matter of law." *WJLA-TV v. Levin*, 264 Va. 140, 152 (2002) (quoting *Yeagle v. Collegiate Times*, 255 Va. 293, 296 (1998)).

Defamatory statements are only actionable if they are of and concerning the plaintiff. *Cave v. Shelor*, 16 Va. 193, 193 (1811) (footnote omitted); *accord Gazette, Inc.*, 229 Va. at 37. The of or concerning test does not require a defamation plaintiff to be named, but instead tolerates "personal imputation." *Ewell v. Bouthwell*, 138 Va. 402, 415 (1924). Statements which do not facially refer to the plaintiff may be actionable if "the allegations and supporting contemporaneous facts connect the libelous words to the plaintiff," if those who know or know

of the plaintiff would "believe that the [statement] was intended to refer to him," or if the statement contains "a description or reference to him." *Gazette, Inc.*, 229 Va. at 37. "In short, it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory. Accordingly . . . courts applying Virginia defamation law should consider not only the words themselves but also the inferences fairly attributable to them." *Hatfill v. New York Times Co.*, 416 F.3d 320, 331 (4th Cir. 2005) (internal quotation marks and citations omitted).

The so-called "exception" to the of or concerning test is "the 'small group theory.'"[1] *Dean v. Dearing*, 263 Va. 485, 487, 488 (2002). Under this theory, if a statement's "language [] is directed towards a comparatively small or restricted group of persons, then any member thereof may sue." *Ewell v. Boutwell*, 138 Va. 402, 410 (1924). The small group theory "is only another way of expressing what is fundamental—that is, that in order to sustain the action the words of the publication (not the words of the plaintiff interpreting the publication) must contain the imputation against the plaintiff, or he cannot maintain his action." *Ewell*, 138 Va. at 415. And "if the words fairly construed and so supplemented do not in fact point to the plaintiff, he cannot extend their meaning." *Id.*

The statements at issue here do not refer to Quill by name, nor do they refer to Zoey Ellis' "publisher." Since no statement, on its face, applies to Plaintiff, these statements are actionable by Quill only if a reasonable reading of the statement, in combination with extrinsic facts and a description or reference within the statement, reveal the statement to refer or connect to Quill. *See Gazette, Inc.*, 229 Va. at 37.

---

[1] The small group theory has been established in Virginia as the law of defamation since 1924, when it was accepted as a viable theory by *Ewell v. Boutwell*, 138 Va. 402 (1924). It is a rarely raised issue in this state. *See Dean, Jr. v. Town of Elkton*, 54 Va. Cir. 518 (2001), *aff'd sub nom. Dean v. Dearing*, 263 Va. 485 (2002) (noting "only one case in Virginia [] has dealt directly with the issue of small group defamation since *Ewell v. Boutwell*.").

Quill argues that the statements are actionable based on the small group theory. Quill recharacterizes the relevant question as: "whether the statement is made regarding such a small group (here, a group of one – Quill's principal author) that the plaintiff may be identified as one regarding whom the statement was made." Dkt. 33 at 5. Interestingly, in asking this question Quill has admitted—indeed, has argued—that the statements at issue are regarding "a group of one – Quill's principal author." Dkt. 33 at 5. Quill, the plaintiff in this defamation action, has rendered itself an improper plaintiff under the small group theory by reading itself out of the relevant small group.

Despite admitting it is not a member of the small group, Quill's second argument pursues a hybrid small group theory/indirect imputation theory. At bottom, Quill is asserting that the relationship between a publisher and an author necessarily imputes any reputational harm done to the author to the publisher as well.

This argument relies entirely on the extrinsic facts and circumstances of a publisher's role and function. Thus, because it relies on its status and relationship as publisher to an author rather than its membership in a group, this argument simply repackages an of or concerning argument and is not a small group argument. Nonetheless, Quill asserts it "is precisely the case here" that Quill is like the small group plaintiffs which were outlined in *Ewell*. Dkt. 33 at 5-6. In establishing the small group theory as a proper legal basis for defamation in Virginia, *Ewell* identified examples of small groups and their members which may bring that action. 138 Va. at 410. The opinion provided two examples: first, statements "against a public board with a few members may support an action for damages to a single member of that board," and second, "libelous language against the verdict of a jury may be the subject of an action by a single member of that jury." *Id.*

Quill is not like the *Ewell* examples. In the *Ewell* examples, the statements at issue are about a group or a group's product. In those examples acceptable plaintiffs are the members of the group. Here, the statements at issue defame an individual, Zoey Ellis, or potentially her work of authorship. No group was defamed, so Quill is not a member of any such group, and Quill did not author Zoey Ellis' books. A status as publisher or contractual relationship does not change that.

The strongest argument for a small group defamation claim lies in Defendant's "they/their" statement. The statement was made in regard to the Oklahoma lawsuit, brought by Quill against Defendant. But in the context of the statement as a whole, the words "they" and "their" appear on their face to be an attempt at maintaining the anonymity of the subject which those words reference. Not only do they refer to the singular, gender-neutral antecedent "an individual," but by its own terms the statement seeks to avoid "naming names." To use a pronoun other than they would necessarily have divulged more information: the use of "he" or "she" would divulge gender, which "an individual" does not, and the use of "it" would divulge entity status, which "an individual" does not. Given that the uses of "they" and "their" in the statement clearly refer to the gender neutral antecedent "an individual," the small group theory does not apply in this setting either.

The inferences fairly attributable to the statements at issue here do not impute Quill. "Virginia law recognizes a claim for defamation by inference, implication or insinuation." *Pendleton v. Newsome*, 290 Va. 162, 172 (2015). But whether a statement "is reasonably capable of the defamatory meaning [] ascribe[d] to it is a question of law, not fact. Resolving it is an essential threshold, gatekeeping function of the court." *Webb v. Virginian-Pilot Media Companies, LLC*, 287 Va. 84, 90–91 (2014). When there are "circumstances surrounding the

making and publication of the statement which would reasonably cause the statement to convey a defamatory meaning to its recipients," allegations of those circumstances and "an explanation of the circumstances and the defamatory meaning allegedly conveyed," will plead an action for defamation in Virginia. *Pendleton*, 290 Va. at 172. "Whether the circumstances were reasonably sufficient to convey the alleged defamatory meaning, and whether the plaintiff was actually defamed thereby, remain issues to be resolved by the fact-finder at trial." *Id.* But here, the mere circumstance of Quill's relationship with Zoey Ellis and the books does not convey any defamatory meaning about Quill any more than it necessarily creates a small group.

Instead, Quill is attempting to extend the meaning of Defendant's words. Defendant's statements, fairly understood, accuse Zoey Ellis of writing stories which mirror her own. The statements, made by a non-lawyer for an audience of non-lawyers, use words such as "stolen," "infringed," "infringing," and "plagiarism." But the statements appear on their face not to employ the legal definitions of these words. In context and in light of the variety of words used, the statements refer to the uniquely authorial act of reproducing story elements. As such, this is a uniquely authorial complaint which is necessarily intertwined, not with the selling or publishing of a work, but with the writing of a work. The pleadings do not assert that Quill wrote or authored the works. Even those who knew or knew of Quill could not reasonably believe an accusation against an author who Quill happens to have a relationship with is also an accusation against Quill. The defamation claim therefore fails because the statements are not actionable.

*B. Tortious Interference with Business Relationships (Count III)*

To establish a prima facie case of tortious interference, Plaintiff must show: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the

relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 216 (2014). Plaintiff's claim fails here because Quill has failed to plead the third element, an interference.

First, because the defamation claims fail, the assertion that Defendant's "continuing defamation of Quill" constituted intentional interference also fails. Dkt. 27 ¶¶ 108, 109.

Second, Quill claims that Defendant's "pending claim of plagiarism" constitutes the requisite interference. Dkt. 33 at 17 (quoting Dkt. 27 ¶ 75). But the plagiarism claims which Quill complains of can only be read in context to be DMCA takedown notices. *See* Dkt. 27 ¶¶ 73-74, 76-77 (discussing DMCA "take-down notices," "counternotices," and their impact on Quill). To the extent Quill's plagiarism claims refer to the DMCA takedown notices as pending plagiarism claims, this Court's past Order established that the DMCA preempts the state claim.

Finally, to the extent that Quill alleges "vendors have indicated that they cannot proceed with planned sales of Quill's books while there is a pending claim Quill is a plagiarist," Dkt. 33 at 17, Quill has failed to plead facts supporting the existence of any claim that Quill, as opposed to Zoey Ellis, is a plagiarist. "Factual allegations must be enough to raise a right to relief above the speculative level," and mere labels, conclusions, and formulaic recitations of elements are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*C. Statutory Conspiracy (Count IV)*

To establish a statutory claim for conspiracy under Va. Code § 18.2–499, a plaintiff must show: (1) a combination of at least two persons; (2) had the purpose of willfully and maliciously injuring the plaintiff in reputation, trade, or business; and (3) resulted in damage to the plaintiff.

8

*CVLR Performance Horses, Inc. v. Wynne*, 977 F. Supp. 2d 598, 604 (W.D. Va. 2013) (quoting *Simmons v. Miller*, 261 Va. 561, 578, 544 S.E.2d 666, 677 (2001)). Further, "[t]he plaintiff must prove that the conspirators acted with legal malice, that is, acted intentionally, purposefully, and without legal justification." *Id.* And further still, because "[t]he conspiracy itself is not actionable," the conspiracy is not actionable "until the plaintiff suffers an injury sufficient to give rise to the underlying tort claim. And to prove such an injury, a plaintiff necessarily is required to prove every element of the underlying tort." *L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85, 93 (4th Cir. 2019) (internal citations omitted).

The first element, the combination of persons, requires more than one person to constitute a conspiracy. Va. Code § 18.2-499. A principal and agent cannot satisfy this element. *See Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 326 n. 5 (W.D. Va. 2007). The extent to which Defendant and Blushing were and acted as a combination of persons or were in an agency relationship depends upon their contract. Since that is a factual question, contrary to Defendant's argument, Quill has shown this first element.

Even so, and as Plaintiff acknowledges, there can be no conspiracy to do a lawful act. In Virginia, "actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 215 (2014). Thus, Plaintiff's Count IV "is viable only to the extent the independent defamation claim [or the tortious interference claim] remain[] viable." Dkt. 33 at 18. Because neither of those claims have been sufficiently pleaded, Plaintiff has failed to state a claim.

### IV. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss, Dkt. 28, is **GRANTED**.

Count II, Tortious Interference with Business Relationships; Count III, Defamation; and Count IV, Statutory Conspiracy; are **DISMISSED WITH PREJUDICE**.

It is **SO ORDERED**.

October 29, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge