**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

QUILL INK BOOKS LIMITED, a foreign   )
corporation ,   )
  )
      Plaintiff/Counter-Defendant,   )
  )
v.   )
  )
RACHELLE SOTO a/k/a ADDISON CAIN,   )   Civil Action No. 1:19-cv-476-LO-MSN
an individual,   )
  )
      Defendant/Counter-Plaintiff,   )
  )

**DEFENDANT RACHELLE SOTO A/K/A ADDISON CAIN'S ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

     Defendant Rachelle Soto a/k/a Addison Cain ("Cain") hereby files her Answer to Plaintiff's Amended Complaint ("Amended Complaint"), and asserts this counterclaim against Plaintiff/Counter-Defendant Quill Ink Books Limited ("Quill").

**DEFENDANT CAIN'S ANSWER TO THE AMENDED COMPLAINT**

     1.    Cain admits that this is a civil action against her and that she is an author who writes "dark romances" and other novels and genres under one or more pseudonyms. Upon information and belief, Cain admits that Quill is a foreign corporation and publisher. To the extent not expressly admitted, Cain denies the remaining allegations set forth in paragraph 1 of the Amended Complaint.

     2.    The allegations in paragraph 2 of the Amended Complaint do not constitute a factual assertion to which a response is required. To the extent a response is required, Cain admits that ABCD Graphics and Design, Inc., d/b/a Blushing Books ("Blushing Books") was a

publisher of some of her novels, but denies the remaining allegations set forth in paragraph 2 of the Amended Complaint.

3.      Cain denies the allegations set forth in paragraph 3 of the Amended Complaint.

4.      Paragraph 4 of the Amended Complaint calls for a legal conclusion to which no response is required and which involves claims directed at defamation against Quill which have been dismissed by the Court [Dkt. 35]. To the extent a response is required, Cain denies the allegations set forth in paragraph 4 of the Amended Complaint.

5.      Paragraph 5 of the Amended Complaint does not contain any factual allegations requiring a response but merely sets forth Quill's causes of actions and request for relief. To the extent a response is required, Cain denies the allegations set forth in paragraph 5 of the Amended Complaint.

6.      Upon information and belief, Cain admits that Quill is a foreign corporation formed in London, England, but Cain is without sufficient information and belief to answer the remaining allegations set forth in paragraph 6 of the Amended Complaint and therefore denies the same.

7.      Cain admits the allegations set forth in paragraph 7 of the Amended Complaint.

8.      Paragraph 8 of the Amended Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Cain admits that jurisdiction over Quill and Cain is proper in this Court.

9.      Paragraph 9 of the Amended Complaint does not contain any factual allegations and calls for a legal conclusion to which no response is required. To the extent a response is required, Cain admits that the Quill and Cain are of diverse citizenship. Cain denies the remaining allegations set forth in paragraph 9 of the Amended Complaint.

10.     Paragraph 10 of the Amended Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Cain admits that she is a resident and citizen of the Commonwealth of Virginia and resides within the territorial bounds of the Alexandria Division of the Eastern District of Virginia.

11.     Paragraph 11 of the Amended Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Cain is without sufficient information or knowledge to form a belief as to the allegations set forth in paragraph 11 of the Amended Complaint and therefore denies the same.

12.     Paragraph 12 of the Amended Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Cain admits that venue of this Court is properly invoked as alleged in paragraph 12 of the Amended Complaint.

13.     Upon information and belief, Cain admits that Quill published works authored by an individual author going under the pseudonym Zoey Ellis on certain online vendors' websites, including Amazon, Rakuten-Kobo and Google Play. Upon information and belief, Cain denies that Quill published works for Zoey Ellis on Barnes and Noble and Apple iTunes, as Zoey Ellis is listed as the publisher on those vendor's websites. Cain is without sufficient information and knowledge to form a belief as to the remaining allegations set forth in paragraph 13 of the Amended Complaint and therefore denies the same.

14.     Cain admits that the pseudonym "Zoey Ellis" refers to an individual author and that some of this author's books are published by Quill.  Cain denies that "Zoey Ellis" is a pseudonym for Quill.  Cain is without sufficient information and knowledge to form a belief as to the remaining allegations set forth in paragraph 14 of the Amended Complaint and therefore denies the same.

15.     Upon information and belief, Cain admits that this suit involves works authored by Zoey Ellis that are based in an alternative universe known as "Omegaverse." Cain denies the remaining allegations set forth in paragraph 15 of the Amended Complaint.

16.     Cain admits that no one owns the Omegaverse genre. Cain is without sufficient information and knowledge to form a belief as to the remaining allegations set forth in paragraph 16 of the Amended Complaint and therefore denies the same.

17.     Cain admits that the name "Addison Cain" is a pseudonym she uses to publish certain of her books and that some of her books were previously published by Blushing Books. Cain denies the remaining allegations set forth in paragraph 17 of the Amended Complaint and specifically denies that Blushing was or is a co-conspirator.

18.     Cain admits that she writes across several literary genres and that some of her books are available widely from online and other retailers as paper back and digital books. Cain also admits that she has described her *Alpha's Claim* series, which is set forth in an "omegaverse" genre, as a "dark romance without the romance," "suspense-filled omegaverse," and "mystery suspense thrillers," along with additional descriptions.  To the extent not admitted herein, Cain denies any remaining allegations set forth in paragraph 18 of the Amended Complaint.

19.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 19 of the Amended Complaint and therefore denies the same.

20.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 20 of the Amended Complaint and therefore denies the same.

21.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 21 of the Amended Complaint and therefore denies the same.

22.      Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 22 of the Amended Complaint and therefore denies the same.

23.      Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 23 of the Amended Complaint and therefore denies the same.

24.      Paragraph 24 of the Amended Complaint does not contain any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinion and characterization of fiction based on Omegaverse, "Alpha/Beta/Omega," "A/B/O," or "Alpha/Beta/Omega Dynamics." To the extent a response is required, Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 24 of the Amended Complaint and therefore denies the same.

25.      Paragraph 25 of the Amended Complaint does not contain any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinion and characterization of Omegaverse fiction. To the extent a response is required, Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 25 of the Amended Complaint and therefore denies the same.

26.      Cain admits the allegations set forth in the first sentence of paragraph 26 of the Amended Complaint. Upon information and belief, Cain denies the allegations in the second sentence of paragraph 26 of the Amended Complaint.

27.      Paragraph 27 of the Amended Complaint does not contain any factual allegations to which a response is required because it consists merely of Quill's, its counsel's, or a third-party's opinion and characterization of Omegaverse fiction. To the extent a response is required, Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 27 of the Amended Complaint and therefore denies the same.

28.     Paragraph 28 of the Amended Complaint does not contain any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinion and characterization of Omegaverse fiction. To the extent a response is required, Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 28 of the Amended Complaint and therefore denies the same.

29.     Paragraph 29 of the Amended Complaint does not contain any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinion and characterization of Omegaverse fiction. To the extent a response is required, Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 29 of the Amended Complaint and therefore denies the same.

30.     Upon information and belief, Cain admits that Omegaverse was first introduced through fanfiction written based on the television show "Supernatural." Paragraph 30 of the Amended Complaint also does not contain any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinion and characterization of Omegaverse fiction. To the extent a response is required, Cain is without sufficient information and knowledge to form a belief as to the remaining allegations set forth in paragraph 30 of the Amended Complaint and therefore denies the same.

31.     Cain admits that the majority of Omegaverse stories employ a male-male sexual dynamic. Cain is without sufficient information and knowledge to form a belief as to the remaining allegations set forth in paragraph 31 of the Amended Complaint and therefore denies the same. Additionally, the titles and links referenced in paragraph 31 speak for themselves.

32.     Paragraph 32 of the Amended Complaint does not contain any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinion and

characterization of Omegaverse fiction and its purported popularity. To the extent a response is required, upon information and belief Cain denies that the Alpha and Omega series referenced is an Omegaverse fiction. Cain further states that she is without sufficient information and knowledge to form a belief as to the remaining allegations set forth in paragraph 32 of the Amended Complaint and therefore denies the same. Cain further states that the titles and series referenced in paragraph 32 of the Amended Complaint speak for themselves.

33.     Cain admits that Zoey Ellis' book *Crave to Conquer* was published in January, 2018 as the first book in her *Myth of Omega* series. Cain is without sufficient information and knowledge as to the exact date of publication or whether the book was published by Quill, and therefore denies the same. Cain admits that the *Myth of Omega* series involves an Omegaverse universe, magic, a shifting-viewpoint narration, fantasy, a female Omega character, and a male Alpha character. Cain denies that the *Myth of Omega* series is "Quill's" or that it is "under the Zoey Ellis brand of books." The remaining allegations in paragraph 33 of the Amended Complaint consist of Quill or its counsel's opinions or characterizations and therefore do not contain any factual allegations to which a response is required. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 33 of the Amended Complaint and further states that the referenced book *Crave to Conquer* and the *Myth of Omega* series speak for themselves.

34.     Cain denies that her three-book *Alpha's Claim* series does not shift the internal narrative viewpoint. The remaining allegations in paragraph 34 of the Amended Complaint consist of Quill or its counsel's opinions or characterizations of Cain's books and series and therefore do not contain any factual allegations to which a response is required. To the extent a

response is required, Cain denies the remaining allegations set forth in paragraph 34 of the Amended Complaint and further states that the referenced books and series speak for themselves.

35.     Cain admits that Zoey Ellis' second book in her *Myth of Omega* series, *Crave to Conquer*, was published on March 20, 2018 and is a continuation of her series. Cain is without sufficient information and knowledge as to whether the book was published by Quill, and therefore denies the same. The remaining allegations in paragraph 35 of the Amended Complaint consist of Quill or its counsel's opinions or characterizations of the book and therefore do not contain any factual allegations to which a response is required. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 35 of the Amended Complaint and further states that the referenced book *Crave to Capture* and the *Myth of Omega* series speak for themselves.

36.     Cain admits that Zoey Ellis' third book in her *Myth of Omega* series, *Crave to Claim*, was published on May 23, 2018. Cain denies that the series is "Quill's." The remaining allegations in paragraph 36 of the Amended Complaint consist of Quill or its counsel's opinions or characterizations of the book and therefore do not contain any factual allegations to which a response is required. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 36 of the Amended Complaint and further states that the referenced book *Crave to Claim* and the *Myth of Omega* series speak for themselves.

37.     Cain is without sufficient information and knowledge to form a belief as to the allegations in the first sentence of paragraph 37 of the Amended Complaint and therefore denies the same. Cain admits that she filed for copyright registration for her first book *Born to be Bound* on April 17, 2018, *Born to be Broken* and *Reborn* on April 19, 2018. Cain further admits that her first book was published by individual chapters in 2015 and was first published by Blushing

8

Books on April 8, 2016. Cain admits that *Born to be Broken was* published by Blushing Books on June 3, 2016 and *Reborn* was published by Blushing Books on September 1, 2016. Cain is without sufficient information and knowledge to form a belief as to when the DMCA's were "issued to sellers" and therefore denies the same. Cain denies that the DMCAs were false, that Cain "issued" the take-down notices, and that Blushing Books was a co-conspirator. To the extent not expressly admitted or denied herein, Cain denies the remaining allegations set forth in paragraph 37 of the Amended Complaint.

38.     Upon information and belief, Cain admits that the *Myth of Omega* series has been released for sale through various vendors. Cain denies that the *Myth of Omega* series is Quill's. Cain is without sufficient information and knowledge to form a belief as to the remaining allegations set forth in paragraph 38 of the Amended Complaint and therefore denies the same.

39.     Cain admits that Blushing Books prepared and sent a take-down notice to various online vendors in April 2018. Regarding the allegations in paragraph 39 of the Amended Complaint, the referenced notices, including that attached as Exhibit 1 to the Amended Complaint, speak for themselves. Cain is without sufficient information and knowledge to form a belief as to how many notices were sent, to what vendors they were sent, or the exact day they were sent and therefore denies the same. Cain denies that she was "acting and conspiring together with her publisher" that the take-down notices included "material misrepresentations, *in hac verba,*" and that the take-down notices made knowingly false claims or "maliciously defamed Quill." To the extent not expressly admitted or denied, Cain denies the remaining allegations set forth in paragraph 39 of the Amended Complaint.

40.     The first sentence of paragraph 40 of the Amended Complaint does not contain any factual allegations and calls for a legal conclusion to which no response is required. To the

extent a response is required, Cain denies the allegations in the first sentence of paragraph 40 of the Amended Complaint. Cain denies that the *Myth of Omega* series is "Quill's" as set forth in the second sentence of paragraph 40 of the Amended Complaint. Cain is without sufficient information and knowledge to form a belief as to the remaining allegations in the second sentence of paragraph 40 of the Amended Complaint and therefore denies the same.

41.     Regarding the allegations set forth in paragraph 41 of the Amended Complaint, the referenced quote speaks for itself. Cain specifically denies that Zoey Ellis' second book or the *Myth of Omega* series were "Quill's." The remaining allegations of paragraph 41 of the Amended Complaint do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 41 of the Amended Complaint.

42.     Regarding the allegations set forth in paragraph 42 of the Amended Complaint, the referenced quoted speaks for themselves. Cain specifically denies that Zoey Ellis' second book or the *Myth of Omega* series were "Quill's." The remaining allegations of paragraph 42 of the Amended Complaint do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 42 of the Amended Complaint.

43.     Regarding the allegations set forth in paragraph 43 of the Amended Complaint, the referenced quote speaks for itself. Cain specifically denies that Zoey Ellis' books or the *Myth of Omega* series were "Quill's." The remaining allegations of paragraph 43 of the Amended Complaint do not contain any factual allegations to which a response is required because they

consists merely of Quill's or its counsel's opinion and interpretation of the context of emails that are not attached to the Amended Complaint. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 43 of the Amended Complaint.

44.     Cain admits that on April 17, 2018, Blushing Books told her via an email, that she should file for a copyright on her first book in her *Alpha's Claim* series, *Born to be Bound*. Cain admits that prior to that date, she had not filed a copyright application for the book because she believed that Blushing Books had filed on her behalf as her publisher, but later discovered that Blushing Books had failed to file copyrights for any of her books. Cain further states that the email referenced, but not attached to the Amended Complaint, speaks for itself. To the extent not expressly admitted herein, Cain denies the remaining allegations set forth in paragraph 44 of the Amended Complaint.

45.     Regarding the allegations set forth in paragraph 45 of the Amended Complaint, the referenced quotes speaks for themselves. Cain specifically denies that Blushing Books mentioned Quill in the email referenced. The remaining allegations of paragraph 43 of the Amended Complaint do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 45 of the Amended Complaint.

46.     Regarding the allegations set forth in paragraph 46 of the Amended Complaint, the reference quotes, "list" and "take-down notices" speak for themselves. Cain admits that she provided Blushing Book with a list of similarities between Zoey Ellis' first book in the *Myth of Omega* series and her own first book in the *Alpha's Claim* series by email. Cain also admits that the list was originally written by a friend. Cain denies that her assertions in the quotes, emails,

11

"lists" or "take-down notices" were false or that they were about Quill. Cain admits that she currently has not identified any "lifted" or "copied line" in Zoey Ellis' *Myth of Omega* series but states that the take-down notices were based on what Cain and Blushing Books believed were variations of numerous scenes and multiple plot sequences from Cain's *Alpha's Claim* series. The remaining allegations of paragraph 46 of the Amended Complaint do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email and its attachments that are not attached to the Amended Complaint. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 46 of the Amended Complaint.

47.     Paragraph 47 of the Amended Complaint does not contain any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinion and of the referenced take-down notices. To the extent a response is required, Cain denies the allegations set forth in paragraph 47 of the Amended Complaint. Cain further states that the referenced email and take-down notices speak for themselves.

48.     Paragraph 48 of the Amended Complaint calls for a legal conclusion to which no response is required. Paragraph 48 of the Amended Complaint also fails to include any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinions of the referenced take-down notices. To the extent a response is required, Cain denies the allegations set forth in paragraph 48 of the Amended Complaint. Cain further states that the referenced email and take-down notices speak for themselves.

49.     Regarding the allegations set forth in paragraph 49 of the Amended Complaint, the referenced quotes speaks for themselves. Cain specifically denies that the email referenced mentioned "Quill."  The remaining allegations of paragraph 49 of the Amended Complaint do

not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email and draft letter that are not attached to the Amended Complaint. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 49 of the Amended Complaint.

50. Regarding the allegations set forth in paragraph 50 of the Amended Complaint, the referenced quotes speaks for themselves. Cain specifically denies that the email referenced mentioned "Quill."  The remaining allegations of paragraph 50 of the Amended Complaint do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 50 of the Amended Complaint.

51. Regarding the allegations set forth in paragraph 51 of the Amended Complaint, the referenced quotes speaks for themselves. The allegations of paragraph 51 of the Amended Complaint also do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of emails that are not attached to the Amended Complaint. To the extent a response is required, Cain denies the allegations set forth in paragraph 51 of the Amended Complaint.

52. Regarding the allegations set forth in paragraph 52 of the Amended Complaint, the referenced quotes speaks and for themselves. The allegations of paragraph 52 of the Amended Complaint also do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of email and draft Facebook post that are not attached to the Amended Complaint. To the extent

a response is required, Cain denies the allegations set forth in paragraph 52 of the Amended Complaint.

53.     Cain admits that Blushing Books prepared and sent a take-down notice to various online vendors in April 2018. Cain is without sufficient information and knowledge to form a belief as to remaining allegations set forth in paragraph 53 of the Amended Complaint and therefore denies the same.

54.     Paragraph 54 of the Amended Complaint calls for a legal conclusion to which no response is required. Paragraph 54 of the Amended Complaint also fails to include any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinions of the referenced take-down notices and Exhibit 1.  To the extent a response is required, Cain denies the allegations set forth in paragraph 54 of the Amended Complaint. Cain further states that the referenced Exhibit 1 speaks for itself.

55.     Paragraph 55 calls for a legal conclusion to which no response is required. Paragraph 55 of the Amended Complaint also fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion of Omegaverse fiction and the take-down notices and Exhibit 1. To the extent a response is required, Cain denies the allegations set forth in paragraph 55 of the Amended Complaint. Cain further states that the referenced Exhibit 1 and books speak for themselves.

56.     Cain is without sufficient information and knowledge to form a belief as to the allegations in paragraph 56 of the Amended Complaint and therefore denies the same.

57.     Cain admits that on April 26, 2018, Blushing Books informed her that iBooks had received the take-down notice and was removing Zoey Ellis' first two books from sale. Cain denies the remaining allegations set forth in paragraph 57 of the Amended Complaint. Cain

further states that the email referenced, but not attached to the Amended Complaint, speaks for itself.

58.    Regarding the allegations set forth in paragraph 58 of the Amended Complaint, the referenced quote speaks for itself. The allegations of paragraph 58 of the Amended Complaint also do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint. To the extent a response is required, Cain denies the allegations set forth in paragraph 58 of the Amended Complaint.

59.    Regarding the allegations set forth in paragraph 59 of the Amended Complaint, the referenced quote speaks for itself. The allegations of paragraph 59 of the Amended Complaint also do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint. To the extent a response is required, Cain denies the allegations set forth in paragraph 59 of the Amended Complaint. Cain also specifically denies that her publisher was her co-conspirator.

60.    Regarding the allegations set forth in paragraph 60 of the Amended Complaint, the referenced quote speaks for itself. The allegations of paragraph 60 of the Amended Complaint also do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint. To the extent a response is required, Cain denies the allegations set forth in paragraph 59 of the Amended Complaint.

61.    Regarding the allegations set forth in paragraph 61 of the Amended Complaint, the referenced quote speaks for itself. The allegations of paragraph 61 of the Amended

Complaint also do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint and the "Second Round DMCA notice" as set out in Exhibit 2. To the extent a response is required, Cain denies the allegations set forth in paragraph 61 of the Amended Complaint. Cain also specifically denies that her publisher was her co-conspirator.

62.     Regarding the allegations set forth in paragraph 62 of the Amended Complaint, the referenced quote speaks for itself. The remaining allegations of paragraph 62 of the Amended Complaint also do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint including their opinion as to Cain's state of mind. To the extent a response is required, Cain denies the allegations set forth in paragraph 62 of the Amended Complaint.

63.     Regarding the allegations set forth in paragraph 63 of the Amended Complaint, Exhibit 2 speaks for itself. The remaining allegations of paragraph 62 of the Amended Complaint also do not contain any factual allegations to which a response is required because they consists merely of Quill's or its counsel's opinion and interpretation of the context of an email that is not attached to the Amended Complaint. To the extent a response is required, Cain denies the remaining allegations set forth in paragraph 63 of the Amended Complaint. Cain also specifically denies that she "combined with her publisher to generate and send to retailers another DMCA notice," and that third book was "Quill's".

64.     Regarding the allegations set forth in the paragraph 64 of the Amended Complaint, Exhibit 2 speaks for itself. The allegations set forth in paragraph 64 also seek a legal

conclusion to which no responses is required. To the extent a response is required, Cain admits that the "Second Round notices" were sent by Blushing Books to various online vendors before Zoey Ellis' third book was published or reviewed by Cain. Cain denies the allegations set forth in the first clause of the second sentence of paragraph 64 of the Amended Complaint, specifically that the Second Round notices "knowingly and falsely misrepresented that the third book infringed Cain's copyright." Cain is without sufficient information and knowledge to form a belief as to the remaining allegations set forth in paragraph 64 of the Amended Complaint and therefore denies the same.

65.     Regarding the allegations set forth in paragraph 65 of the Amended Complaint, Exhibit 2 speaks for itself. Paragraph 65 further calls for a legal conclusion to which no response is required. To the extent a response is required, Cain denies the allegations set forth in paragraph 65 of the Amended Complaint.

66.     Regarding the allegations set forth in paragraph 66 of the Amended Complaint, Exhibit 2 speaks for itself. Paragraph 66 further calls for a legal conclusion and does not contain any factual allegations to which a response is required. To the extent a response is required, Cain denies the allegations set forth in paragraph 66 of the Amended Complaint.

67.     Regarding the allegations set forth in paragraph 67 of the Amended Complaint, Exhibit 2 speaks for itself. Paragraph 67 also fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion of Omegaverse fiction and the "Second Round" notices. To the extent a response is required, Cain denies the allegations set forth in paragraph 67 of the Amended Complaint.

68.     Paragraph 68 calls for a legal conclusion to which no response is required. To the extent a response is required, Cain denies the allegations set forth in paragraph 68 of the Amended Complaint. Cain further states that the referenced Exhibit 2 speaks for itself.

69.     Regarding the allegations set forth in paragraph 69 of the Amended Complaint, Exhibit 2 speaks for itself. Paragraph 69 also calls for a legal conclusion to which no response is required. Paragraph 69 also fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion of Exhibit 2. To the extent a response is required, Cain denies the allegations set forth in paragraph 69 of the Amended Complaint.

70.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 70 of the Amended Complaint and therefore denies the same.

71.     Regarding the allegations set forth in paragraph 71 of the Amended Complaint, the referenced "First and Second Round take-down notices" attached as Exhibit 1 and 2 of the Amended Complaint, speak for themselves. Paragraph 71 also fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion of Exhibits 1 and 2. To the extent a response is required, Cain denies the allegations set forth in paragraph 71 of the Amended Complaint.

72.     Cain admits that several take-down notices were sent by Blushing Books to various vendors regarding Zoey Ellis' first three books in the *Myth of Omega* series. Except as expressly admitted herein, Cain denies the allegations set forth in paragraph 72 of the Amended Complaint.

73.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 73 of the Amended Complaint and therefore denies the same.

74.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 74 of the Amended Complaint and therefore denies the same.

75.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 75 of the Amended Complaint and therefore denies the same.

76.     Paragraph 69 calls for a legal conclusion to which no response is required. To the extent a response is required, Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 76 of the Amended Complaint and therefore denies the same.

77.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 77 of the Amended Complaint and therefore denies the same. Cain further states that Quill's defamation claim has been dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35] and Cain denies that Quill has suffered any of the purported defamation or harassment claimed in paragraph 77 of the Amended Complaint.

78.     Cain denies the allegations set forth in paragraph 78 of the Amended Complaint.

79.     Cain admits that Quill initially filed suit against her and Blushing Books in the United States District Court for the District of Oklahoma, that Cain was dismissed from that case for lack of personal jurisdiction, that Cain resides in Virginia, and that at the time of filing the Amended Complaint, Blushing Books remained a defendant in the Oklahoma case, which was scheduled for trial in September 2019. Cain denies that she sent any take-down notice to a distributor in Oklahoma. Cain further states that the quote referenced in the second sentence of paragraph 79, which is part of an email that is not attached to the Amended Complaint, speaks for itself. To the extent not expressly admitted or denied herein, Cain denies the remaining allegations set forth in paragraph 79 of the Amended Complaint.

80.     Cain admits that on February 13, 2019, Cain published a post on Facebook regarding the Oklahoma case. Cain admits that posts on her Facebook page can be seen by followers of her page. Cain denies that the post was "shared" on hundreds of other pages. Cain further states that the Facebook post referenced in paragraph 80, and not attached to the Amended Complaint, speaks for itself.

81.     Regarding the allegations set forth in paragraph 81 of the Amended Complaint, the quotes referenced, and the Facebook post referenced but not attached, speak for themselves. Paragraph 81 also calls for a legal conclusion to which no response is required. Paragraph 81 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the quotes and Facebook post. To the extent a response is required, Cain denies the allegations set forth in paragraph 81 of the Amended Complaint.

82.     Paragraph 82 calls for a legal conclusion or does not include a factual statement to which a response is required. To the extent a response is required, Cain denies the allegations set forth in paragraph 82 of the Amended Complaint. Cain further states that the Facebook post referenced, but not attached to the Amended Complaint, speaks for itself. Cain further states that Quill's defamation, tortious interference, and conspiracy claims were dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35]

83.     Regarding the allegations set forth in paragraph 83 of the Amended Complaint, the referenced article, attached as Exhibit 3 to the Amended Complaint, and quotes referenced from Exhibit 3, speak for themselves. Paragraph 83 also calls for a legal conclusion to which no response is required. Paragraph 83 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the

context of the article. To the extent a response is required, Cain denies the allegations set forth in paragraph 83 of the Amended Complaint. Cain further states that Quill's defamation, tortious interference, and conspiracy claims were dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35].

84.     Paragraph 84 calls for a legal conclusion to which no response is required. To the extent a response is required, Cain denies the allegations set forth in paragraph 84 of the Amended Complaint. Cain further states that Quill's defamation, tortious interference, and conspiracy claims were dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35].

85.     Regarding the allegations set forth in paragraph 85 of the Amended Complaint, the referenced quote and the Facebook post, not attached to the Amended Complaint, speak for themselves. Cain specifically denies the date of the Facebook post referenced or that it referred to Quill or Zoey Ellis, a fact admitted by Quill in its response to Cain's motion to dismiss [Dkt. 33 at n. 8, p. 15].

86.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in the first two sentences of paragraph 86 of the Amended Complaint. Paragraph 86 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the works referenced. To the extent a response is required, Cain denies the allegations set forth in paragraph 86 of the Amended Complaint. Cain specifically admits that she has not accused the author referenced or her works of infringement.

87.     Regarding the allegations set forth in paragraph 87 of the Amended Complaint, the referenced quotes and the article, which is not attached to the Amended Complaint, speak for themselves. Further, paragraph 87 calls for a legal conclusion to which no response is required.

Paragraph 87 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the article and quotes referenced. To the extent a response is required, Cain denies the allegations set forth in paragraph 87 of the Amended Complaint, and further states that Quill's defamation, tortious interference, and conspiracy claims, including any republications thereof have been dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35].

88.     Regarding the allegations set forth in paragraph 88 of the Amended Complaint, the referenced quotes and the article, which is not attached to the Amended Complaint, speak for themselves. Further, paragraph 88 calls for a legal conclusion to which no response is required. Paragraph 88 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the article and quotes referenced. To the extent a response is required, Cain denies the allegations set forth in paragraph 88 of the Amended Complaint, and further states that Quill's defamation, tortious interference, and conspiracy claims, including any republications thereof have been dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35].

89.     Regarding the allegations set forth in paragraph 89 of the Amended Complaint, the referenced article, which is not attached to the Amended Complaint, speaks for itself. Further, paragraph 89 calls for a legal conclusion to which no response is required. Paragraph 89 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the article referenced.  To the extent a response is required, Cain denies the allegations set forth in paragraph 89 of the Amended Complaint, and further states that Quill's defamation, tortious interference, and

conspiracy claims, including any republications thereof have been dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35].

90.    Regarding the allegations set forth in paragraph 90 of the Amended Complaint, the referenced article, which is not attached to the Amended Complaint, speaks for itself. Further, paragraph 90 calls for a legal conclusion to which no response is required. Paragraph 90 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the article referenced. To the extent a response is required, Cain denies the allegations set forth in paragraph 90 of the Amended Complaint, and further states that Quill's defamation, tortious interference, and conspiracy claims, including any republications thereof have been dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35].

91.    Regarding the allegations set forth in paragraph 90 of the Amended Complaint, the referenced quotes article, which is not attached to the Amended Complaint, speak for themselves. Further, paragraph 91 calls for a legal conclusion to which no response is required. Paragraph 91 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the article and quotes referenced. To the extent a response is required, Cain denies the allegations set forth in paragraph 91 of the Amended Complaint, and further states that Quill's defamation, tortious interference, and conspiracy claims, including any republications thereof have been dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35].

92.    Regarding the allegations set forth in paragraph 92 of the Amended Complaint, the referenced quotes and the "Tweet," not attached to the Amended Complaint, speak for themselves. Further, paragraph 92 calls for a legal conclusion to which no response is required.

Paragraph 92 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the "Tweet" and quotes referenced.  To the extent a response is required, Cain denies the allegations set forth in paragraph 92 of the Amended Complaint, and further states that Quill's defamation, tortious interference, and conspiracy claims, including any republications thereof have been dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35].

93.     Regarding the allegations set forth in paragraph 93 of the Amended Complaint, the referenced quotes and email, not attached to the Amended Complaint, speak for themselves. Further, paragraph 93 calls for a legal conclusion to which no response is required. Paragraph 93 further fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the quotes and email referenced.  To the extent a response is required, Cain denies the allegations set forth in paragraph 93 of the Amended Complaint, and further states that Quill's defamation, tortious interference, and conspiracy claims, including any republications thereof have been dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35]. Cain further denies that Quill owns any series or that it published a "Zoey Ellis" brand.

94.     Regarding the allegations set forth in paragraph 94 of the Amended Complaint, the referenced quotes and email, not attached to the Amended Complaint, speak for themselves.

95.     Regarding the allegations set forth in paragraph 95 of the Amended Complaint, the referenced quotes and email, not attached to the Amended Complaint, speak for themselves. Further, paragraph 95 fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the quotes and email referenced.  To the extent a response is required, Cain is without sufficient information

and knowledge to form a belief as to the allegations set forth in paragraph 95 of the Amended Complaint and therefore denies the same.

96.     Regarding the allegations set forth in paragraph 96 of the Amended Complaint, the referenced quotes and the email, not attached to the Amended Complaint, speak for themselves. Further, paragraph 96 fails to include any factual allegations to which a response is required because it consists of Quill or its counsel's opinion and interpretation of the context of the quotes and email referenced.  To the extent a response is required, Cain denies the allegations set forth in paragraph 96 of the Amended Complaint.

### COUNT I - INTENTIONAL DMCA MISREPRESENTATION

97.     Paragraph 97 of the Amended Complaint does not constitute a factual assertion to which a response is required. To the extent a response is required, Cain denies the allegations in paragraph 97 of the Amended Complaint and further incorporates by reference all admissions and denies to previous paragraphs as if fully restated herein.

98.     Cain denies the allegations set forth in paragraph 98 of the Amended Complaint.

99.     Cain is without sufficient information and knowledge to form a belief as to the allegations set forth in paragraph 99 of the Amended Complaint and therefore denies the same.

100.     Paragraph 100 of the Amended Complaint calls for a legal conclusion to which no response is required. Paragraph 100 also fails to include any factual allegations to which a response is required because it consists merely of Quill's or its counsel's opinions of the referenced take-down notices or books at issue in this case. To the extent a response is required, Cain denies the allegations set forth in paragraph 100 of the Amended Complaint.

101.     Paragraph 101 of the Amended Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Cain denies the allegations set forth in paragraph 101 of the Amended Complaint.

102.    Paragraph 102 of the Amended Complaint merely purports to recite the DMCA and no response is required. Cain further states that the referenced statute speaks for itself.

103.    Paragraph 103 of the Amended Complaint calls for a legal conclusion to which no response is required. To the extent a response is required, Cain denies the allegations set forth in paragraph 103 of the Amended Complaint.

104.    Paragraph 104 of the Amended Complaint calls for a legal conclusion and seeks legal relief to which no response is required. To the extent a response is required, Cain denies the allegations set forth in paragraph 104 of the Amended Complaint and specifically denies that Quill has suffered any injury whatsoever.

<b><u>COUNTS II-IV</u></b>

Paragraphs 105-129 involve Quill's claims for defamation, tortious interference and civil conspiracy, which were dismissed with prejudice by this Court on October 29, 2019 [Dkt. 35]. Accordingly, no response is required to the allegations set forth in paragraphs 105-129. To the extent a response is required, Cain denies the allegations set forth in paragraphs 105-129 of the Amended Complaint.

<b><u>PRAYER FOR RELIEF</u></b>

With respect to the paragraph under "Prayer for Relief" and beginning with "WHEREFORE" on page 37 of the Amended Complaint, including parts 1-7, Cain denies that Quill is entitled to any of the relief sought.

<b><u>DEFENDANT CAIN'S AFFIRMATIVE DEFENSES</u></b>

Cain, by and through her undersigned counsel, asserts the following affirmative defenses. Inclusion of these affirmative defenses does not imply that Cain bears the burden of proof or production on any of these affirmative defenses, and those burdens will be consistent with those

26

under applicable law. Cain reserves the right to assert any and all affirmative defenses as may be appropriate based upon case development and discovery.

1.      Quill's claim is barred, in whole or in part, by the doctrine of waiver and/or estoppel.

2.      Quill's claim is barred, in whole or in part, by the doctrine of unclean hands.

3.      Quill's claim is barred in whole or in part, by the statute of limitations or laches.

4.      Quill's claim is barred because Quill has suffered no alleged damages and/or has failed to mitigate or minimize the alleged damages.

5.      To the extent Quill has suffered any alleged damages, such damages were caused or contributed to by Quill's or own actions or the actions of others whom Cain exercised no control.

6.      Without waiving any denial or other defense set forth herein, Quill's claim fails because Cain and/or Blushing Books' filing of notices under the DMCA were made with a good faith belief of infringement and were privileged and/or justified as a matter of law.

7.      Without waiving any denial or other defense set forth herein, to the extent wrongful acts were committed by Blushing Books, such actions were outside the scope of any authority granted to Blushing Books by Cain.

8.      Quill fails to state a claim upon which relief can be granted.

## **DEFENDANT CAIN'S COUNTERCLAIM**

### **THE PARTIES**

1.      Cain is an individual residing in Virginia.

2.      Quill is a foreign corporation formed in London, England with a place of business at Office 7, 35-37 Ludgate Hill, London EC4M 7JN, United Kingdom.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different States.

4.     This Court has supplemental jurisdiction over this action pursuant 28 U.S.C. § 1367 because the claims form part of the same case or controversy as the claims brought by Quill against Cain under 17 U.S.C. § 512 and 28 U.S.C. § 1331.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

## BACKGROUND FACTS

### Cain's *Alpha's Claim* Series

6.     Cain is an author who started out writing fan fiction in 2012 and now writes dark romance, fantasy, science fiction, horror, and other genres of novels.

7.     Cain's authored works include the internationally bestselling *Alpha's Claim* series ("*Alpha's Claim* Series"), which includes four books, entitled *Born To Be Bound: Book One* ("Book One"); *Born To Be Broken: Book Two* ("Book Two"); *Reborn: Book Three* ("Book Three"); and *Stolen*: Book Four.

8.     The *Alpha's Claim* Series is written in the Omegaverse genre.

9.     Book One was published by Blushing Books on April 8, 2016.

10.    Cain then wrote Book Two and Book Three, which were published by Blushing Books on June 3, 2016 and September 1, 2016, respectively.

11.    All four of Cain's books in the *Alpha's Claim* Series were published on Amazon as well as several other online book sellers.

12.     Cain has advertises her books, including the *Alpha's Claim* Series on her website www.addisoncain.com, on her Facebook page at www.facebook.com/AddisonlCain/, and on Goodreads at

https://www.goodreads.com/author/show/15164484.Addison_Cain?from_search=true.

13.     Cain sells her books through various online retailers, including Amazon, Kindle Unlimited, iBooks, Barnes and Noble, Kobo, and Google Play.

14.     Since June 2016 Cain has sold more than 50 thousand copies of her *Alpha's Claim* Series.

### Margarita T.B. Coale's History as an ARC Reader

15.     Prior to publication of Book One, Blushing Books offered the unpublished manuscript to approved advanced reader copy ("ARC") readers.

16.     ARC readers choose what free unpublished books they want to read in exchange for an honest review upon publication of the book.

17.     Margarita T.B. Coale ("Coale") was an approved Blushing Books ARC reader who chose to read an unpublished version of Book One in Cain's *Alpha's Claim* Series.

18.     Upon information and belief, Coale is (or was) an attorney licensed in Texas.

19.     After reading Book One, Coale communicated with Cain through the Facebook messenger application claiming to be one of Cain's fans.  In those communications, Coale offered Cain free legal services, pressured Cain to revise her website, and offered Cain unsolicited plot advice.

20.     Upon information and belief, after Book One was published, Coale, under an Amazon account user name, AvidCCReader, published a favorable review of Book One.

21.     Subsequently, Coale remained an ARC reader and read the unpublished versions of Book Two and Book Three of Cain's *Alpha's Claim* Series.

22.     After reading the unpublished version of Book Three, Coale contacted Blushing Books the night before the book's release, demanding that Blushing Books not publish the book as written, and insisting that Cain rewrite the end of the book as suggested by Coale.

23.     Blushing Books informed Cain of Coale's request, but Cain chose not to alter the ending of Book Three, and Blushing Books then published Book Three without Coale's requested modifications.

24.     Upon information and belief, after Book Three was released, Coale utilized the same Amazon user name, AvidCCReader, along with several other Amazon account user names, including ReadforHEA, CC, AvidReader Amazon Custumer, and AC, to make public posts of negative reviews about Book Three, to modify her original publicly available positive reviews about Book One and Book Two, and/or to publicly attack any other person who left a positive review of Book Three or the other books in the *Alpha's Claim* Series.

25.     Upon information and belief, Coale also utilized the same or additional account user names to create a false dialogue through public reviews and comments about Book Three and the previous books in the *Alpha's Claim* Series for the purpose of discrediting positive reviews of the books, harassing Cain's fans, and to decrease the rating of Cain's series.

26.     Upon information and belief, Coale also used her own and other fake Facebook accounts and other online accounts to post negative reviews and attacks on public Facebook forums and other online forums about the *Alpha's Claim* Series.

27.     Subsequently, Cain's fans and other authors contacted Cain letting her know about the negative comments and reviews.

28.     Cain reported this behavior to Blushing Books and that she believed Coale was behind the negative comments.

29.     Blushing Books confirmed that Coale was the person who had demanded that Cain rewrite Book Three.

30.     Blushing Books then removed Coale from the ARC reader list.

31.     Upon information and belief, Coale has continued to use fake accounts and user-names to publish unfavorable reviews and comments or to elicit others to publish unfavorable reviews and comments on Cain's books.

32.     Upon information and belief, Coale is, and during the pertinent time period has been, Quill's "Corporate Counsel."

33.     In January 2018, Quill published an Omegaverse book entitled *Crave to Capture*, written by a woman author under the pseudonym "Zoey Ellis."  That author wrote two more books in the series now known as the *Myth of Omega* series, which also are published by Quill.

34.     Quill was incorporated in London, England on June 27, 2016 as a private limited company, in which it appointed a single individual as the sole director with 1 share in the company.

35.     Zoey Ellis and Cain write novels for the patronage of readers interested in the Omegaverse genre.

36.     One of Cain's principal avenues for advertising and generating sales of her *Alpha's Claim* series is on Facebook.

37.     Upon information and belief, Coale, Zoey Ellis, and Nora Ash (another author who, on information and belief, is associated with or aligned with Quill and Zoey Ellis) set up and used additional fake online accounts to continuously make false reports to Facebook about

Cain's advertisements, causing Cain's Facebook advertisements for her books to be removed numerous times from at least March 2018 until October 2018.

38.     The repeated removal of Cain's advertisements from Facebook interrupted her advertising and prevented online sales of her *Alpha's Claim* Series.

39.     Cain suffered damages due to these actions because her advertisements were removed, which caused her book sales to decrease.

40.     During this same time period, Cain's publisher, Blushing Books, had sent DMCA take-down notices to certain vendors of the *Myth of Omega* series because Cain and Blushing Books believed that series infringed by using variations of numerous scenes and multiple plot sequences found in Cain's *Alpha's Claim* Series.

41.     After the DMCA notices were sent by Blushing Books, Coale sent a "cease and desist" letter to Blushing Books on May 29, 2018, in which Coale claimed to have been retained as Zoey Ellis' attorney.

42.     Also on May 29, 2018, Coale, claiming that Zoey Ellis was her client, contacted one or more of the vendors to whom DMCA notices had been sent, demanding that Zoey Ellis' *Myth of Omega* books be reinstated for online sales.

43.     Upon information and belief, after the DMCA notices had been sent by Blushing Books and before she sent letters as Zoey Ellis' attorney, Coale deleted or changed the names of her fake online accounts, deleted or hid her public posts, online reviews, and online comments on Facebook, Amazon, and other sites, deleted and blocked her prior messages with Cain, and took other measures to hide her previous online activities.

44.     On September 18, 2018, Quill and Zoey Ellis filed a lawsuit in the District Court of the Western District of Oklahoma against Blushing and Cain (the "Oklahoma Lawsuit"). *See*

*Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Sept. 18, 2018) (Dkt. 1, *Complaint*).

45.     Upon information and belief, Coale drafted and assisted in drafting the Complaint and other documents in the Oklahoma Lawsuit and thereafter continuously assisted the attorneys who appeared for Quill and Zoey Ellis.

46.     In the original Complaint in the Oklahoma Lawsuit Quill, through Coale and others, knowingly and falsely alleged that Cain had claimed ownership in the Omegaverse genre. *See Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Sept. 18, 2018) (Dkt. 1, *Complaint, ¶¶* 2, 63).

47.     After the Oklahoma judge denied Zoey Ellis' motion to proceed pseudonymously, Quill filed an amended complaint on October 17, 2018, which dropped Zoey Ellis as a plaintiff and recast the claims based on alleged injury to Quill. *Quill Ink Books Limited, et al. v. ABCD Graphics and Design, et al*., No. CIV-18-920-G (Dkt. 6, *Amended Complaint*).

48.     Upon information and belief, after the Oklahoma judge denied Zoey Ellis' motion to proceed pseudonymously, Quill appointed a new individual as a managing member of Quill.

49.     Despite having previously acknowledged that Cain would be injured by the public disclosure of her actual name, Quill used Cain's actual name, Rachelle Soto, in the amended complaint in Oklahoma.  *Id.*

50.     On October 18, 2018, the day after the Amended Complaint was filed in the Oklahoma Lawsuit, a new website, www.omegaverselitigation.com (the "Omegaverse Litigation Website"), was released containing a link to the Amended Complaint.

51.     Upon information and belief, Quill and Coale created and now maintain that website.  Posted on that website are pleadings, papers, and rulings in the Oklahoma Lawsuit that

purportedly are favorable to Quill and Zoey Ellis.  A letter written by Coale, apparently as corporate counsel for Quill, also is posted on that website, supposedly refuting Cain's contentions regarding the *Myth of Omega* series.  The website also features the formal photograph of Quill's Oklahoma counsel, Gideon A. Lincecum, Esq. ("Lincecum"), and the post of a quote attributed to him attacking Cain's supposedly "false DMCA notices."

52.     On October 19, 2018, a public post was made on Zoey Ellis' Facebook page about Cain, the Lawsuit, and activities purportedly leading up to the lawsuit.  In this post, Zoey Ellis' readers are told to direct inquiries at an email associated with the Omegaverse Litigation Website.

53.     In this same post, numerous false statements are made, including that Cain made "threats of blackmail and intimidation, as well as continued existing attacks against [Zoey Ellis'] character and books in collusion with others" and that she "[has] since learned of other M/F Omegaverse writers who were similarly targeted by the same parties, including one who abandoned her story due to threats and take-down attempts."

54.     This same statement was later added to Zoey Ellis' blog on her website at https://www.zoeyellis.com/2018/10/20/no-one-owns-a-genre-lease-of-all-omegaverse/, and this same statement was also posted on the Omegaverse Litigation Website at https://www.omegaverselitigation.com/statement and on Ellis' Goodreads page.

55.     Even though Quill, Zoey Ellis, and Coale knew that Cain had never claimed ownership in Omegaverse genre, they titled the post on Zoey Ellis' blog, "*No One Owns a Genre, Least of All Omegaverse.*"

34

56.     The title and content of the blog post is false and misleading because it insinuated to the public that Cain had claimed she "owned omegaverse," when Quill, Zoey Ellis and Coale knew she had never made such a claim.

57.     Subsequently, the Omegaverse Litigation Website was updated to include additional pleadings and statements about the Oklahoma Lawsuit, and Cain's actual name was disclosed on the landing page for the Omegaverse Litigation Website and in the posted pleadings.

58.     Upon information and belief, Quill, through Coale and others, reposted the information from the Omegaverse Litigation Website on another website—https://fanlore.org/wiki/Omegaverse_Litigation ("Fanlore Website"), and included the statement "The Omegaverse Litigation is an event involving a romance author's attempt to claim to be the originator of the [heterosexual] Omegaverse trope."

59.     Upon information and belief, Quill, through Coale and others has used Zoey Ellis' Facebook post, Zoey Ellis' blog post, Zoey Ellis' Goodreads page, the Omegaverse Litigation Website, and the Fanlore Website to make and repeat false statements about Cain.

60.     Quill's false and misleading statements have been repeated by third parties in numerous articles and online forums, including on Twitter at https://twitter.com/courtneymilan/status/1105464752845729793?lang=en;   and   at https://twitter.com/courtneymilan/status/1106304495003144192?lang=en; and on the following blog at https://legalinspiration.com/?p=709.

61.     Upon information and belief, Quill, through others, has made false statements about Cain on online forums and have made false statements about Cain through communications with administrators of one or more forums to prevented Cain from being part of

online forums which prevent her from being able to communicate with fans and other authors in the industry.

62.     Upon information and belief, Quill, through others, has made false statements about Cain's books to Amazon, which has caused some of Cain's books to be taken down and banned for sale on Amazon's site.

63.     Upon information and belief, Quill, through Coale and others, has engaged in a campaign against Cain, for the purpose of harming Cain's reputation and thwarting sales of Cain's work and increasing public interest in Zoey Ellis' works and Quill's other publications. This campaign commenced with Coale's activities as alleged above, whereby she used her own and other fake Facebook accounts and other online accounts to post negative reviews and attacks on public Facebook forums and other online forums about the *Alpha's Claim* Series, and continues through the present.

64.     This campaign has resulted in Cain receiving threatening messages on her website, Twitter, Facebook, and other online forums.

65.     After Quill filed the Oklahoma Lawsuit and after Cain was dismissed from the Oklahoma Lawsuit for lack of personal jurisdiction, a GoFundMe webpage was created to solicit donations to fund Cain's costs and legal fees associated with a subpoena and deposition in the Oklahoma Lawsuit ("Bene Campaign").

66.     On October 21, 2019, Lincecum, as counsel for Quill, and Coale, as "Corporate Counsel" for Quill, sent a letter to GoFundMe demanding that GoFundMe remove the Bene Campaign webpage purportedly because it "commit[ted] defamation *per se* stating that Quill's Zoey Ellis series 'plagiarized' Cain's work." They threatened legal action against GoFundMe and demanded that GoFundMe "should return and order the return of monies obtained based on

the Bene Campaign's false and defamatory statements ***against Quill***" (emphasis added).  After the Court dismissed Quill's defamation claims on October 29, 2019 (Dkt. 35), Quill (through Lincecum) nonetheless refused to withdraw the October 21, 2019 letter.

### COUNT ONE: TORTIOUS INTERFERENCE

67.    Cain incorporates paragraphs 1 – 66 of the Counterclaim as if realleged herein.

68.    Cain had a contractual right, prospective economic advantage, or a business expectancy to advertise the sale of her *Alpha's Claim* Series of books on Facebook and to sell her books on Amazon.  Quill had knowledge of Cain's right or expectancy.

69.    Quill tortuously interfered with that right or expectancy through the acts of Coale and others to disparage Cain and her books and by making false reports to Facebook and Amazon causing the repeated removal of Cain's advertisements and prevented Cain from selling certain books on Amazon. These actions constitute improper means because they involved, *inter alia*, false statements, deception, and other unethical conduct.

70.    Quill's acts were intentionally and maliciously undertaken.

71.    Cain was injured by Quill's malicious, intentional, and tortious acts which cause her to lose sales due to the unwarranted removal of her Facebook advertisements.

### PRAYER FOR RELIEF

WHEREFORE, Defendant and Counter-Plaintiff, Rachelle Soto a/k/a Addison Cain, prays for the following relief:

1.    An award of her compensatory damages, in an amount to be proven at trial.

2.    An award of punitive damages.

3.    An award of taxable costs.

## JURY DEMAND

Cain demands a trial by jury of all issues.

November 12, 2019               Respectfully submitted,

/s/ Craig C. Reilly
Craig C. Reilly, VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*

Shawn M. Dellegar, OBA # 20973
Crowe & Dunlevy, P.C.
321 South Boston Avenue, Suite 500
Tulsa, Oklahoma 74103
T: (918) 592-9800
E: shawn.dellegar@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

Tynia A. Watson, OBA # 30765
Crowe & Dunlevy, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
T: (405) 235-7500
E: tynia.watson@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*