**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **QUILL INK BOOKS LIMITED,** | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-476-LO-MSN |
| | ) |
| **RACHELLE SOTO a/k/a ADDISON CAIN,** | ) |
| | ) |
| Defendant/Counter-Plaintiff. | ) |

**PLAINTIFF/COUNTERCLAIM DEFENDANT QUILL INK BOOKS LIMITED'S
ANSWER AND AFFIRMATIVE DEFENSES**

Plaintiff Quill Ink Books Limited ("Quill"), for its Answer to Defendant Rachelle Soto a/k/a Addison Cain's ("Cain") counterclaim (the "Counterclaim"), states as follows:

**PLAINTIFF'S ANSWER TO THE COUNTERCLAIM**

1. Quill admits the allegation set forth in paragraph 1 of the Counterclaim.

2. Quill admits the allegation set forth in paragraph 2 of the Counterclaim.

3. The allegations set forth in paragraph 3 of the Counterclaim contain a legal conclusion to which no response is required. To the extent a response is required, Quill admits that Cain and Quill are of diverse citizenship, and denies the remaining allegations set forth in paragraph 3 of the Counterclaim.

4. The allegations set forth in paragraph 4 of the Counterclaim contain a legal conclusion to which no response is required. To the extent a response is required, Quill denies the allegations set forth in paragraph 4 of the Counterclaim.

5. The allegations set forth in paragraph 5 of the Counterclaim contain legal conclusions to which no response is required. To the extent a response is required, Quill denies the allegations set forth in paragraph 5 of the Counterclaim.

6. Based upon information and belief, Quill admits Cain is an author that writes various genres of novels, including science fiction and erotic horror. Quill does not have sufficient information or knowledge to form a belief as to the remaining allegations set forth in paragraph 6 of the Counterclaim, and therefore denies the same.

7. Quill admits only that Cain has published the following books: *Born to Be Bound*, *Born to Be Broken*, *Reborn*, and *Stolen*. Quill does not have sufficient information or knowledge to form a belief as to the remaining allegations set forth in paragraph 7 of the Counterclaim, and therefore denies the same.

8. Quill admits *Born to Be Bound*, *Born to Be Broken*, *Reborn*, and *Stolen* use tropes drawn from the Omegaverse and related fan fiction. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 8 in the Counterclaim.

9. Based upon information and belief, Quill admits *Born to Be Bound* was published by Cain's publisher, ABCD Graphics and Design, Inc., D/B/A Blushing Books Publishing ("Blushing Books") on April 8, 2016. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 9 of the Counterclaim.

10. Based upon information and belief, Quill admits *Born to Be Broken* and *Reborn* were published by Blushing Books, respectively, on June 3, 2016 and September 1, 2016. Quill affirmatively alleges *Stolen*, also known as Book One of Cain's *Alpha's Control* Series, was

published by Blushing Books on September 26, 2017. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 10 of the Counterclaim.

11. Based upon information and belief, Quill admits that *Born to Be Bound*, *Born to Be Broken*, *Reborn*, and *Stolen* were published through various online book sellers as indicated in paragraph 11 of the Counterclaim.

12. Based upon information and belief, Quill admits that Cain advertises her books on various platforms, including her website, Facebook page and Goodreads, as identified in paragraph 12 of the Counterclaim. Quill denies any implication in paragraph 12 of the Counterclaim that Quill has knowledge of either the substance of Cain's advertisements, or when Cain makes such advertisements.

13. Based upon information and belief, Quill admits that Cain sells her books through various online retailers as listed in paragraph 13 of the Counterclaim.

14. Quill does not have sufficient information or knowledge to form a belief as to the factual allegations set forth in paragraph 14 of the Counterclaim, and therefore denies the same.

15. Quill does not have sufficient information or knowledge to form a belief as to the factual allegations set forth in paragraph 15 of the Counterclaim, and therefore denies the same.

16. Based upon information and belief, Quill admits that advanced reader copy ("ARC") readers are given the opportunity to choose what unpublished books they read in exchange for an honest review, as described in paragraph 16 of the Counterclaim.

17.     Quill admits that Margarita T.B. Coale ("Coale") previously served as an ARC reader for Blushing Books between August and October 2016, and asked to be removed from the program when asked to publish only positive reviews of *Reborn* in violation of Amazon's Terms of Service.  Quill denies that Coale received a copy of *Born to Be Bound* or *Born to Be Broken* in her capacity as an ARC reader for Blushing Books or any other publisher or service.  Quill denies any implication in paragraph 17 of the Counterclaim that the actions of Coale as an ARC reader were done in her capacity as an agent of Quill, or at the direction of Quill.

18.     Quill admits that Coale is a licensed attorney in the State of Texas.

19.     Quill admits that Coale and Cain communicated through Facebook.  Quill admits Coale and Cain discussed Coale's profession and Cain's authorship.  To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 19 in the Counterclaim.

20.     Quill admits that Coale purchased, read, and published a review of *Born to Be Bound* and *Born to Be Broken* independently, and not as an ARC reader.  To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 20 of the Counterclaim.

21.     Quill admits that Coale became an ARC reader for Blushing Books on August 13, 2016, but Coale did not review or receive *Born to be Broken* or *Born to Be Broken* as an ARC reader, but rather as a paying customer, and after communications with Blushing Books regarding Blushing Books' expectations of only positive reviews of their books, Coale decided to withdraw from the program.  To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 21 of the Counterclaim.

22. Quill admits Coale provided feedback, as requested under the ARC program, to Blushing Books with concerns that it had inappropriately advertised *Reborn* as a romance when it lacked the Romance Writers of America definition for the genre, a happy or happy for now ending, by killing both main characters. Quill affirmatively alleges Coale told Blushing Books "Ms. Cain will do what she wants to do." Quill affirmatively alleges the communications between Coale and Blushing Books were supposedly made confidentially, and should have remained confidential, per the terms of the ARC reader program, in order to prevent authors from improperly influencing reviews of their work(s). To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 22 of the Counterclaim.

23. Based upon information and belief, Quill admits that Blushing Books published *Reborn* with an ending inconsistent with the romance genre. Quill denies that Coale demanded Blushing Books change the ending, or gave suggestions for modifications. Quill does not have sufficient information or knowledge to form a belief as to the other factual allegations set forth in paragraph 23 of the Counterclaim, and therefore denies the same.

24. Quill admits that Coale had two Amazon accounts at the relevant time, one for the purposes of reviewing books and one for personal purposes, but upon withdrawing from Blushing Book's ARC reader program, Coale later deleted one account when she was asked by Blushing Books to only post positive reviews. Quill admits that Coale now maintains only one Amazon account, and Coale changed her reviews for the books she purchased and reviewed independently, *Born to Be Bound* and *Born to Be Broken*, as paying customers who are also ARC readers are allowed to do under Amazon's Terms of Service. Quill denies any implication in paragraph 24 of the Counterclaim that the actions of Coale as either a paying customer or an ARC reader were done in her capacity as an agent of Quill or in her capacity as corporate counsel, or at the direction

of Quill. Quill affirmatively alleges Cain cannot in good faith make the allegations in paragraph 24 of the Counterclaim, as there is no avenue by which Cain would have any information to reach her alleged conclusions. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 24 of the Counterclaim.

25. Quill affirmatively alleges that any interaction between Coale and Cain's readers were the result of Coale attempting to defend her personal opinions, and Quill denies any implication in paragraph 25 of the Counterclaim that the actions of Coale were done in her capacity as an agent of Quill or in her capacity as corporate counsel, or at the direction of Quill. Quill otherwise denies the allegations set forth in paragraph 25 of the Counterclaim.

26. Quill affirmatively alleges Coale has only one Facebook account. Quill otherwise denies the allegations set forth in paragraph 26 of the Counterclaim.

27. Quill affirmatively alleges that Cain, by her own admission, on the Science Fiction and Fantasy Marketing podcast on September 6, 2016, detailed how she had been monitoring and following her reviews the day of release and called on her readers to leave positive reviews on *Reborn* to counteract the poor reviews left by dissatisfied readers in order to improve her Amazon ratings. Quill affirmatively alleges Cain, both at the relevant time and now, regularly asks her fans on Facebook and Goodreads to interfere with reviews of her books and has publicly admitted to using her readers as "not only a good marketing tool but a good tool to save [her] ass when [she] was looking really bad." Quill does not have sufficient information or knowledge to form a belief as to the other factual allegations set forth in paragraph 27 of the Counterclaim, and therefore denies the same.

28. Quill affirmatively alleges Cain cannot in good faith make the allegations in paragraph 28 of the Counterclaim, as there is no avenue by which Cain would have any information to reach her alleged conclusions. Quill does not have sufficient information or knowledge to form a belief as to the factual allegations set forth in paragraph 28 of the Counterclaim, and therefore denies the same.

29. Quill denies that Coale demanded that Cain rewrite *Reborn*. Quill affirmatively alleges the communications between Coale and Blushing Books were supposedly made confidentially, and should have remained confidential, per the terms of the ARC reader program, in order to prevent authors from improperly influencing reviews of their work(s). Quill does not have sufficient information or knowledge to form a belief as to the other factual allegations set forth in paragraph 29 of the Counterclaim, and therefore denies the same.

30. Quill admits that Coale requested to be removed from Blushing Book's ARC reader program. Quill further admits Coale made such request after Blushing Books' ARC team expressed its expectation that ARC readers leave only 4- or 5-star reviews, "because [they] were getting a benefit of getting a free book." To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 30 of the Counterclaim.

31. Quill denies the allegations set forth in paragraph 31 of the Counterclaim. Quill affirmatively alleges Cain cannot in good faith make the allegations in paragraph 31 of the Counterclaim, as there is no avenue by which Cain would have any information to reach her alleged conclusions.

32. Quill admits that Coale, as of March 2018, serves as its corporate counsel. Quill does not have sufficient information or knowledge to form a belief as to the remaining factual

allegations set forth in paragraph 32 of the Counterclaim, and therefore denies the same. Quill denies any implication in paragraph 32 of the Counterclaim that the actions of Coale as an ARC reader were done in her capacity as an agent of Quill or in her capacity as corporate counsel, or at the direction of Quill.

33. Quill admits that it published the *Myth of Omega* series beginning in January 2018, as written by a woman author using the pseudonym "Zoey Ellis" and that there are now ten books in the *Myth of Omega* series, all of which were published by July 2019.

34. Quill admits the allegations set forth in paragraph 34 of the Counterclaim.

35. Quill admits the allegations set forth in paragraph 35 of the Counterclaim. Quill affirmatively alleges Zoey Ellis writes novels for readers interested in other genres as well.

36. Quill does not have sufficient information or knowledge to form a belief as to the factual allegations set forth in paragraph 36 of the Counterclaim, and therefore denies the same.

37. Quill denies the allegations set forth in paragraph 37 of the Counterclaim. Quill affirmatively alleges Cain cannot in good faith make the allegations in paragraph 37 of the Counterclaim, as there is no avenue by which Cain would have any information to reach her alleged conclusions. Quill further denies any implication in paragraph 37 of the Counterclaim that Nora Ash is an agent of Quill, or has acted at the direction of Quill.

38. Quill denies any implication in paragraph 38 of the Counterclaim that any action of Quill, or a third party acting on behalf of Quill as its agent, caused any removal of Cain's advertisements from Facebook. Quill does not have sufficient information or knowledge to form

a belief as to the other factual allegations set forth in paragraph 38 of the Counterclaim, and therefore denies the same.

39. Quill denies the allegations set forth in paragraph 39 of the Counterclaim. Quill denies any implication in paragraph 38 of the Counterclaim that any action of Quill, or a third party acting on behalf of Quill as its agent, caused any removal of Cain's advertisements from Facebook or any suffering of damages therefrom.

40. Quill denies the allegations set forth in paragraph 40 of the Counterclaim. Based upon information and belief, Quill affirmatively alleges that Cain, for anti-competitive behavior and because "[Zoey Ellis] did not acknowledge [her]", instead filed the false DMCA take-down notices to various vendors of the *Myth of Omega* series, even after Cain admitted to Blushing Books the publications were not plagiarized. Quill further affirmatively alleges Cain directed Blushing Books to file the false DMCA take-down notices against one of Quill's unpublished books because Cain did not want "[Zoey Ellis] to make any more money."

41. Quill admits that Coale, in her capacity as Quill's corporate counsel, sent a cease and desist letter to Blushing Books in May 2018, after Cain filed the false DMCA take-down notices. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 41 of the Counterclaim.

42. Quill admits that Coale, in her capacity as Quill's corporate counsel, contacted the vendors to whom filed false DMCA take-down notices had been sent, and presented counter-notices that demonstrated the falsehoods contained in the DMCA take-down notices, as permitted and required under the Digital Millennium Copyright Act, 17 U.S.C. § 512(g), in order to reinstate Quills' *Myth of Omega* books for online sales. These counter-notices established the basis as to

why the DMCA take-down notices were false. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 42 of the Counterclaim.

43. Quill admits that Coale left the one Facebook group of Cain's to which she belonged in early 2018, and Coale and Cain remained "friends" on Facebook until Cain unfriended and blocked Coale in November 2018, when Cain was dismissed for lack of personal jurisdiction from the lawsuit filed in the District Court of the Western District of Oklahoma on September 18, 2018 by Quill and Zoey Ellis against Blushing Books and Cain (*Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla.) or the "Oklahoma Lawsuit"). Quill affirmatively alleges Coale took no actions to conceal her conversations or reviews made outside the scope of her agency as Quill's corporate counsel and not at the direction of Quill, as Coale has no legal duty or obligation to either Cain or Blushing Books. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 43 of the Counterclaim.

44. Quill admits the allegations set forth in paragraph 44 of the Counterclaim.

45. Quill affirmatively alleges that Gideon Lincecum and his firm, Holladay & Chilton, PLLC, were retained to evaluate and handle the litigation between Quill and Cain in the Oklahoma Lawsuit, and Quill admits that Coale provided input as Quill's corporate counsel. Quill affirmatively alleges that Quill also hired Kristina Busse as a fan fiction Omegaverse expert and Payne Harrison to provide assistance with the damage evaluation. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 45 of the Counterclaim.

46. Quill denies that it knowingly and falsely alleged Cain had claimed ownership in the Omegaverse genre. Quill affirmatively alleges that Cain, instead, has repeatedly claimed

10

falsely she "was the first to write" male/female Omegaverse and filed false DMCA take-down notices against other male/female Omegaverse authors who simply use common tropes from the Omegaverse genre, and alleged this constitutes plagiarism of her work. See *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Sept. 18, 2018) (Dkt. 1, Complaint, ¶ 63; Dkt. 1-16). Quill further affirmatively alleges that through Cain's DMCA take-down notices, Cain and Blushing Books even alleged Quill's unpublished male/female Omegaverse book had infringed Cain's work. *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.* (Dkt. 1, Complaint, ¶ 51). To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 46 of the Counterclaim.

47. Quill admits that upon the Oklahoma judge denying Quill and Zoey Ellis' motion to proceed in the Oklahoma lawsuit pseudonymously, Zoey Ellis chose to remove herself from the lawsuit to prevent and discourage additional targeting and harassment from Cain, her author friends, and her bloggers. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 47 of the Counterclaim.

48. Quill admits the allegations set forth in paragraph 48 of the Counterclaim.

49. Quill admits that Cain's real name, Rachelle Soto, was used in the Oklahoma Lawsuit after the Oklahoma judge denied Cain's ability to proceed pseudonymously. Quill affirmatively alleges that after the Oklahoma judge's ruling, there was no other name under which the legal documents could be served to seek relief for damage caused by Cain's actions. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 49 of the Counterclaim.

50. Based upon information and belief, Quill admits that the website, www.omegaverselitigation.com (the "Omegaverse Litigation Website") was released after the amended complaint in the Oklahoma Lawsuit was filed, and contained a link to the amended complaint. Quill affirmatively alleges the Omegaverse Litigation Website has posted only publicly available documents.

51. Quill admits it created and maintains the Omegaverse Litigation Website containing information and resources regarding DMCA abuse and featuring pertinent information concerning the Oklahoma litigation in which Judgment was entered on September 9, 2019, against Cain's publisher, ABCD Graphics and Design, Inc., D/B/A Blushing Books Publishing ("Blushing Books") based upon Blushing Books' admission that "Zoey Ellis's Myth of Omega series does not plagiarize Addison Cain's Alpha's Claim series, and the take-down notices transmitted pursuant to the Digital Millennium Copyright Act are invalid." By way of further answer, Quill states Cain has mischaracterized the information contained on the Omegaverse Litigation Website in an attempt to recast herself as the victim in the Oklahoma litigation where it was demonstrated that she knowingly and intentionally demanded her publisher file false DMCA notices against Quill's publications demanding Blushing Books to "File the DMCAs immediately to Amazon, iTunes, and B&N (should only take 5 mins each)" and then additionally targeted one of Quill's future publications urging Blushing Books that "I don't want [Zoey Ellis] to make any more money off this series," "Book three is going to go live soon, and I don't want it being released," and asking "What can we do to stop [Zoey Ellis's] spin off series." Cain prompted Blushing Books to respond to her multiple demands despite admitting "[Zoey Ellis] did not quote any of my exact phrasing" and schemed to hide her actions behind Blushing Books directing "if a stink arises . . . I will deflect to Blushing and remain distant and naïve." Cain further advised Blushing Books that "Some

people will be reactive right out of the gate, but that's why I have a publisher to hide behind. It will pass quickly. So long as I stay above the fray, we're all good." Quill denies that Cain is the victim in this litigation and states she caused the litigation herself by directing the filing of false DMCA take-down notices because she was merely not given the credit she thought she deserved as an Omegaverse author stating "though [Zoey Ellis] acknowledged lots of people at the end (including a book that is straight up copywrite [sic] infringement of Game of Thrones), [Zoey Ellis] did not acknowledge me. If she had, I would not have been so pissed," even though Cain had nothing to do with Quill's publications or the Zoey Ellis series of books. Cain engaged in these actions all while her publisher was advising "The problem is – as you say – you do not own Omegaverse." Quill denies any and all remaining allegations in paragraph 51 of the Counterclaim.

52. Quill denies that the public post specifically names Cain. Based upon information and belief, Quill admits the remaining allegations set forth in paragraph 52 of the Counterclaim.

53. Based upon information and belief, Quill admits the Facebook post includes the quoted statements, affirmatively alleges they are not false, and avers that the Facebook post speaks for itself and no further response is required. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 53 of the Counterclaim.

54. Based upon information and belief, Quill admits similar statements were shared on Zoey Ellis' website and Goodreads page, and the Omegaverse Litigation Website. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 54 of the Counterclaim.

55. Based upon information and belief, Quill admits the post is titled "*No One Owns a Genre, Lease of All Omegaverse.*" To the extent not admitted herein, Quill denies any remaining

allegations set forth in paragraph 55 of the Counterclaim. Quill affirmatively alleges that Cain has repeatedly claimed falsely she "was the first to write" male/female Omegaverse, and filed false DMCA take-down notices against male/female Omegaverse authors who simply use common tropes from the Omegaverse genre, and alleged this constitutes plagiarism of her work. See *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Sept. 18, 2018) (Dkt. 1, Complaint, ¶ 63; Dkt. 1-16).

56. Quill denies the allegations set forth in paragraph 56 of the Counterclaim.

57. Based upon information and belief, Quill admits the Omegaverse Litigation Website had been updated with additional pleadings from the Oklahoma Lawsuit, all of which are publicly available, which contained Cain's real name. To the extent not admitted herein, Quill denies any remaining allegations set forth in paragraph 57 of the Counterclaim.

58. Based upon information and belief, Quill admits the information from the Omegaverse Litigation Website has been reposted, but Quill denies it, through Coale or "others", had any involvement with such reposting. Quill denies any implication in paragraph 58 of the Counterclaim that Quill has any relationship, whether through agency or not, with the Fanlore website. To the extent not admitted herein, Quill denies the remaining allegations set forth in paragraph 58 of the Counterclaim.

59. Quill denies the allegations set forth in paragraph 59 of the Counterclaim. Quill further denies any implication in paragraph 59 of the Counterclaim that the actions of Zoey Ellis were done in her capacity as an agent of Quill or at the direction of Quill, or the activities on Zoey Ellis' webpages, including Facebook, her blog, and her Goodreads page, were done on behalf of or at the direction of Quill.

60. Based upon information and belief, Quill admits other third parties not acting on behalf of Quill as its agent(s) have independently posted about the Oklahoma Lawsuit on other forums, including Twitter and blogs. Quill affirmatively alleges that Cain herself, her author friends, and many of her fans—including but not limited to Golden Angel, Clara Brotherton, Myra Danvers, Jennifer Bene, Suzan Tisdale, Zoe Blake, and Sarah Fields—have posted and reposted about the Oklahoma Lawsuit across various platforms, including but not limited to Facebook, GoFundMe, Twitter and blogs, to draw attention to Cain's false allegations that her copyright of *Born to Be Bound* has been infringed and that Quill had filed "nuisance lawsuits." To the extent not admitted herein, Quill denies the remaining allegations set forth in paragraph 60 of the Counterclaim.

61. Quill denies that it has made false statements about Cain, or has directed others, whether acting as agents on behalf of Quill or not, to make false statements about Cain. Quill does not have sufficient information or knowledge to form a belief as to the remaining factual allegations set forth in paragraph 61 of the Counterclaim, and therefore denies the same

62. Quill denies the allegations set forth in paragraph 62 of the Counterclaim. Quill further denies any implication in paragraph 62 of the Counterclaim that Quill has directed others, whether acting as agents on behalf of Quill or not, to make false statements about Cain. Quill affirmatively alleges Cain cannot in good faith make the allegations in paragraph 62 of the Counterclaim, as there is no avenue by which Cain would have any information to reach her alleged conclusions.

63. Quill denies the allegations set forth in paragraph 63 of the Counterclaim. Quill further denies any implication in paragraph 63 of the Counterclaim that Quill has directed others,

whether acting as agents on behalf of Quill or not, to campaign against Cain to harm her reputation or to thwart sales of her work. Quill affirmatively alleges that the Oklahoma Lawsuit was filed in response to the damage caused by Cain's involvement in filing false DMCA take-down notices against Quill's books and for no other purpose. Quill further affirmatively alleges Cain cannot in good faith make the allegations in paragraph 63 of the Counterclaim, as there is no avenue by which Cain would have any information to reach her alleged conclusions.

64. Quill denies that Quill has campaigned against Cain, and further denies any implication in paragraph 64 of the Counterclaim that Quill has directed others, whether acting as agents on behalf of Quill or not, to campaign against Cain. Quill does not have sufficient information or knowledge to form a belief as to the remaining allegations set forth in paragraph 64 of the Counterclaim, and therefore denies the same.

65. Based upon information and belief, Quill admits the allegations set forth in paragraph 65 of the Counterclaim.

66. Quill admits that Gideon Lincecum, as counsel for Quill, and Coale, as corporate counsel for Quill, sent a letter to GoFundMe requesting the page for Cain, which falsely states Quill has filed "nuisance lawsuits," be removed. The Oklahoma Lawsuit has been resolved, and a Judgment from Blushing Books stating that no plagiarism occurred was accepted by Quill, and an Enter Order was subsequently entered. See *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla. filed Sept. 18, 2018) (Dkt. 89, Def.'s Offer of J.; Dkt. 90, Pl.'s Acceptance of Def.'s Offer of J.; Dkt. 92, Enter Order). While Quill admits the defamation claims in the Virginia lawsuit have been dismissed as being brought by Quill on behalf of Zoey Ellis, the maintenance of the GoFundMe page, which claims falsely that Cain's

work has been plagiarized, overtly contradicts the Oklahoma Judgment and Enter Order. Quill avers that the letter sent to GoFundMe speaks for itself and no response is required. To the extent not admitted herein, Quill denies the remaining allegations set forth in paragraph 66 of the Counterclaim.

67. Paragraph 67 of the Counterclaim does not contain a factual assertion to which a response is required. To the extent a response is required, Quill denies the allegations set forth in paragraph 67 of the Counterclaim, and incorporates by reference all admissions, denials and affirmative allegations from the preceding paragraphs as if fully adopted and restated herein.

68. Quill does not have sufficient information or knowledge to form a belief as to the allegations set forth in paragraph 68 of the Counterclaim, and therefore denies the same.

69. Quill denies the allegations set forth in paragraph 69 of the Counterclaim. Quill further denies any implication in paragraph 69 of the Counterclaim that Quill has directed others, whether acting as agents on behalf of Quill or not, to make false reports to vendors or disparage Cain and her works in attempts to prevent her from selling her works, or otherwise harm her.

70. Quill denies the allegations set forth in paragraph 70 of the Counterclaim. Quill further denies any implication in paragraph 70 of the Counterclaim that Quill has directed others, whether acting as agents on behalf of Quill or not, to take intentional or malicious actions against Cain.

71. Quill denies the allegations set forth in paragraph 71 of the Counterclaim. Quill further denies any implication in paragraph 71 of the Counterclaim that others, whether acting as

agents on behalf of Quill or not, were directed by Quill to cause harm to Cain or the sale of her works.

72.   Quill denies that Cain is entitled to any of the relief sought under paragraphs 1 through 3 of the "Prayer for Relief" on page 37 of the Counterclaim.

## PLAINTIFF'S AFFIRMATIVE DEFENSES

Quill asserts the following affirmative defenses, while reserving the ability to assert any additional affirmative defenses as may be appropriate:

1.   Cain's counterclaim fails to state a claim against Quill upon which relief can be granted.

2.   Cain's counterclaim is barred, in whole or in part, by the statute of limitations.

3.   Cain's counterclaim may be barred, in whole or in part, by the doctrines of waiver, bad faith, estoppel, consent, and laches.

4.   Cain's damages, if any, were occasioned by her own fraud with respect to her knowing and intentional conduct in directing the filing of false DMCA take-down notices against Quill's publications.

5.   Cain's damages, if any, were occasioned by the illegality of her actions in conspiring with Blushing Books and others to file false DMCA take-down notices against Quill's publications.

6.   Cain has not suffered any damage or harm associated with any of the conduct asserted herein.

7.   Cain's damages, if any, have been caused by the acts or omissions of third parties over which Quill has no control.

8. Cain's claims are barred, in whole or in part, under the doctrine of unclean hands.

9. No act, breach, or omission of Quill either proximately caused or contributed to Cain's damages, if any, that were allegedly sustained by Cain.

10. Any communication by Quill regarding the filing of false DMCA take-down notices by Cain and Blushing Books was privileged and justified.

11. Cain's unsubstantiated damage claim is barred because of her own failure to mitigate any such losses occasioned by her own conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Counterclaim Defendant, Quill Ink Books Limited, prays for the following relief:

1. That the Court grant judgment against Cain, and in favor of Quill Ink Books, with respect to the Counterclaim;

2. Award Quill Ink Books its attorney fees and costs incurred in responding to the Counterclaim; and

3. Award such other and further relief which the Court deems just and equitable.

December 3, 2019	Respectfully submitted,

**QUILL INK BOOKS LIMITED**

By:	/s/ John M. Bredehoft
John M. Bredehoft
Virginia State Bar No. 33602
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
757-624-3000
757-624-3225 (direct)
888-360-9092 (facsimile)
jmbredehoft@kaufcan.com
*Counsel for Plaintiff/Counter-Defendant*
*Quill Ink Books Limited*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

/s/ John M. Bredehoft