UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| QUILL INK BOOKS LIMITED,<br>*Plaintiff*, | ) ) ) ) | |
| v. | ) ) | No. 1:19cv476-LO-MSN |
| RACHELLE SOTO *aka* Addison Cain,<br>*Defendant*. | ) ) ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL**

Defendant, Rachelle Soto a/k/a Addison Cain ("Soto"), has moved to compel Plaintiff, Quill Ink Books Ltd. ("Quill"), to answer interrogatories, produce documents, and to serve a privilege log. As shown herein, Quill has embraced fictions and defiantly disregarded the facts and its discovery obligations. The motion to compel should be granted and fees and costs awarded.

***Interrogatory Answers:*** There are three principal problems with Quill's interrogatory answers:

First, Quill refuses to identify a central witness, its "principal author" who writes under the penname "Zoey Ellis," claiming that her identity is "irrelevant" and that she would be harmed by disclosure of her actual identity. Soto has offered to treat her identity as "highly confidential" during discovery, but Quill still refuses to identify her, thwarting Soto's efforts to depose her. Quill should be required to identify "Zoe Ellis."

Second, Quill has a adopted blind man's bluff tactics when identifying potential witnesses—Quill identifies over 70 potential witnesses, most of whom it fails to fully identify and to whom it plainly has not spoken to ascertain if they have relevant knowledge, and for whom Quill ascribes the same generically and vaguely described knowledge. Most of these are marginal

1

witnesses, at best, but have been named, in bad faith, to obscure the identities of the important witnesses.  Moreover, despite having named 70 potential witnesses, Quill does identify Zuri Thompson—the founder, Director, and sole owner of Quill—as a witness.  That omission is a transparent tactic to try to shield Ms. Thompson from a discovery deposition.  The Court should order Quill to amend its answer to eliminate unnecessary individuals, to identify persons with important, relevant knowledge, and to individually describe the knowledge each has.

Third, Quill also resorted to Rule 33(d) when answering numerous interrogatories (Nos. 3, 4, 8, 9, 11, 12, 13, 14, 15 & 18), yet failed to specify by discovery-number the documents that supposedly contain the information sought by each interrogatory.  In most cases, in fact, it appears that no documents were produced containing the requested information.  Quill should be compelled to provide proper answers and provide the referenced documents to the extent they have not been produced.

*Document Requests:*  There also are three principal problems with Quill's document production:

First, as permitted by Rule 34(b)(1)(C), Soto specified that ESI should be produced in a standard, searchable format, with metadata—*i.e.*, TIFF format with Concordance load files.  Quill did not object or propose another format as required under Rule 34(b)(2)(D).  Nonetheless, Quill did not produce documents in the requested format.  Instead, Quill produced about 5,000 pages of ESI in four large PDF compilations without any organization whatsoever—neither as the ESI is "kept in the usual course of business," nor labeled to correspond to Soto's "the categories in the request" as specified in Rule 34(b)(2)(E)(i).  Indeed, some pages are illegible or unintelligible.  Quill should be ordered to re-produce these documents in the requested ESI format or organized to correspond to the "the categories in [Soto's] request."

Second, Quill unilaterally redacted information from responsive documents. Such redactions are not permitted generally, but here the redactions are egregious. Apparently, Quill redacted the name of the person at Quill who supposedly sent or received information at the heart of its claim. Quill should be ordered to produce unredacted documents.

Third, Quill has not produced any written or email communications between itself and "Zoey Ellis," and contends that none exist. Given that "Zoey Ellis" supposedly is Quill's "principal author," that Quill's claim is based on allegedly "fraudulent" take-down notices concerning "Zoey Ellis'" books, and that Quill's injury is the supposed the lost sales of "Zoey Ellis'" books, Quill's bald assertion that "there are no such documents or communications between Quill and Zoey Ellis" appears implausible. Quill should be ordered to produce these documents or explain the absence of them.

***Privilege Log:*** Quill repeatedly claims that relevant and responsive documents are not being produced because they are privileged—including numerous documents concerning Margarita Coale, who is a fact witness and a participant in several of the underlying acts alleged by each side. Ms. Coale is a solo practitioner, licensed to practice law in Texas, who claims to be Quill's "corporate counsel." Yet, Quill contends that she is not an officer or employee of Quill. Even if Ms. Coale is a lawyer and is Quill' "corporate counsel," that does not cloak her with complete immunity from civil discovery. Quill, however, refuses to withdraw its privilege objections or to explain how Ms. Coale is Quill's "corporate counsel," but is not an officer or employee. Given Ms. Coale's central role in several events underlying the claims and counterclaims, Quill must serve a privilege log that will enable Soto to test Quill's blanket assertion of privilege. Quill's log is already overdue under the provisions of the parties' discovery plan.

Accordingly, Soto's motion to compel should be granted. In addition, given that Quill's objections and contentions are not substantially justified, the Court should sanction Quill and order that it pay Soto's fees and expenses incurred because of Quill's intransigence.

## STATEMENT OF THE CASE

***The Oklahoma Action:*** This action is linked to a nearly identical action previously filed in Oklahoma. In September 2018, Quill and "a promising new author," described as "an individual" "residing in London, England," who wrote under the pseudonym "Zoey Ellis," filed suit against Soto (who also is an author) and her publisher, ABCD Graphics and Design Inc. d/b/a Blushing Books Publishing ("Blushing Books"). *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla., filed Sept. 18, 2018) (Doc. 1, *Complaint*). Soto and "Zoey Ellis" both write "dark romance" novels that are published online. Quill and "Zoey Ellis" claimed that acts and statements by Soto had disrupted sales of "Zoey Ellis'" books.

When the Oklahoma federal court ruled that "Zoey Ellis" could not sue pseudonymously, however, she was simply dropped as a plaintiff. *Id.* (Doc. 6, *Amended Complaint*, filed Oct. 17, 2018). In February 2019, Soto, a Virginia resident, was dismissed from the Oklahoma Action for lack of personal jurisdiction. *Id.* (Doc. 31, *Order*, filed Feb. 3, 2019).

Quill, unable to prove any damages, later settled with Blushing Books in what appears to be a collusive settlement based on an accepted Rule 68 offer of judgment drafted by Quill: In exchange for dismissal of Quill's claims, Blushing Books offered to "admit" that Quill's books "[do] not plagiarize" Soto's works; Quill accepted that offer of judgment and no money changed hands. *Id.* (Doc. 89, 90 & 91) (Exhibit E). Quill now contends that it cannot disclose details about how that settlement was negotiated because of a putative confidentiality order entered in Oklahoma. No such order can be found in that judicial record.

4

While the Oklahoma action was pending, Quill served a deposition and document subpoena on Soto in Virginia, ostensibly to obtain documents and to take her deposition for use in the Oklahoma action. *Id*. (Doc. 33, *Notice of Subpoena*, filed Feb. 25, 2019). Instead, Quill was merely using the subpoena to obtain documents and testimony that it then used to draft this lawsuit against Soto.

Quill also filed a miscellaneous action in this District to compel Soto to provide more documents and information under the Oklahoma subpoena. *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al*., No. 1:19-mc-00013 (E.D. Va., filed July 25, 2019) (Doc. 1, *Motion to Compel*). Soto opposed that motion, which was denied. *Id*. (Doc. 16, *Order*, filed Aug. 16, 2019). When denying Quill's motion to compel, the Court found that the discovery processes in Oklahoma were being "intentional[ly] misuse[d]":

> I find that the protective order agreed to by counsel during the depositions was appropriate, ***especially in light of what the Court can only conclude was the intentional misuse of discovery materials by Quill Books or the former plaintiff, Zoey Ellis***. It is unclear how those things were posted, but they were clearly used outside of the context of the litigation in order to have an impact – a negative impact on perceived competitors, and the Court can only conclude that the effort to gather this information would be used if permitted for that purpose.

*Id*. (Doc. 17, *Transcript* at 20:25 – 21:10) (emphasis added). But, as shown herein, Quill was not yet through intentionally misusing discovery.

***The Virginia Action:*** After taking Soto's deposition in March 2019, Quill filed this action against Soto on April 18, 2019 (Doc. 1). After the Court dismissed several counts of the initial complaint on Soto's motion (Doc. 24), Quill filed its *First Amended Complaint* (Doc. 27). Soto filed a motion to dismiss the newly pleaded counts of the *First Amended Complaint* (Doc. 28). That motion was granted (Doc. 35). Quill's only surviving claim is a statutory action under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(f), which is Count I of Quill's amended pleading.

Under Count I, Quill contends that Soto and her publisher, Blushing Books, lodged "fraudulent" DMCA notices against three of Quill's books, all authored by "Zoey Ellis." Quill contends that the disruption of the sales of those books constitute injury to Quill compensable under the DMCA—the same damages that Quill was unable to prove in the Oklahoma action.

Soto answered Quill's amended pleading, denying liability, and asserted a counterclaim (Doc. 36). Essentially, Soto claims that Quill and its supporters, including Ms. Coale, are on a vendetta to ruin Soto's reputation and disrupt her book sales.

***Discovery Activities to Date:*** After the Court entered its initial order on January 17, 2020 (Doc. 38), the parties met and conferred and filed a joint discovery plan (Doc. 39) that was adopted by the Court (Doc. 42), and they filed a proposed stipulated protective order that the Court entered (Doc. 41). The protective order allows a party to designate discovery materials and information as "highly confidential," and imposes strict use and disclosure limitations on such information.

On January 22, 2020, Soto served discovery requests on Quill (Exhibit A). Quill served specious, boilerplate objections to every request (Exhibit B), which it later withdrew. On February 28, 2020, Quill served answers and responses (Exhibit C) and made its production of documents. For the past four weeks, Soto has made numerous written requests, by letter and email, that Quill cure the defects in its discovery responses. Quill has failed or refused to do so.

***The Role of Ms. Coale:*** In support of her counterclaim, Soto alleged, *inter alia*, that Quill, through Ms. Coale and others, took certain actions that caused Soto's injury (*Id.*, *Counterclaim* ¶¶ 15-37; 51; 55-63; and 66). This included Ms. Coale's involvement in creating the website where Quill posted papers from the Oklahoma action that the Court has already found was an "intentional misuse" of the Oklahoma discovery processes (*Id.*, *Counterclaim* ¶ 51). Quill admits, as it must, that it created and operated that website, and does not deny Ms. Coale's involvement

6

(Doc. 52, *Reply to Counterclaim* ¶ 51) ("Quill admits it created and maintains the Omegaverse Litigation Website containing information and resources regarding DMCA abuse and featuring pertinent information concerning the Oklahoma litigation …").  Ms. Coale was not counsel of record in the Oklahoma action nor were many of her actions taken in her role as a lawyer. Obviously, then, not all of Ms. Coale's actions or communications were in her capacity as a lawyer for Quill or anyone else, and others are tortious and not privileged even if she had been acting as a lawyer.

**The Role of Zuri Thompson:**  As revealed in public filings in England, on June 27, 2016, Zuri Thompson, as the sole Director, incorporated Quill.[1]  Quill issued a single share and filed a notice that Zuri Thompson had "significant control" of Quill because she owned "75% or more" of Quill's shares.  Since Quill had issued only one share, Zuri Thompson is the sole owner of Quill.

Until September 2018, in fact, Zuri Thompson was the sole Director and sole owner of Quill—and apparently its sole employee.  So, during nearly the entire course of events at issue in this action, Zuri Thompson was the **only individual at Quill with any knowledge**.  Yet, Zuri Thompson is not listed as an individual with knowledge in either Quill's initial disclosure or its interrogatory answers.

Instead, Quill lists dozens of other individuals who purportedly have knowledge, including the fictional persona "Zoey Ellis" (Exhibit C, Answer to Interrogatory No. 2).  Nonetheless, Quill strenuously asserts that the actual identity of "Zoey Ellis" and her relationship to Quill are "irrelevant" (*Id.*, Answer to Interrogatory No. 5).  Moreover, Zuri Thompson signed Quill's interrogatory answers "under penalty of perjury under the laws of the United States of America," as "true and correct to the best of [her] knowledge, recollection, information and/or belief."  Yet,

---

[1]  *See* https://beta.companieshouse.gov.uk/company/10252366.

there is no mention of Zuri Thompson in Quill's interrogatory answers or its corresponding document production.  That omission cannot be innocently explained.

## ARGUMENT

### INTRODUCTION

It requires no lengthy discussion of the rules to expose that Quill has simply thumbed its nose at the discovery procedures—just as it had in the Oklahoma action.  Under the rules, Soto may seek discovery of relevant information that bears on the claims, defenses, and damages pleaded in the action.  FED. R. CIV. P. 26(b)(1).  Yet, Quill wants to set its own narrow parameters on relevance.

The rules specify that counsel's and Ms. Thompson's signatures on Quill's responses certify that Quill's discovery responses are "complete and correct."  FED. R. CIV. P. 26(g)(1)(A).  As shown herein, however, those certifications are false.

Moreover, Quill's objections must be "consistent with the rules and warranted by existing law or by a nonfrivolous for extending, modifying, or reversing existing law, or for establishment of new law."  FED. R. CIV. P. 26(g)(1)(B)(i).  However, Quill's objections have no basis in the law and state no reasons to extend or modify the law to protect the information Quill refuses to disclose.

Simply put, Quill has refused to provide relevant discovery, has asserted baseless objections, and has utterly failed to comply with the rules.

Indeed, Quill has exalted fiction over fact and utterly failed to fulfill its obligations to respond to discovery in good faith:  For example, "Zoey Ellis"—a fictional persona who Quill refuses to identify—is disclosed as a fact witness, but Zuri Thompson—Quill's sole owner, Director, and founder—is not.  It does not stop there.  Quill attempts to rely on Rule 33(d) but does not specify the relevant documents in its production—and in most instances, it has not produced

8

any documents that would even satisfy Rule 33(d).  Further, Quill has repeatedly claimed privilege over communications with Ms. Coale, but has not served a privilege log.  Ms. Coale is a fact witness and participant in allegedly tortious acts who happens to be a lawyer.  She does not enjoy complete immunity from civil discovery.

Furthermore, Quill's document production is next to useless—disorganized, improperly formatted, and not reasonably usable.  On top of that Quill unilaterally redacted information from those documents on grounds other than privilege.  In fact, it appears that Quill has redacted Zuri Thompson's name from the documents it produced, perhaps in a vain and disingenuous effort to bolster its argument that Ms. Thompson should not be deposed (which will be the subject of another motion).

In short, as it did in Oklahoma, Quill has treated discovery as a game, not a legal process. The Court should compel production of full information and documents and award Soto her costs and fees caused by Quill's refusal to comply with the rules.

## I.     "ZOEY ELLIS" SHOULD BE IDENTIFIED.

In its interrogatory answers, Quill identified "Zoey Ellis" as a person with knowledge of the facts (Exhibit C, Answer to Interrogatory No. 2).  Yet, when asked for her actual identity so she could be deposed, Quill objected as follows: "Quill states that Zoey Ellis is a pseudonym used by its principal author.  The identity of Zoey Ellis, her address, other pseudonyms used, and her relationship with Quill will not be disclosed as such information is irrelevant to the Defendant's claims, as previously held by the Court in its second motion to dismiss ruling." (*Id*., Answer to Interrogatory No. 5.)  That objection is wholly without merit.

First, Judge O'Grady ruled that alleged defamatory statements directed at "Zoey Ellis" were personal and not actionable by her publisher, Quill.  He did not rule that her identity was "irrelevant."

Second, "Zoey Ellis'" identity is not privileged and cannot be withheld merely because Quill makes the bald assertion that it is "irrelevant."  Even so, to facilitate discovery, Soto agrees to treat her identity during discovery as "highly confidential" under the protective order.

Third, the Oklahoma court already ruled that "Zoey Ellis'" identity does not warrant a protective order.  *Quill Ink Books Limited, et al. v. ABCD Graphics and Design Inc., et al.*, No. CIV-18-920-G (W.D. Okla., filed Oct. 11, 2018) (Doc. 5, *Order*) (alleged injury to "reputation, current employment, and works published outside of the romance genre … do not demonstrate the 'exceptional circumstances' that outweigh the public's interest in open and transparent judicial proceedings").  Nonetheless, Soto will treat "Zoe Ellis'" identity as "highly confidential" during discovery.  Thus, Quill should be ordered to answer Interrogatory No. 5 forthwith.

## II.   THE FAILURE TO IDENTIFY ZURI THOMPSON IS A BAD FAITH OMMISSION AND NAMING OVER 70 WITNESSES IS A BAD FAITH ANSWER INTERPOSED FOR AN IMPROPER PURPOSE.

Quill's identification of 70 witnesses cannot be taken seriously (Exhibit C, Answer to Interrogatory No. 2).  Over 30 witnesses supposedly have the same vaguely described knowledge: "Knowledge about the claims, issues and defenses in Plaintiff's Amended Complaint, Defendant's Answer, and Defendant's Counterclaim and Plaintiff's responses thereto."  Quill's motives are transparent:  It is burying the names of a handful of important witnesses among over 70 names in a tactical effort to impede Soto's use of her five non-party depositions by making Soto guess which ones are important or will be called by Quill at trial.

Federal litigation is not a game.  As the Supreme Court explained over 70 years ago: "[C]ivil trials in the federal courts no longer need be carried on in the dark.  The way is now clear,

consistent with recognized privileges, for parties [to use discovery rules] to obtain the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). The discovery rules "ensure proper litigation" (*id.* at 507) by making the "trial less a game of blind man's bluff and more a fair contest with the basic facts and issues disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Quill's response to Interrogatory No. 2 is a throw-back to the days before the discovery rules, when hide-the-ball was considered "clever lawyering."

Moreover, despite having identified over 70 individuals who purportedly have knowledge of the facts at issue, Quill did not identify its founder, director, sole owner, and only employee, Ms. Thompson. That omission, likewise, is tactical and designed to set up an argument that Ms. Thompson need not be deposed.[2]

The Court should order Quill to serve an amended answer to Interrogatory No. 2 that pares down the list of individuals and gives meaningful, individualized descriptions of their knowledge.

### III.    QUILL HAS NOT PROPERLY RELIED ON RULE 33(d).

Quill repeatedly, but improperly, invoked Rule 33(d) in its responses (Exhibit C, Answers to Interrogatory Nos. 3, 4, 8, 9, 11, 12, 13, 14, 15 & 18). In each instance, however, Quill merely states, "Subject to the previously-filed objections, the information responsive to this request is

---

[2]  Quill contends that Ms. Thompson should not be deposed as an individual witness. Instead, Quill contends that Soto should take a Rule 30(b)(6) deposition of Quill in which Quill designates the witness. Quill tried that specious tactic in Oklahoma, too, contending that its omnibus expert witness, Prof. Kristina Busse (who apparently studies "fan fiction"), would be its designee—even though she knew absolutely no facts first-hand, was not an employee of Quill, and had been retained as an expert witness. Compelling the deposition of Zuri Thompson, however, will have to await another motion should Quill persist in its specious contentions. At present, Soto asks the Court to redress Quill's deficient written discovery responses.

contained in confidential business records maintained by Quill, which are being provided pursuant

to Fed. R. Civ. P. 33(d)."  That response is insufficient.

Under Rule 33(d), the responding party has the "option to produce business records" only

in certain circumstances:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
>> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>>
>> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

FED. R. CIV. P. 33(d).  Quill fails to follow these directives.

As interpreted and applied by Courts in this District,

> A party relying on a Rule 33(d) business record production to answer interrogatories must (1) affirm that the information sought by the interrogatory in fact is available in the specified records, (2) be able to demonstrate that answering the interrogatory in the traditional manner would impose a burden on it, (3) establish that the burden of compiling information is substantially the same for the inquiring and responding parties, and (4) specify which records contain the information sought by the interrogatory.

*Christian Coal. Int'l v. U.S.*, No. 2:01cv377; 2002 U.S. Dist. LEXIS 11427, *7-8; 2002 WL

1482523 (E.D. Va. May 31, 2002) (citation omitted); *accord Acosta v. Med. Staffing of America,*

*LLC*, No. 2:18cv226; 2019 U.S. Dist. LEXIS 206674 *; 2019 WL 6122016 (E.D. Va. Mar. 15,

2019) (Rule 33(d) "does not permit a party to answer discovery requests by referring to the party's

entire document production, but requires the producing party to 'specify[]' the documents in the

production that are responsive to each interrogatory").  Here, Quill's principal failing is in not

specifying the documents that contain the responsive information.

Moreover, Quill is misusing Rule 33(d) in other ways.  First, Quill is improperly using that provision to avoid giving narrative answers to questions it prefers not to answer, which is egregious given that it has dumped a large, unindexed mass of documents on Soto.  *See Saleh v. Moore*, 95 F. Supp. 2d 555, 561 (E.D. Va. 2000) ("Defendants inappropriately invoked the option to produce business records under [Rule 33(d)] by failing to make an adequate specification as required by the rule, by using it to avoid answering hard questions, and by dumping large volumes of unindexed documents on the Plaintiffs").  Furthermore, at times, Quill has not pointed to "business records," which the rules permit, but at other categories of documents, which is improper.

Soto further explains the problems for each interrogatory for which Quill purported to invoke Rule 33(d):

*Interrogatory No. 3:*   Soto asked for the identity of any employees, officers and shareholders of Quill.  Quill pointed to its corporate organization documents stored online by the English government, which provide some pertinent information but do not identify employees.  Moreover, it is not clear if Quill has any other corporate documents containing this information that are not found online.  Quill should either answer this interrogatory in narrative form or produce additional documents that are fully responsive.

*Interrogatory No. 4:*  Soto asked Quill to produce information about all its book sales and its alleged lost sales.  Quill has produced some business records that Soto assumes provide some of the requested information for books authored by "Zoey Ellis," but not for any other authors.  However, Quill has alleged that its "sales" were disrupted generally by the DMCA notices, suggesting that other books published by Quill were affected (Doc. 27, *First Amended Complaint*, ¶ 75 ["Other vendors have indicated that they cannot proceed with planned sales of Quill's books while there is a pending claim Quill is a plagiarist."] & ¶ 76 ["Cain's take-down notices violated

the Copyright Act, intentionally and maliciously damaged Quill's reputation and resulted in financial losses, including, but not limited to, prerelease and ordinary book sales throughout the United States and internationally."]).  If there are other books, Quill must disclose the requested information; if only "Zoey Ellis'" books are at issue, Quill should say so.

**Interrogatory Nos. 8 and 9:**  These interrogatories request all communications between Quill and any actual or potential vendor related to "Zoey Ellis'" books or any DMCA notice or counter-notice, as well as any communications about other Quill publications, future Quill publications, or those vendors' alleged refusal to deal with Quill until the DMCA issues were resolved (*e.g.*, Doc. 27, *First Amended Complaint*, ¶¶ 56, 70 & 75).  The only vendor communications Soto could find in Quill's document dump were ones concerning the DMCA notices.  Unless Quill is falsely claiming that vendors have refused to deal with it, there should be documents, communications, and emails substantiating those allegations.  Those documents should be produced and these interrogatory answers should be supplemented to identify specific vendors and the adverse actions they purportedly took.

Furthermore, in answer to Interrogatory Nos. 8, 13 & 14, Quill purportedly "recalls" what appear to be oral communications with a "cover artist" and a "voice talent" who now refuse to deal with Quill.  There are two problems with that response: (i) Quill does not name either individual, so that Soto cannot contact them (nor do they appear among the 70 potential witnesses), and (ii) a corporate entity cannot "recall" oral communications, only a natural person can, but Quill fails to identify who at Quill had those conversations.  A more complete narrative answer is required for Nos. 8 (as well as Nos. 13 and 14, as explained below).

**Interrogatory No. 11:**  Soto requested Quill's communications with its "readers"—that is, the selected individuals who read advance copies of Quill's online books and provide feedback.

14

Although purporting to rely on Rule 33(d), apparently no such documents were produced.  Quill should specify the documents by discovery-number if they have been produced, produce them if they have not been produced, or state that it has no such documents exist if it has none.  Quill is not permitted to send Soto on a "snark hunt" through its production seeking documents that are not there.

*Interrogatory No. 12:*  This interrogatory seeks information about Quill's lost sales by book and by vendor.  The only relevant business records produced were Quill's general sales records, showing units sold and revenues by month for each of "Zoey Ellis'" books.  One cannot tell if any sales were "lost" or which vendors accounted for which units sold.  This is important because Quill's major vendor, Amazon, did not discontinue sales of "Zoey Ellis'" books even after receiving a DMCA notice.

There is, in fact, no discernable reduction in sales during the three-month period when the DMCA notices were active in 2018, revealing that only minor vendors, each selling a handful of books per month, might have halted sales, while Amazon, which distributed most of Quill's books, went on selling them without interruption.  Quill should be ordered to supply these missing relevant facts because the magnitude of Quill's alleged damages resulting from the interruption of its sales of just three books during that three-month period (Exhibit C, Answer to Interrogatory No. 17) *far exceed* its total revenues for all books sold during its entire four-year existence.

In its answer to Interrogatory Nos. 12 and 17, Quill also purports to rely on an as-yet undisclosed "expert" opinion concerning Quill's damages.  That is no answer.  Quill must immediately disclose *the facts* on which its damages are based, and Soto need not wait until Quill serves an expert disclosure to learn them.  Quill should be ordered to provide the factual bases of its alleged damages immediately.

***Interrogatory Nos. 13 & 14:*** These interrogatories seek information and communications concerning the "business partners" and "vendors" who supposedly refused to deal with Quill, or who otherwise took actions adverse to Quill allegedly because of the DMCA notices. Soto could find no such documents in Quill's production. Also, as noted above regarding Interrogatory No. 8, Quill has not provided relevant information about supposed oral communications, either. Full answers should be required.

***Interrogatory No. 15:*** Soto seeks information about the alleged online harassment supposedly visited upon Quill as a result of Soto's conduct (Doc. 27, *First Amended Complaint* ¶ 77). Rather than answer this hard question, Quill invokes Rule 33(d). That is an improper response for two reasons. First, Quill has produced no such documents. Second, Rule 33(d) only permits the responding party to rely on "business records," not other categories of documents. *U.S. ex rel. Lands v. Tailwind Sports Corp.*, 317 F.R.D. 592, 595 (D.D.C. 2016). Facebook postings, tweets, blogs, "book reviews," and other online content created by third parties and posted on the Internet are not Quill's "business records" and cannot be relied on under Rule 33(d) in any event. Quill must provide a fulsome narrative answer to this interrogatory as well as identify and produce the relevant documents that form the basis of Quills allegations of online harassment.

***Interrogatory No. 18:*** Soto seeks Quill's communications with Blushing Books, including the communications concerning their obviously collusive settlement of the Oklahoma action. Quill cites Rule 33(d)(1) but produced no such documents. A narrative answer or relevant documents should be provided immediately.

In addition, Quill invokes a purported oral ruling that the Quill-Blushing Book settlement negotiations be kept confidential, but no such order appears in the judicial record or minute entries

of that action.  If Quill relies on an oral ruling, it should provide a transcript or other judicial record detailing that order.

For all the reasons argued above, Quill should be ordered to serve amended and supplemented interrogatory answers and produce any missing responsive documents.

## IV.  QUILL SHOULD RE-PRODUCE ITS DOCUMENTS IN THE FORMAT REQUESTED.

As permitted, Soto specified in Instruction No. 7 that ESI should be produced as single-page TIFF files with Concordance load files.  FED. R. CIV. P. 34(b)(1)(C).  That is a standard, searchable format, with metadata, that is routinely used in federal litigation.  Quill did not object to that format or propose another format as it must do under Rule 34(b)(2)(D) to preserve its option to make a production in another format.  Nonetheless, Quill did not produce documents in the requested format—or in any other manner allowed under the rules.  Instead, Quill produced about 5,000 pages of ESI in four large PDF compilations without metadata.  Moreover, some pages are illegible, unintelligible, and unsearchable.

The production has no structural organization, either.  Quill did not produce this ESI as it is "kept in the usual course of business," nor has Quill labeled the production to correspond to "the categories in [Soto's] request," which are organizational structures permitted by Rule 34(b)(2)(E)(i) when the ESI is not produced in a "reasonably usable" electronic format.

To be sure, in certain circumstances, a PDF production may be a "reasonably usable" format, but it depends on the nature and volume of documents produced.  Here, Quill has produced some of its own documents (like business emails, which are PST or MSG files that have been converted to PDF files), which should be word-searchable and usable; however, many other documents originally came from other sources (pages-long email strings or Facebook posts and "likes") and are neither organized or easily searchable.  And without metadata, the completeness

and authenticity of these documents cannot be verified by the receiving party, Soto. Moreover, in a PDF production, there are only two-search techniques available: page-by-page inspection or word-searching. Word-searching Quill's production is laborious and unproductive, like hunt-and-peck typing by a ham-fisted novice on a rusty manual typewriter.

Finally, the lack of structural organization is maddening—for example, Quill's corporate documents are interspersed with Facebook posts created by third parties. It is as if Quill shuffled the documents before compiling the four composite PDF files.

Soto requested a database-loadable ESI production, with metadata, to ensure completeness, authenticity, and searchability of Quill's document production. Quill ignored that request and produced something that is little better than a "warehouse production" of thousands of pieces of paper that have been shuffled before production. Quill should be ordered to re-produce these documents either in the requested ESI format or organized by the categories in Soto's request.

## V. QUILL HAS IMPROPERLY REDACTED NON-PRIVILEGED INFORMATION FROM RELEVANT DOCUMENTS.

Quill unilaterally redacted the name of email senders and recipients in Quill's communications—including documents at the heart of Quill's own claim (*e.g.*, Exhibit D, QUILL 004496 & QUILL 004497). Generally, redacting responsive documents for anything other than privileged information (which then must be logged) is improper—particularly when a protective order has already been entered in the action. *E.g.*, *Medtronic Sofamor Danek v. Michelson*, No. 01-2373-GV, 2002 U.S. Dist. LEXIS 27981, *17-20 (W.D. Tenn. Jan. 30, 2002).[3] Yet, Quill did that repeatedly.

---

[3] *Accord, e.g., David v. Alphin*, No. 3:07cv11, 2010 U.S. Dist. LEXIS 144275, *21-24; 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010) (barring "unilateral redactions" in light of blanket protective order, requiring responding party to produce unredacted copies); *Bartholomew v. Avalon Capital Group, Inc.*, 248 F.R.D. 441, 451-52 (D. Minn. 2011); *Evon v. Law Offices of Sidney Mickell*, No. CIV. NO. S-09-0760 JAM GGH, 2010 U.S. Dist. LEXIS 20666, n.1; 2010 WL 455476, n.1 (E.D.

Although Quill has refused to confirm or deny it, it appears that Quill has redacted **Zuri Thompson's name** from these documents—plainly, whether Ms. Thompson sent or received an email or other document is relevant. No matter whose name has been redacted, however, Quill's decision to make these redactions is insupportable. Quill should be ordered to re-produce unredacted documents.

## VI. THE COURT SHOULD ORDER QUILL TO SERVE A PRIVILEGE LOG FORTHWITH.

Rule 26(b)(5) requires that a party withholding documents must serve a privilege-log, but that rule does not state when a privilege log is due. However, Rule 26(f)(3)(D) states that the parties' discovery plan should address "any issues about claims of privilege or of protection as trial-preparation materials, including if the parties agree on a procedure to assert these claims after production." Here, Quill and Soto included the timing of the privilege logs in their Rule 26(f) discussions and their *Joint Discovery Plan* (Doc. 39). Therein, they agreed that "that they will produce privilege logs as soon as practicable after they have completed their production of documents" (*Id.*, ¶ 11). Quill made is document production on February 28, 2020—a month ago. Quill should be ordered to serve its privilege log forthwith. Quill asserted privilege repeatedly in its responses. It cannot be doubted that Soto will need time to analyze Quill's log and to move to compel production of documents that should not have been withheld.

## VII. THE COURT SHOULD AWARD FEES AND COSTS.

The Rules authorize the Court to award fees and expenses incurred by the movant when a motion to compel has been granted: "If the motion is granted — or if the disclosure or requested

---

Cal. Feb. 3, 2010); *In re FedEx Ground Pkg. Sys., Inc.*, No. 3:05-MD-527 RM (MDL-1700), 2007 U.S. Dist. LEXIS 1865, *14-15; 2007 WL 79312, *5 (N.D. Ind. Jan. 5, 2007); *see also Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461, 2019 U.S. Dist. LEXIS 228367; 2019 WL 8107922 (E.D. Va. May 28, 2019) (non-party law firm responding to Rule 45 subpoena not permitted to redact client confidences because protective order is adequate).

discovery is provided after the motion was filed — ***the court must***, after giving an ***opportunity to be heard***, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED.R.CIV.P. 37(a)(5) (emphasis added).  However, the Court may decline to award fees and costs if either "(i)  the  movant  filed  the  motion  before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's  nondisclosure,  response,  or  objection  was  ***substantially  justified***;  or  (iii)  other circumstances make an award of expenses ***unjust***."  *Id.* (emphasis added).  Generally, under Rule 37,  an  award  of  fees  is  mandatory  "***unless***"  the  nonmoving  party  proves  that  his noncompliance was justified.  *See* ADV. COM. NOTES, 48 F.R.D. 487, 539 (1970).  No exception applies here.

Soto repeatedly met-and-conferred with Quill:  After the objections were served the parties conferred and the objections were withdrawn.  And again after the responses were served, Soto sent letters on March 10, March 15, and other emails, all seeking Quill's compliance.  Quill simply did nothing.  Nor are Quill's positions "substantially justified"—just the opposite, Quill has no legal or factual bases for its positions.[4]  Finally, awarding fees and costs is not "unjust"—rather, it is necessary.  Quill has "intentionally misused" discovery before, and appears intent on abusing the discovery process again now.  Imposing sanctions is warranted.

Soto estimates that its local counsel spent more than ten hours preparing this motion and will spend even more time presenting oral argument if there is a hearing.  However, Soto will limit its requests to ten hours.  Soto seeks compensation at its local counsel's usual rate, $400 per hour,

---

[4]  Noncompliance with a discovery request may be "substantially justified" if there is a "genuine dispute" or "if reasonable people could differ as to [the appropriateness of the contested action]."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

which is below the range of reasonableness as found by this Court for an attorney with nearly 40 years' experience. *E.g.*, *Entegee, Inc. v. Metters Indus.*, No. 1:17-cv-499-CMH-MSN; 2018 U.S. Dist. LEXIS 121222; 2018 WL 3472819 (E.D. Va. July 18, 2019) (allowing rates of $505-820 for attorneys with 20+ years' experience).  Accordingly, Soto seeks an award of $4,000.00 as its fees and costs caused by Quill's refusal and failure to obey the discovery rules.

## CONCLUSION

For the reasons argued above, the Court should grant the motion to compel in toto and award $4,000.00 in fees and costs to Soto.

March 26, 2020

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*

*Of Counsel for Defendant:*
Shawn M. Dellegar, OBA # 20973
Crowe & Dunlevy, P.C.
321 South Boston Avenue, Sutie 500
Tulsa, Oklahoma 74103
T: (918) 592-9800
E: shawn.dellegar@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

Tynia A. Watson, OBA # 30765
Crowe & Dunlevy, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
T: (405) 235-7500
E: tynia.watson@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*