**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **QUILL INK BOOKS LIMITED,** | ) |
| | ) |
| **Plaintiff/Counterclaim Defendant,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 1:19-cv-476-LO-MSN** |
| | ) |
| **RACHELLE SOTO a/k/a ADDISON CAIN,** | ) |
| | ) |
| **Defendant/Counterclaim Plaintiff.** | ) |

**PLAINTIFF'S MEMORANDUM REGARDING**
**DEFENDANT'S CONSENT MOTION**
**TO TURN OFF PACER ACCESS AND SEAL EXHIBITS**

Plaintiff Quill Ink Books Limited ("Quill" or "Plaintiff") files this short memorandum to address defendant Rachelle Soto a/k/a Addison Cain's ("Cain" or "Defendant") consent motion to turn off PACER access and seal Quill's exhibits. To be clear, Quill **does consent** to the motion to the extent indicated in Cain's Memorandum (as reflected in the e-mail exchange attached to this Memorandum). The Court immediately granted the consent motion, but the Court's Order does not reflect fully the caveats stated by Quill to its consent.[1]

Quill consented to Ms. Cain's procedural motion in order to avoid litigating a subsidiary issue. But the issue raised by the Consent Motion is tied up in the larger Motion to Compel discovery filed by Ms. Cain, which also is before the Court and ripe for disposition. Quill's consent was limited to the period prior to the disposition of that motion and this Memorandum is

---

[1]     Ms. Cain's motion expressly requested that the sealing order be entered after a seven-day period, which is consistent with the Court's local rules. This Memorandum is being filed within that seven-day period.'

being filed to ensure the Court does not take the Consent Motion as embodying Quill's consent to the permanent sealing of parts of the record.

## BRIEF BACKGROUND

In response to Cain's motion to compel (ECF No. 43), Quill filed an opposition (ECF No. 48).  The Opposition included the exhibits that are the subject of the Consent Order which now eliminates public access to those exhibits.

While Ms. Cain's consent motion complains that these exhibits include pictures of her and her family, Ms. Cain's motion does not apprise the Court that the now-sealed materials are, with one exception, materials that Ms. Cain herself placed, unrestricted, on the Internet.  Quill has no desire to waste the Court's or opposing counsel's time arguing against a temporary seal on these materials, but there should be no question: Quill's consent does not extend past the time the Court decides Cain's motion to compel, and there is no legitimate privacy interest in these materials that have been sealed.

## THE SEALED DOCUMENTS

Absolutely nowhere in Ms. Cain's motion does she mention that all of the documents to be sealed), and the personal information contained therein is presently – and widely – publicly available), and in most cases has been available on the Internet for years.  This was made clear to Cain's counsel (see attached e-mail, Exhibit 1).

### 1.    Cain's Own Internet Posts:

Exhibit A to Quill's Opposition to the Motion to Compel (ECF No. 48-1) contains public posts made by Cain on her own Facebook page, which is not even restricted to Facebook users.  Exhibit C (ECF No. 49-1 through 49-4) contains the same, with the addition of a handful of screenshots visible to Quill that bear the same information that is otherwise publicly available.

2

Exhibit D (ECF No. 48-3) contains photographs of Cain at public events which have been published online for nearly three years, or photographs of her and her family that she herself has either posted or shared directly on her own publicly open Facebook page over the years.  To this day, all of these photos remain visible to the public without restriction, and are accessible by merely Googling "Addison Cain."

### 2. Cain's Own Belated and Public Copyright Registration

After Ms. Cain filed the false DMCA take-down notices that are the core of this case, she belatedly filed for a copyright for the first book of her own trilogy.  Exhibit E (ECF No. 48-4) is simply a print-out from the publicly available federal copyright database showing Ms. Cain filed under her own name; Quill redacted her address.

All of the exhibits in these two categories are intended to demonstrate the false equivalency argued in Ms. Cain's motion to compel against Quill: that since Quill has "outed" her[2], she is entitled to full identification of the non-party Quill author using the pseudonym "Zoey Ellis."  These exhibits show that, unlike Zoey Ellis, who has rigorously guarded her privacy and real name, Ms. Cain has not engaged in <u>any</u> similar effort.  Anyone with an Internet connection can find Ms. Cain's real name, real home address, and pictures of her child and husband – <u>all affirmatively made publicly available by Ms. Cain.</u>

### 3. A Third-Party's Objections to Ms. Cain's Subpoena

Exhibit B to Quill's Opposition to the Motion to Compel is an objection filed against a subpoena issued by Ms. Cain to another internet-genre writer and is included to indicate the reasonableness of the belief expressed by Quill in its Opposition that information provided in

---

[2]     As noted elsewhere, no one "outed" Ms. Cain.  The federal court in Oklahoma required that she be sued in her real name and not under a pseudonym.

discovery in this case will not be restricted (even by the Protective Order) to use for a proper purpose.  That third-party author wrote:

> Also, as Addison Cain is well-aware, Ms. Dresden is also an author in the omegaverse genre. As soon as Ms. Dresden started having success in the genre, Addison Cain in conjunction with Myra Danvers aka Amanda Ludlow and others, took great effort to direct a campaign against her, banishing and blocking her from all group forums, allowing or directing her own followers to harass and leave negative reviews on Ms. Dresden's own publications and now continuing to harass her as part of her misguided campaign against Quill Ink Books and Zoey Ellis.

No one, least of all this third-party author, designated that subpoena response as confidential.

## CONCLUSION

Consistent with the limitation on the scope of Quill's consent to the sealing motion, PACER access to Quill's exhibits should be restored upon the Court's ruling on Cain's motion to compel, whatever that ruling may be.

April 29, 2020

Respectfully submitted,

**QUILL INK BOOKS LIMITED**

By: /s/ John M. Bredehoft
John M. Bredehoft
Virginia State Bar No. 33602
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
757-624-3000
757-624-3225 (direct)
888-360-9092 (facsimile)
jmbredehoft@kaufcan.com
*Counsel for Plaintiff*
*Quill Ink Books Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

/s/ John M. Bredehoft
John M. Bredehoft
Virginia State Bar No. 33602
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
757-624-3000
757-624-3225 (direct)
888-360-9092 (facsimile)
jmbredehoft@kaufcan.com
*Counsel for Plaintiff*
*Quill Ink Books Limited*

5

18376037v1