UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| QUILL INK BOOKS LIMITED,<br>    *Plaintiff*,<br><br>v.<br><br>RACHELLE SOTO *aka* Addison Cain,<br>    *Defendant*. | No. 1:19cv476-LO-MSN |

**DEFENDANT'S REPLY TO PLAINTIFF'S SEALING RESPONSE**

Last Wednesday, April 22, 2020, Defendant, Rachelle Soto a/k/a "Addison Cain," filed a consent motion to seal (Doc. 51) after obtaining the conditional consent of Plaintiff, Quill Ink Books Ltd. ("Quill"). The conditional nature of Quill's consent was accurately disclosed in that motion—indeed, it was quoted nearly verbatim (Doc. 51, ¶ 11). The Court granted the sealing motion on Thursday, April 23 (Doc. 53). Now, *a week later*, Quill has filed a "response" claiming to affirm its consent to temporary sealing but seeking to amplify "the caveats" conditioning its consent to even temporary sealing—essentially withdrawing its consent (Doc. 54). The Court, in turn, has set a hearing as to the sealing motion. Soto now files this reply to Quill's response.

I.     **THE PHOTOGRAPHS ARE WHOLLY IRRELEVANT AND INCLUSION OF THEM IN THE PUBLIC JUDICIAL RECORD INVADES PRIVACY INTERESTS.**

Quill filed several exhibits that contain photographs of Ms. Soto, her family, and her infant child. Neither the exhibits nor the photographs are relevant to the pending motion to compel. Instead, they were gratuitously filed as Quill made entirely extraneous, rhetorical points. Even if those materials and photographs were relevant—which they are not—those materials had been posted on the Internet by Ms. Soto under her pseudonym "Addison Cain" or at the "Addison Cain" Facebook page, without any link to her real name. So far as any viewer of those posts would have

1

known, those were photographs of the author, "Addison Cain," not the private person, Rachelle Soto—until now, of course. Now, Quill has publicly linked those photographs of Defendant, her family, and her infant child to her real name, Rachelle Soto, and in another filing (Doc. 48-4), even provided a link to Ms. Soto's home address.

Quill self-righteously contends that Ms. Soto has "no legitimate privacy interest" in her own photographs or those of her family or infant child because "***Ms. Cain*** herself" posted these photos on "*her*" Facebook page (Doc. 54, *Quill Response* at 2). Therein lies the first of two fatal flaws in Quill's argument: ***Ms. Soto*** did not post those photographs on "*her*" Facebook using her actual name.

The photographs that appear in Exhibits A, D, and C (respectively, Doc. 48-1, 48-3 & 49) were posted by Ms. Soto ***under her pseudonym*** "Addison Cain" or posted on the "Addison Cain" Facebook page that Ms. Soto maintains ***under her pseudonym***. Nowhere in those posts or on that Facebook page is her real name used. Ms. Soto kept her "Addison Cain" persona separate from her real identity to protect her privacy—until Quill sued her. Quill, not Ms. Soto, has broadcast these images and provided the public link to Ms. Soto that had not otherwise existed.

Indeed, if one does a Google-search for "Rachelle Soto" none of the images or webpages attached to Quill's response will be returned as hits. Instead, one finds the personal Facebook and LinkedIn webpages of ***dozens of other women from around the world named "Rachelle Soto."*** And in a Google-search for images of "Rachelle Soto," the only online reference that actually concerns Ms. Soto, the Defendant, is a single 2012 online article posted by someone else about Ms. Soto's volunteer work at a shrine in Japan, which has three photos from nearly ten years ago identified as "Rachelle Soto." That single post does not mention "Addison Cain" or identify Ms. Soto as a writer of dark romance fiction.

2

Until the Oklahoma litigation, in fact, Ms. Soto's actual identity, just like "Zoey Ellis'" identity, was virtually unknown. Then, Quill unmasked "Addison Cain" and publicly disclosed Ms. Soto's real identity in the public judicial record as the Oklahoma judge required[1]—***but Quill went further***, creating a website to broadcast Ms. Soto's identity even more loudly and to the farthest reaches of the Internet—much farther than the reaches of the PACER system. Indeed, a Google-search for "Rachelle Soto author" now prominently returns a link to Quill's website, https://www.omegaverselitigation.com. Having blown Ms. Soto's cover, Quill continues to shred Ms. Soto's privacy.

Now, Quill goes farther, and files irrelevant photographs of Ms. Soto, her family, and her infant child in the public judicial record. Even if Ms. Soto's identity were at issue in this motion—which it is not—there would be no need to file her photograph, let alone those of her family and child, but Quill filed them anyway. Indeed, even if the Facebook pages and posts filed by Quill were relevant to the motion—which they are not—Quill could have redacted the photographs, but Quill did not. Finally, even if Ms. Soto's image were at issue in this motion—which it is not—there is no justification for filing the photographs of her husband and child, who are not parties to this action, but Quill did so anyway.

That reveals the second fatal flaw in Quill's argument: Ms. Soto's identity and image (let alone the images of her husband and child) are not at issue in this motion. In contrast, one of the matters at issue in this motion to compel is whether the identity of "Zoey Ellis" should be disclosed

---

[1] Even the order in Oklahoma is deceptively presented by Quill. Prior to the issuance of summonses to the defendants in the Oklahoma case, "Zoey Ellis" filed an *ex parte* motion to sue pseudonymously, which was denied, and she was directed to use parties' real names, including her own. "Zoey Ellis" was then dropped as a plaintiff, and Quill publicly filed an amended complaint as the sole plaintiff, which disclosed that "Addison Cain" was Rachelle Soto's pseudonym. Only then was Rachelle Soto served. Thus, Ms. Soto's real name was irretrievably on the Internet before she even knew she had been sued.

under the protective order as "Highly Confidential" matter—meaning that Defendant's counsel and experts could learn that identity but no one else. By attaching the "Addison Cain" Facebook pages with the photographs, Quill purports to "prove" that Ms. Soto has not been careful about protecting her identity and image, which, of course, does not prove that "Zoey Ellis'" identity should not be disclosed. Therefore, Quill's justifications for filing these is exhibits are *non sequiturs*.

None of these exhibits are relevant to the motion. Quill offered Exhibit A (Doc. 48-1), with a photo of Ms. Soto, to show "Addison Cain's" "boastfulness in having her books banned" (Doc. 48, *Quill Br. Opp*. at 7). "Addison Cain's" boastfulness is not at issue in this motion. Quill offered Exhibit C (Doc. 49) with photos of Ms. Soto as evidence of her "incessant harassment" of "Zoey Ellis" (Doc. 48, *Quill Br. Opp*. at 11 n.4). Those posts date from 2018 and are hardly "incessant," but even if the posts were relevant, the photos of "Addison Cain," which Quill has unmasked as Ms. Soto, are not. Finally, Quill offered Exhibit D (Doc. 48-3), with numerous photos of Ms. Soto and her family, including multiple photos of her infant child, the "prove" that Ms. Soto's image had been "splashed over social media" (Doc. 48, *Quill Br. Opp*. at 12). Quill fails to note, however, that those photos were posted as being images of the author, "Addison Cain," not Rachelle Soto, and Quill also fails to realize that whether "Addison Cain's" image is "splashed over social media" does not prove that "Zoey Ellis'" identity should not be disclosed under the "Highly Confidential" provisions of the protective order to which Quill stipulated.

Each of Quill's self-righteous justifications falls of its own weight. While stridently championing the privacy interests for "Zoey Ellis," Quill has unrepentantly trampled on Ms. Soto's privacy. These photographs are irrelevant and sufficiently private as to warrant sealing.

## II. THE COPYRIGHT REGISTRATIONS ARE IRRELEVANT AND GRATUITOUSLY USED TO REVEAL DEFENDANT'S HOME ADDRESS.

Ms. Soto moved to compel Quill to produce relevant discoverable information in its possession, custody, or control. Ms. Soto's own copyright registrations were not at issue. Quill offered those copyright registrations (Exhibit "D" [*sic*], Doc. 48-4) for two reasons. First, ostensibly to prove that the registrations were "untimely," which, by statute, they are not (Doc. 50 at 3 *citing* 17 U.S.C. § 410(c)). Second, and apparently the real reason, these were offered to show that "Cain has filed for publicly available copyright registration claims and trademarks, that list not only her real name, but also **her personal address**" (Doc. 48, *Quill Br. Opp.* at 13 (emphasis added)). While Quill redacted the address in that exhibit, Quill nonetheless showed exactly how to follow that link to find Ms. Soto's home address in the copyright records. Quill justifies its filing of this exhibit and the link to Ms. Soto's home address by arguing that "no such public documents exist for Zoey Ellis" (Doc. 48, *Quill Br. Opp.* at 13), which is a *non sequitur*. Whether Ms. Soto made an otherwise obscure public copyright filing among the millions of other registrations, does not prove that "Zoey Ellis's" identity should not be disclosed.[2] In any event, "Zoey Ellis'" identity will be received as "Highly Confidential" discovery material.

## III. EXHIBIT F (Doc. 48-5) ALSO SHOULD BE SEALED.

Inadvertently omitted from Ms. Soto's motion to seal was Exhibit F (Doc. 48-5), which also contains a photograph of "Addison Cain" who Quill identifies as Ms. Soto (Do. 48, *Quill Br. Opp.* at 13). Once again, that is a 2016 post under the pseudonym "Addison Cain," which does not identify Ms. Soto's real name nor indicate her "indifference to keeping her identity a secret"

---

[2] In 2018 alone, the Copyright Office registered 560,013 claims for registration and recorded nearly 21,700 documents containing titles of more than 757,400 works. https://www.copyright.gov/reports/annual/2018/ar2018.pdf.

(*Id*.). In any event, any "indifference" to secrecy on Ms. Soto's part would not justify shielding "Zoey Ellis'" identity—this is another *non sequitur*. Moreover, "Addison Cain" declares herself "out" as "a writer of erotica" but she does not identify herself as Ms. Soto (she merely disclaims another pseudonym, "Itzy Strange"). Whatever possible relevance this statement might have—to be sure, it has none—the exhibit would serve just as well without the photograph. This document also should be sealed.

### IV. DEFENDANT DID NOT MOVE TO SEAL EXHIBIT B (Doc. 48-2).

Finally, Quill argues that Exhibit B should not be sealed because these are objections lodged by a subpoena recipient "to indicate the reasonability of the belief expressed by Quill in its Opposition that information provided in discovery in this case will not be restricted (even by the Protective Order) to use for a proper purpose (Doc. 54, *Quill Response* at 3-4). That objection, of course, is hearsay—an out of court statement that is offered for the truth of the matter asserted—and incompetent even "to indicate" the possibility of discovery abuse.[3]

If Quill wants a further protective order under Rule 26(c) preventing disclosure of "Zoey Ellis'" real name under the existing protective order, it bears the burden of making a specific, competent, evidentiary showing of (i) the harm or prejudice to which it would be exposed without such an order and (ii) demonstrates that the harm to "Zoey Ellis" outweighs Ms. Soto's need to discovery that information.

---

[3] Further, this hearsay statement identifies another third-party author's real name and links it to her pseudonym, "Myrna Danvers" (Doc. 54, *Quill Response* at p. 4). The real name of this author, like that of "Zoey Ellis," is not publicly known. Quill knew this and could have easily redacted "Myrna Danvers" real name but did not. Quill continues to misuse discovery in this case, as it did in the Oklahoma case, as a method of "doxing"—slang for publishing private information about someone on the Internet with the intent to injure—Ms. Soto and her friends. Ms. Soto submits that Quill should be required to refile its opposition, response, and this exhibit redacting "Myrna Danvers" real name from them.

As the Supreme Court emphatically ruled, a protective order limiting access to facts and witnesses "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties [because] [o]nly such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101-02 (1981) (affirming reversal of trial court's order limiting access to witnesses). The Fourth Circuit has specifically ruled that the proposed limitation that a witness remain anonymous during discovery must yield to a party's right to obtain relevant deposition evidence and other discovery from that witness. *See Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 249 (4th Cir. 2009) ("Once it is recognized that the deposition of the Doe Client and information that it could present could be relevant and useful to Jos. A. Bank's defense of the litigation, the substantial governmental interest in providing Jos. A. Bank a fair opportunity to defend itself in court is served by requiring the Doe Client to reveal its identity and provide the relevant information."). Quill's arguments, therefore, fail to satisfy either prong—neither showing extraordinary need, nor showing that the proposed limitation will not hinder Ms. Soto's rights. And, certainly, the inclusion of photographs of Ms. Soto, her family, and her infant child do not pertain to either prong of Quill's burden.

Instead, Quill has proffered lawyer-arguments (which are illogical *non sequiturs*) and the incompetent hearsay statement of another author in this genre. Yet, Quill has studiously avoided proffering a declaration, under penalty of perjury under the laws of the United States from either its sole owner, Zuri Thompson, or from its principal author, "Zoey Ellis." Simply, put, Quill has utterly failed to show why an extraordinary protective order is needed in this case or why the photographs of Ms. Soto, her family, and her child need to be in the public judicial record.

## CONCLUSION

For the reasons stated above and in the sealing motion, Exhibits A, C, D, and F should be sealed, and Quill should refile redacted versions of its opposition, response, and Exhibit B.

April 30, 2020

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*

*Of Counsel for Defendant:*
Shawn M. Dellegar, OBA # 20973
Crowe & Dunlevy, P.C.
321 South Boston Avenue, Sutie 500
Tulsa, Oklahoma 74103
T: (918) 592-9800
E: shawn.dellegar@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

Tynia A. Watson, OBA # 30765
Crowe & Dunlevy, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
T: (405) 235-7500
E: tynia.watson@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record.

/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*