# EXHIBIT A

**The Mitchell Law Firm, L.P.**
Attorneys at Law
1412 Main Street, Suite 500
Dallas, Texas 75202
(972)463-8417 – Office
(972)432-7540 – Facsimile
greg@mitchellps.com – E-mail

---

April 30, 2020

Craig C. Reilly
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com

Shawn M. Dellegar
CROWE & DUNLEVY, P.C.
321 South Boston Avenue, Suite 500
Tulsa, Oklahoma 74103
T: (918) 592-9800
E: shawn.dellegar@crowedunlevy.com

Tynia A. Watson
CROWE & DUNLEVY, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
T: (405) 235-7500
E: tynia.watson@crowedunlevy.com
*Counsel for Defendant Rachelle Soto aka Addison Cain*

cc:
John M. Bredehoft
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, Virginia 23510
T: 757-625-3000
E: jmbredehoft@kaufcan.com
*Counsel for Plaintiff Quill Ink Books Limited*

    Re:    Subpoena to third-party Margarita T.B. Coale (the "Subpoena") in *Quill Ink Books Ltd. ("Quill Ink") v. Rachelle Soto a/k/a Addison Cain ("Ms. Cain")*, No. CIV-1:19-

1

**REDACTED VERSION: Personal Identifiers Removed**

cv-476-LO-MSN, U.S. District Court, Eastern District of Virginia (the "Lawsuit").

Dear Ms. Watson:

This firm represents third-party Margarita T.B. Coale ("Ms. Coale") in response to the Subpoena. I am writing to serve you with the attached objections to the document requests. *See* Exhibit F. Please note that by making these objections, Ms. Coale waives no objection to the improper process used to serve the Subpoena itself, as detailed later in this letter.

I am also writing to give you notice pursuant to Fed. R. Civ. P. 11, and related discovery rules, that the Subpoena as presently composed is not a good faith use of discovery. Your substantive claims involving Ms. Coale are frivolous, and your misuse of those claims to harass her with discovery requests is sanctionable. Ms. Coale will pursue all available remedies if this unlawful and improper harassment of her continues.

### *Service of the Subpoena*

On its face, the Subpoena does not comply with the applicable rules. Neither you nor any of your colleagues was willing to sign it as required by Fed. R. Civ. P. 45(a)(3). It is issued from the wrong court, as Dallas is far outside the subpoena range of the U.S. District Court for the Eastern District of Virginia. And you failed to attach the documents to the Subpoena that are required by Fed. R. Civ. P. 45.

The Subpoena also purports to force a violation of state law. As a result of the COVID-19 health crisis, Dallas County residents are subject to a mandatory shelter-in-place order that lasts until (at least) May 20, 2020. *See* Exhibit A. A face-to-face deposition is not "essential" business activity under that Order. You cannot lawfully require Ms. Coale, counsel, and a court reporter to violate the law and appear on your unilaterally-chosen date and location of May 7 at your firm's office.

Because the Subpoena is issued from the wrong court and is otherwise facially invalid, Ms. Coale does not have to do anything in response to it, and I could end this letter here. I want to be clear about our position going forward, however. If you choose to issue another subpoena, we are willing to work with you on appropriate scheduling and substance. But persisting with the present requests will show bad faith and be treated as harassment.

### *Substance of the Subpoena*

As you know, under the Federal Rules, "[p]roportionality is determined by 'considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *E.g.*, *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 259 (5th Cir. 2019) (quoting Fed. R. Civ. P. 26(b)(1)). Examination of those factors shows why the Subpoena is frivolous.

REDACTED VERSION: Personal Identifiers Removed

***Importance of the discovery.*** There is a basic disconnect in the requests served with the Subpoena. If the Subpoena seeks documents from Ms. Coale as to her acts before 2018, there must be a relationship with the Plaintiff Quill Ink for them to have any relevance to the Lawsuit. But there was no connection between her and Quill Ink during this time. And if your client seeks communications from 2016-17, either involving herself or Blushing Books, she already has them. Indeed, your client not only has them, but talks about "tracking and observing" Ms. Coale for years. *See* Exhibit B. Virtually everything in the subpoena falls in one of these two categories—either (1) seeking documents that, in theory, could be relevant but do not exist, or (2) seeking a wholly duplicative production of material that your client already possesses. Neither is proper discovery.

***Issues at Stake.*** The relevant facts of Quill Ink's claim are simple. Ms. Cain and her publisher maliciously filed false DMCAs. In contrast, your client's counterclaim is nonsense. At every turn, its allegations are based on your client's vague "desires" and "beliefs," rather than the factual inquiry required by Fed. R. Civ. P. 11.

Consider, for example, the starting point of your client's narrative. Factually, she asserts that Ms. Coale searched out Quill Ink after she discovered the filings of the relevant DMCAs, in order to harass Ms. Cain. *See* Docket No. 36 in the Lawsuit ("Counterclaim"), ¶¶ 40-42. That is impossible. The only conceivable way Ms. Coale could have known that the DMCAs were filed would have been by Quill Ink or the author telling her, as Ms. Cain and Blushing Books obviously did not tell her, and the vendors such as Amazon could not have told her. And legally, so what? The DMCAs are still false. Ms. Cain's overheated speculation is not a valid defense to her malicious actions.

The counterclaim continues with more false statements that should not have withstood your Rule 11 scrutiny:

- Your client knows that Ms. Coale's participation in the ARC program was for less than two months in 2016, when she reviewed thirteen books for Blushing Books. She never participated in the ARC program before, and thus could not have reviewed *Born to be Bound* and *Born the Be Broken* (also called "books 1 and 2") from Cain's *Alpha's Claim* series during that program. The counterclaim falsely alleges that she did, even though she could not have reviewed them under the program. *See* Counterclaim ¶¶ 17, 21.

- Your client admits to active and assertive monitoring of online reviews. *See* Counterclaim ¶¶ 24, 25. She has no legal right to inject herself into online reviews; to the contrary, her doing so violates the relevant terms of service among others, which assume that the purpose of an ARC program and review program is to obtain **unbiased** reviews that are **not controlled** or manipulated by the author or publisher.

- In October 2016, after Ms. Cain (improperly, see the previous bullet point) complained to her publisher about reviews of *Reborn* (a book of dubious *romantic* quality, as to which Ms. Cain publicly admitted: "I was getting slaughtered in the reviews, I was getting one-star after one—I'm talking like maybe 40 in about three or four hours …." Upon its release), Ms. Coale asked to be removed as an ARC

REDACTED VERSION: Personal Identifiers Removed

reader. Ms. Cain has the documents in which this occurred. The counterclaim falsely implies a connection between that request and Ms. Cain's filing of false DMCAs against the Plaintiff's books.[1] They have nothing to do with each other, Ms. Cain knows they have nothing to do with each other, and she has the documents in her possession that prove they have nothing to do with each other.

To the contrary, the record—as proved by documents and public events, rather than speculation—makes clear that Ms. Cain is the harasser, and the present Subpoena is only the latest act in a long-running pattern of her harassment of Ms. Coale. Ms. Cain's specific and documented acts include:

(a) directing and making at least two frivolous filings against Ms. Coale with the State Bar of Texas, both of which were dismissed by the Bar on their face without even requesting a response, despite Ms. Cain contacting Blushing Books multiple times asking for status updates about them, and even personally contacting the Bar to ask about their status;

(b) frivolously accusing Ms. Coale of manipulating multiple online "sock puppets" to make unfavorable reviews of Ms. Cain's work (specifically including, at various times, "Amazon Costumer" (sic), "Amazon Custemer" (sic), "Sannia," "TGBPR," and likely also including "Samantha K," "RedSlippers" and "KindleCustomer")[2];

(c) harassing Ms. Coale's clients and attempting to tortiously interfere with their contract rights to obtain legal representation from her; and

(d) as you know from your personal involvement, attempting to tortiously interfere with a writers' conference in November 2019.

Again, let me be clear. Ms. Coale and I will work with you in good faith if you make reasonable requests. If you have any information from a relevant vendor that in any way shows that Ms. Coale "directed" a campaign to take down Ms. Cain's books and Facebook ads, please let me know and I will review and discuss with you. Such information could include identification— **any** identification—of dates and times, relevant books, the involved parties, and what was said that forms a factual basis for Ms. Cain's counterclaim. If, however, you have no such information and still persist in pursuing intrusive discovery from Ms. Coale about Ms. Cain's nonsensical claim, you will be proceeding in bad faith.

---

[1] In fact, in multiple emails to Blushing Books about the DMCAs, there is not mention of Coale but Ms. Cain directed the filing of the DMCAs when Blushing Books suggested caution and outreach to the author; for example, an email sent or about April 17, 2018 says: "I wouldn't contact her … file the DMCASs … ." In the same email, Ms. Cain states her intent "of hiding behind her publisher" and drafts a statement to that effect, in which Cain and her publisher agree to "hide" Ms. Cain's involvement. *See* Exhibit C.

[2] Moreover, in November 2018, Ms. Cain made the false claims that a new Omegaverse author, name to " see if she can cause trouble." *See* Exhibit D. There is no basis for these allegations other than Ms. Cain's feverish conspiracy theorizing. And even a casual review of Ms. Cain's public Facebook and Goodreads activity shows that she frequently insults readers who do not like her work or disagree with her dubious conduct and practices as "trolls." Attached here as Exhibit E is such behavior as recent of 2019.

4

REDACTED VERSION: Personal Identifiers Removed

*Benefit and Burden.* I have already discussed the general problems with Ms. Cain's frivolous claims; speculation-fueled discovery about meritless allegations is the textbook definition of a "fishing expedition." Several specific items raise additional issues, however, and at a minimum these matters must be addressed before we can have any productive discussion about discovery.

– *"Sock Puppets."* The Subpoena contains requests involving Ms. Cain's repeated claim that Ms. Coale has multiple Amazon accounts or multiple accounts in other vendors. You either know, or should know, that this claim is frivolous. Ms. Cain told her former publisher that she "cannot prove and no one can prove for sure" these claims. Your persistence with these claims shows a failure to investigate the relevant terms-of-service agreements. They establish clear and specific requirements to create an account on either Amazon (*inter alia*, a valid credit card, valid email address, and a maximum number of accounts using the same IP address to review a book) or Facebook (which regulates how many accounts one person can have that are not business accounts).

Additionally, to have a valid Amazon account from which a user can post reviews, the terms of service say: "To contribute to Customer features (for example, Customer Reviews, Customer Answers, Idea Lists) or to follow other contributors, you must have spent at least $50 on Amazon.com using a valid credit or debit card in the past 12 months." When Ms. Cain falsely alleges that Ms. Coale is engaging in "sock puppetry" with 7 to 100 Amazon accounts, she is necessarily claiming that Ms. Coale conducts that puppetry with 7 to 100 distinct email addresses, 7 to 100 distinct IP addresses, and 7 to 100 distinct credit cards on which she made the required purchases. That is ludicrous.

A simple search of those company's websites, the review of their terms of service[3] and communications with the relevant companies would easily ascertain how accounts are created and monitored, and that should lay this issue to rest without further, needless discovery activity.

– *Redundancy.* Fed. R. Civ. P. 45(d)(1) obligates an attorney issuing a subpoena to "take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena." The Subpoena is plainly repetitive of identical subpoenas directed to other third parties, many of whom have confirmed that the information sought does not exist. Multiplying any number by zero, no matter how large that number may be, results in a product of zero. And the Subpoena also plainly requests documents that are in the custody, possession, or control of either Ms. Cain, Blushing Books, or Quill Ink. To be sure, you have no obligation to exhaust other discovery mechanisms before serving a third-party subpoena, but serving obviously-redundant material violates the basic requirements of Rule 45.

– *Privilege.* You know that Ms. Coale is an attorney. Her work is protected by the attorney-client privilege and work-product doctrine. The relevant facts about her work are clear. *First*, Quill Ink was a client of Ms. Coale in March of 2018. In other words, when the DMCAs were filed, she had already been retained by Quill Ink and the author Zoey Ellis. *Second*, _____, has been a client of Ms. Coale since 2016, as her subpoena response confirms. *Third*, Nora Ash, a separate individual who is another Omegaverse author--not Zoey

Ellis or Quill Ink--has been a client of Ms. Coale since 2018. **Fourth**, Ms. Coale does not represent, does not know, and has not had communications with                               at any time. Knowingly persisting in requests for privileged documents is frivolous.

———

One final matter. Your client's harassment of Ms. Coale goes beyond the present Subpoena. Your client has made defamatory statements about alleged wrongdoing by her as well as Quill's litigation counsel to Ms. Cain's author friends, attempted to tortiously interfere with her client relationships, and repeatedly requested her removal from conferences and presentations. As you know, Ms. Cain has travelled to Texas as part of her campaign and thus clearly subjected herself to Texas jurisdiction. Ms. Coale will sue her if necessary to stop such activity.

Please contact our office to discuss these matters further.

Sincerely,

**/s/Gregory W. Mitchell**
Gregory W. Mitchell

REDACTED VERSION: Personal Identifiers Removed