UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| QUILL INK BOOKS LIMITED,<br>    *Plaintiff*,<br><br>v.<br><br>RACHELLE SOTO *aka* Addison Cain,<br>    *Defendant*. | No. 1:19cv476-LO-MSN |

**REPLY IN SUPPORT OF**
**DEFENDANT'S <u>EMERGENCY</u> MOTION TO ENFORCE**

On May 29, 2020, the firm Hudson Weir Limited, who are registered in the United Kingdom ("UK") and licensed to act as "insolvency practitioners" in the UK, submitted an unsigned "*Notice of Insolvency, Suggestion of Mootness and Lack of Jurisdiction*," attaching a letter stating that there was a "proposed creditors' voluntary liquidation" of Quill Ink Books Ltd. ("Quill"), the Plaintiff and Counterclaim-Defendant in this action (Doc. 78) (hereafter, "*Notice*"). Notwithstanding that *Notice*, the UK insolvency proceedings involving Quill are merely "proposed" and do not become effective until Quill's creditors, after receiving due notice, approve the liquidator and consent to the winding up, liquidation, and dissolution of Quill. Moreover, under UK insolvency law, there is no automatic stay of litigation involving the allegedly insolvent company who initiates a nonjudicial "creditors' voluntary liquidation" proceeding pursuant to the UK *Insolvency Act 1986*.

Therefore, Defendant, Rachelle Soto a/k/a Addison Cain ("Soto"), respectfully submits that the Court can and should take the following actions:

1. Deny Quill's pending motion for leave to serve untimely expert reports, either as having been withdrawn, or for lacking merit, or both, and, instead, enter an order that Quill is precluded from presenting any expert evidence;

1

2. Grant Soto's *Emergency Motion to Enforce* (Doc. 71) and award the following relief: (i) award at least the $4,000 in fees Soto has requested; (ii) preclude Quill from presenting any fact or expert evidence on damages; and (iii) award any other appropriate relief; and

3. Dismiss Quill's sole remaining claim under the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA"), with prejudice, under Rule 41(b) for failure to prosecute because Quill failed to have counsel appear by May 29, 2020 as ordered (Doc. 77), and because Quill otherwise has disobeyed the rules and orders in this action.

The grounds and reasons for ordering this relief are explained below.

## ARGUMENT

**I.    THE "CREDITORS' VOLUNTARY LIQIDATION" PROCEDURE.**

Quill's directors (Zuri Thompson and her mother, Celestine Henry) have retained the firm Hudson Weir Limited to act as liquidators to place Quill into "creditors' voluntary liquidation"—known as a "CVL." Under UK law, *Insolvency Act 1986*, c.45, Part IV, §§ 84 *et seq.*, the directors of a UK-registered company may initiate the CVL process by adopting a "special resolution that [the company] be wound up voluntarily." *Section* 84(1)(b). "When a company has passed a resolution for voluntary winding up, it shall, within 14 days after the passing of the resolution, give notice of the resolution" to its creditors by publication and otherwise. *Section* 85(1)(a). As the Hudson Weir Limited letter indicates, formal notice to creditors has not yet been given (Doc. 78). Nonetheless, the CVL procedure "is deemed to commence at the time of the passing of the resolution for voluntary winding up," *Section* 86; and "the company shall from the commencement of the winding up cease to carry on its business, except so far as may be required for its beneficial winding up." *Section* 87(1). In a CVL, the company's directors must present "a statement in the prescribed form as to the affairs of the company," which must be sent "to the company's creditors" within seven days after adoption of the winding up resolution. *Section* 99(1)(a) & (b). The statement of affairs must be "verified" and include the following information:

      (a) particulars of the company's assets, debts and liabilities;

      (b) the names and addresses of the company's creditors;

      (c) the securities held by them respectively;

      (d) the dates when the securities were respectively given; and

      (e) such further or other information as may be prescribed.

*Section* 99(2) & (2A)(a). That notice has not yet been sent to Quill's creditors.

      The liquidator retained by Quill may be nominated for appointment, and the creditors may appoint him or another liquidator. *Section* 100. A liquidation committee of creditors may be appointed, as well. *Section* 101. When a liquidator is appointed, "all powers of the directors cease" expect as expressly allowed by the creditors or the liquidation committee. *Section* 103. The liquidator must promptly wind up the company's affairs and make an account of the company's property, which is sent to the creditors withing 14 days. *Section* 106. The liquidator's compensation and expenses are paid from the company's assets prior to distributions to creditors. *Section* 113. Although a CVL is not administered by a court, the liquidator or a creditor "may apply to the court to determine any question arising in the winding up of [the] company, or to exercise, as respects the enforcing of calls or any other matter, all or any of the powers which the court might exercise in the company were being wound up by the court." *Section* 112. In short, the CVL proceeding now proposed is intended as a prompt and complete winding up of Quill.

      Significantly, there is no statutory moratorium on litigation against an insolvent company that has commenced CVL proceedings. The CVL procedure generally is used by small companies with little cash and no prospects for continuing operations. In contrast, under *Insolvency Act 1986*, c.45, Part I, §§ 1 *et seq.*, if a "Company Voluntary Arrangement", or "CVA," has been commenced, the company may seek a "moratorium" on litigation against itself. *Section* 1A. Therefore, unlike either a bankruptcy proceeding in the United States, in which there is an "automatic stay" of litigation against the bankrupt company, 11 U.S.C. § 362, or a CVA proceeding under UK law, in

which a moratorium may be entered on a proper showing, the mere commencement of a CVL proceeding does not stay litigation against the insolvent company.

Accordingly, the unsigned *Notice*, even if taken at face value, does not present any grounds for staying this action, rendering it moot, or depriving the Court of jurisdiction. Instead, the Court retains full authority over the action and may issue such orders as are appropriate.

**II.     THE COURT SHOULD PRECLUDE QUILL'S UNTIMELY EXPERT DISCLOSURES AND GRANT OTHER RELIEF SOUGHT BY SOTO.**

Since the action is not stayed and the Court retains jurisdiction, the Court can and should take the following actions:

First, the Court should deny Quill's motion to serve untimely expert reports (Doc. 59). As Soto has shown, those reports are inexcusably untimely, procedurally deficient, substantively deficient, and were served in bad faith (Doc. 64). Precluding those expert disclosures is fully justified in the circumstances of this action.

Second, as a sanction for Quill's failure to comply with the Court's May 1 order (Doc. 57), the Court should grant Soto's motion to enforce (Doc. 70). Quill has not filed a written opposition to that motion, and the failure to file a brief in opposition is deemed a concession of the motion. *See In re Fisherman's Wharf Fillet, Inc.*, 83 F. Supp. 2d 651 (E.D. Va. 1999) (granting summary judgment for defendant and disciplining plaintiff's counsel for failing to file a brief in opposition). In the motion to enforce, Soto sought, *inter alia*, an order that the Court award the $4,000.00 in fees previously requested, and an order precluding Quill from presenting fact or expert evidence in support of its damages (Doc. 70-1, *Proposed Order*, and Doc. 71, *Soto Brief*, at 19). Soto respectfully submits that an order be entered granting that relief and any other appropriate relief, including an award of additional fees incurred by Soto due to the motion to enforce.

**III. THE UNSIGNED *NOTICE* IS OF NO EFFECT AND MAY BE STRICKEN, AND QUILL'S DMCA CLAIM MAY BE INVOLUNTARILY DISMISSED FOR FAILURE TO PROSECUTE DUE TO FAILURE OF COUNSEL TO APPEAR AND QUILL'S FAILURE TO COMPLY WITH THE RULES AND COURT ORDERS.**

**A. THE *NOTICE* MUST BE STRICKEN.**

The *Notice* submitted by Quill (Doc. 78) apparently was submitted to the Clerk by nonelectronic filing. *See* FED.R.CIV.P. 5(d)(2). Under the Rules, however, every paper presented for filing "must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented." FED.R.CIV.P. 11(a). The *Notice* was not signed by anyone, and is procedurally deficient; nonetheless, the Clerk was required to file it. FED.R.CIV.P. 5(d)(4). However, the Court "must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." FED.R.CIV.P. 11(a). Here, the only course of action is to strike the *Notice*.

On May 18, 2020, the Court entered an order allowing Quill's counsel to withdraw (Doc. 68). No new counsel appeared. On May 26, a second order was entered directing Quill to have new counsel appear by May 29 (Doc. 77). No new counsel appeared. The absence of counsel for Quill dictates that the *Notice* must be stricken.

"It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993). Therefore, the federal courts "have uniformly held that 28 U.S.C. § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." *Id.* at 202 (citations omitted); *accord Reynolds v. Reliable Transmissions, Inc.*, 2009 WL 3064774, at *1 (E.D. Va. Sept. 21,

2009) ("It is well settled that a corporation … may only appear by counsel in a federal judicial proceeding"). Therefore, the *Notice* could only be filed by counsel who had signed it. The *Notice* was not properly signed or filed, and it may be stricken under Rule 11(a).

### B. INVOLUNTARY DISMISSAL OF QUILL'S DMCA CLAIM.

Moreover, the failure of counsel to appear dictates that that Quill's DMCA claim should be involuntarily dismissed, with prejudice, for failure to prosecute. "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it," which ordinarily "operates as an adjudication on the merits." FED.R.CIV.P. 41(b). Involuntary dismissal also may be entered *sua sponte* for failure of counsel to appear for a hearing, failure to comply with the rules or orders, or failure to diligently prosecute the case. *Link v. Wabash R. Co.*, 370 U.S. 626, 629-31 (1962); *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978); *accord Slack v. McDaniel*, 529 U.S. 473, 489 (2000) ("The failure to comply with an order of the court is grounds for dismissal with prejudice" under Rule 41(b)). The Court's *sua sponte* power to dismiss may be exercised even without advance notice to the plaintiff. *Link*, 370 U.S. at 632-33; *accord Attkinson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019). That power should be exercised here to dismiss Quill's DMCA claim with prejudice.

When deciding whether to dismiss a claim involuntarily under Rule 41(b), the Court "should weigh" the following factors:

> (1) the plaintiff's degree of personal responsibility;
> (2) the amount of prejudice caused the defendant;
> (3) the presence of a drawn-out history of deliberately proceeding in a dilatory fashion; and
> (4) the effectiveness of sanctions less drastic than dismissal.

*Attkinson*, 925 F.3d at 625 (citations omitted). "Those criteria, however, 'are not a rigid four-prong test.'" *Id.* (citing *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (Powell, J.)). "Rather,

6

the propriety of an involuntary dismissal ultimately depends on 'the facts of each case,' which we review to determine 'whether the trial court exercised sound discretion.'" *Id*. (citations omitted). Here all four factors strongly point to involuntary dismissal with prejudice.

First, Quill bears personal responsibility. Quill admittedly set up the omegaverselitigation.com website and abused discovery and litigation papers by posting them. Quill fired its Virginia counsel in an obvious effort to derail and delay deposition discovery and adjudication on the merits. And Quill, together with its Texas and Oklahoma counsel, have persistently ignored or violated the rules and orders of the Court—in this action and in the Oklahoma action—for the obvious purpose of inflicting professional and financial harm on Soto.

Second, as shown in Soto's prior filings, she has been prejudiced by Quill's dilatory conduct, as well as Quill's haphazard and inadequate discovery responses (Doc. 44, 50, 64, and 71). As happened in Oklahoma, Quill knew it had no damages, and strung out the litigation as long possible to punish Soto for a perceived slight that caused little or no financial injury, and to force Soto to incur enormous litigation expenses. It cannot be gainsaid that Quill has been on a personal vendetta against Soto.

Third, Quill has repeatedly trampled upon Soto's privacy interests and actively litigated in the press, while ignoring its obligations to the Court. Quill quixotically pursued untenable claims and unattainable remedies with no hope of prevailing. In the eighteen months of litigation in Oklahoma and this Court, Quill has refused to produce competent damages discovery—fact or expert—and has otherwise disobeyed its discovery obligations, disregarded the rules, and disregarded the Court's numerous orders. It is now obvious that Quill acted with implacable indifference to the rules and orders because it has always intended to pull the ripcord and bail out

of this case before trial, just as it did in Oklahoma. Obviously, the sole purpose of this litigation was to punish Soto with litigation expenses and embarrass her in the press and online.

Fourth, no other sanctions are sufficient. The Court has tried scheduling orders—which Quill ignored or disobeyed. The Oklahoma court entered an order compelling Quill to produce damages evidence, which Quill also ignored or disobeyed. Quill provided wholly inadequate discovery responses, forcing Soto to file a motion to compel and a motion to enforce. Quill still failed to comply. Quill served untimely and deficient expert disclosures in disregard of the scheduling order. Quill litigated its claims in the press and online, while refusing to follow the rules and requirements for litigation in court. Quill's willful, persistent, and deliberate disregard of the rules and orders more than justifies involuntary dismissal of the DMCA claim with prejudice.

Accordingly, the Court can and should dismiss the DMCA claim, with prejudice, under Rule 41(b).

## CONCLUSION

For the reasons argued above and in Soto's motion to enforce, the Court should (a) strike the *Notice*; (b) deny Quill' s motion for leave to serve untimely expert disclosures; (c) enter an order (i) awarding at least $4,000 in fees to Soto, (ii) precluding Quill from presenting any fact or expert evidence in support of its damages, and (iii) awarding other appropriate relief; and (d) enter an order under Rule 41(b) dismissing Quill's DMCA claim with prejudice.

June 1, 2020

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*

*Of Counsel for Defendant:*
Shawn M. Dellegar, OBA # 20973
Crowe & Dunlevy, P.C.
321 South Boston Avenue, Sutie 500
Tulsa, Oklahoma 74103
T: (918) 592-9800
E: shawn.dellegar@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

Tynia A. Watson, OBA # 30765
Crowe & Dunlevy, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
T: (405) 235-7500
E: tynia.watson@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record and emailed a copy to Plaintiff's outside counsel, Ms. Coale and Mr. Lincecum.

/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*