UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| QUILL INK BOOKS LIMITED,<br>    *Plaintiff*,<br><br>v.<br><br>RACHELLE SOTO *aka* Addison Cain,<br>    *Defendant*. | No. 1:19cv476-LO-MSN |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Pursuant to Rule 41(b), Defendant, Rachelle Soto, a/k/a Addison Cain ("Soto"), has moved to dismiss the remaining claim against her because Plaintiff and Counterclaim-Defendant, Quill Ink Books Ltd. ("Quill"), has now abandoned this litigation. After two months of Quill's persistent violation its discovery obligations and the rules, the Court's entered an order on May 1 granting Soto's motion to compel *in toto* (Doc. 57). After some efforts to comply, Quill fired its counsel, who then moved for leave to withdraw (Doc. 61), which was granted on May 18 (Doc. 68). Quill's firing of its counsel effectively stopped this case dead in its tracks, even though the discovery period is set to end on June 12, and a lot of party and third-party discovery remained unfinished.

When new counsel for Quill still had not appeared, Soto filed an emergency motion on May 26 to enforce Quill's compliance with the May 1 order and to have to the Court order Quill to have new counsel appear forthwith (Doc. 70). The Court entered an order requiring Quill to have new counsel appear by May 29, and to appear for a hearing on June 1 to address all pending discovery motions (Doc. 77). Quill did neither.

Instead, on May 29, 2020, the firm Hudson Weir Limited, a company registered in the United Kingdom ("UK") and licensed to act as "insolvency practitioners," submitted an unsigned

1

"*Notice of Insolvency, Suggestion of Mootness and Lack of Jurisdiction*," attaching a letter stating that there was a "proposed creditors' voluntary liquidation" of Quill (Doc. 78) (hereafter, "*Notice*"). As explained in **Section I**, that unsigned *Notice* should be stricken. It is not a proper pleading, paper, or motion, and it is of no effect.

Moreover, as explained in **Section II**, that *Notice* notwithstanding, the UK insolvency proceedings involving Quill are merely "proposed" and do not become effective until Quill's creditors, after receiving due notice, approve the liquidator and consent to the winding up, liquidation, and dissolution of Quill. Under UK law, there is no automatic stay of litigation involving the allegedly insolvent company who initiates a nonjudicial "creditors' voluntary liquidation" proceeding pursuant to the UK *Insolvency Act 1986*.

Finally, in **Section III**, Soto shows that the Court should dismiss Quill's DMCA claim, with prejudice, for failure to prosecute. As of May 29, despite an order to do so, new counsel for Quill had not appeared. Quill did not file a reply brief to respond to Soto's opposition to Quill's motion for leave to file late expert disclosures. Quill did not file an opposition to Soto's motion to enforce the May 1 order. Quill did not file responses to two pending motions to seal its own discovery materials. And Quill did not appear for the June 1 hearing.

Soto respectfully submits that the Court can and should Dismiss Quill's sole remaining claim under DMCA, with prejudice, under Rule 41(b) for failure to prosecute and because Quill otherwise has disobeyed the rules and orders of the Court.

## ARGUMENT

### I. THE UNSIGNED *NOTICE* IS SHOULD BE STRICKEN.

The *Notice* submitted by Quill (Doc. 78) apparently was submitted to the Clerk by nonelectronic filing. *See* FED.R.CIV.P. 5(d)(2). Under the Rules, however, every paper presented for filing "must be signed by at least one attorney of record in the attorney's name—or by a party

personally if the party is unrepresented." FED.R.CIV.P. 11(a). The *Notice* was not signed by anyone, and is procedurally deficient; nonetheless, the Clerk was required to file it. FED.R.CIV.P. 5(d)(4). However, the Court "must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." FED.R.CIV.P. 11(a). Here, the only course of action is to strike the *Notice*.

On May 18, 2020, the Court entered an order allowing Quill's counsel to withdraw (Doc. 68). No new counsel appeared. On May 26, a second order was entered directing Quill to have new counsel appear by May 29 (Doc. 77). No new counsel appeared. The absence of counsel for Quill dictates that the *Notice* must be stricken.

Quill may not appear *pro se* to prosecute its DMCA claim, defend Soto's counterclaim, file any motions, pleadings, or other papers, or take any other action in this case. "It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993). Therefore, the federal courts "have uniformly held that 28 U.S.C. § 1654, providing that 'parties may plead and conduct their own cases personally or by counsel,' does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney." *Id*. at 202 (citations omitted); *accord Reynolds v. Reliable Transmissions, Inc.*, 2009 WL 3064774, at *1 (E.D. Va. Sept. 21, 2009) ("It is well settled that a corporation … may only appear by counsel in a federal judicial proceeding"). Therefore, the *Notice* could only be filed by counsel who has formally appeared for Quill and who has signed it. The *Notice* was not properly signed or filed, and it may be stricken under Rule 11(a).

Therefore, the Court should not treat the unsigned *Notice* as a motion for a stay, or a "suggestion of mootness," or as an indication that the Court now lacks of jurisdiction. Any such

3

notice or motion must be filed by counsel who has signed and filed the paper as required by Rule 11(a). The *Notice* is not signed by counsel of record for Quill—or at all—and was not filed by counsel as required. The *Notice* must be stricken.

II. **THE "CREDITORS' VOLUNTARY LIQIDATION" PROCEDURE DOES NOT RENDER THIS ACTION MOOT, OR PRESENT GROUNDS FOR A STAY, OR DEPRIVE THIS COURT OF JURISDICTION.**

Even if the *Notice* were validly filed, which it was not, it has no effect on this Court's jurisdiction or authority to rule on matters. Quill has not filed a formal bankruptcy proceeding; rather, it has proposed a nonjudicial voluntary liquidation under the supervision of its creditors. That proceeding is like a nonjudicial "composition of creditors" or "assignment for the benefit of creditors" under United States law.

As set forth in the *Notice*, Quill's directors have retained the firm Hudson Weir Limited to act as liquidators to place Quill into "creditors' voluntary liquidation"—known as a "CVL." Under UK law, *Insolvency Act 1986*, c.45, Part IV, §§ 84 *et seq.*, the directors of a UK-registered company may initiate the CVL process by adopting a "special resolution that [the company] be wound up voluntarily." *Section* 84(1)(b). "When a company has passed a resolution for voluntary winding up, it shall, within 14 days after the passing of the resolution, give notice of the resolution" to its creditors by publication and otherwise. *Section* 85(1)(a). As the Hudson Weir Limited letter indicates, formal notice to creditors has not yet been given (Doc. 78). Nonetheless, the CVL procedure "is deemed to commence at the time of the passing of the resolution for voluntary winding up," *Section* 86; and "the company shall from the commencement of the winding up cease to carry on its business, except so far as may be required for its beneficial winding up." *Section* 87(1). In a CVL, the company's directors must present "a statement in the prescribed form as to the affairs of the company," which must be sent "to the company's creditors" within seven days

after adoption of the winding up resolution. *Section* 99(1)(a) & (b). The statement of affairs must be "verified" and include the following information:

>    (a) particulars of the company's assets, debts and liabilities;
>    (b) the names and addresses of the company's creditors;
>    (c) the securities held by them respectively;
>    (d) the dates when the securities were respectively given; and
>    (e) such further or other information as may be prescribed.

*Section* 99(2) & (2A)(a). That notice has not yet been sent to Quill's creditors.

The liquidator retained by Quill may be nominated for appointment, and the creditors may appoint him or another liquidator. *Section* 100. A liquidation committee of creditors may be appointed, as well. *Section* 101. When a liquidator is appointed, "all powers of the directors cease" except as expressly allowed by the creditors or the liquidation committee. *Section* 103. The liquidator must promptly wind up the company's affairs and make an account of the company's property, which is sent to the creditors withing 14 days. *Section* 106. The liquidator's compensation and expenses are paid from the company's assets prior to distributions to creditors. *Section* 113. Although a CVL is not administered by a court, the liquidator or a creditor "may apply to the court to determine any question arising in the winding up of [the] company, or to exercise, as respects the enforcing of calls or any other matter, all or any of the powers which the court might exercise in the company were being wound up by the court." *Section* 112. In short, the CVL proceeding now proposed is intended as a prompt and complete winding up of Quill.

Significantly, there is no statutory moratorium on litigation against an insolvent company that has commenced CVL proceedings. The CVL procedure generally is used by small companies with little cash and no prospects for continuing operations. In contrast, under *Insolvency Act 1986*, c.45, Part I, §§ 1 *et seq.*, if a "Company Voluntary Arrangement", or "CVA," has been commenced, the company may seek a "moratorium" on litigation against itself. *Section* 1A. Therefore, unlike

either a bankruptcy proceeding in the United States, in which there is an "automatic stay" of litigation against the bankrupt company, 11 U.S.C. § 362, or a CVA proceeding under UK law, in which a moratorium may be entered on a proper showing, the mere commencement of a CVL proceeding does not stay litigation against the insolvent company.

Accordingly, the unsigned *Notice*, even if taken at face value, does not present any grounds for staying this action, rendering it moot, or depriving the Court of jurisdiction. Instead, the Court retains full authority over the action and may issue such orders as are appropriate.

### III. QUILL'S DMCA CLAIM SHOULD BE INVOLUNTARILY DISMISSED FOR FAILURE TO PROSECUTE DUE TO FAILURE OF COUNSEL TO APPEAR AND QUILL'S FAILURE TO COMPLY WITH THE RULES AND COURT ORDERS

The failure of counsel to appear dictates that Quill's DMCA claim should be involuntarily dismissed, with prejudice, for failure to prosecute. "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it," which ordinarily "operates as an adjudication on the merits." FED.R.CIV.P. 41(b). Involuntary dismissal also may be entered *sua sponte* for failure of counsel to appear for a hearing, failure to comply with the rules or orders, or failure to diligently prosecute the case. *Link v. Wabash R. Co.*, 370 U.S. 626, 629-31 (1962) (affirming dismissal for failure to appear for pretrial conference); *Slack v. McDaniel*, 529 U.S. 473, 489 (2000) ("The failure to comply with an order of the court is grounds for dismissal with prejudice" under Rule 41(b))"); *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978) (affirming dismissal for failure to provide discovery on damages issues and plaintiff's "long history of delay). Specifically, the failure of a corporate party to have new counsel appear as required may constitute "a failure to prosecute under Federal Rule of Civil Procedure 41(b)." *See MHD-Rockland Inc. v. Aerospace Distribs. Inc.*, 102 F. Supp. 2d 734, 737 (D. Md. 2015); *cf. Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2d Cir. 1991) (upholding a default

6

judgment entered against a partnership for willfully failing to "comply with the district court's order directing it to appear with counsel"). Moreover, the Court's power to dismiss may be exercised without advance notice to the plaintiff. *Link*, 370 U.S. at 632-33; *accord Attkinson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019). That power should be exercised here to dismiss Quill's DMCA claim with prejudice.

Rule 41(b) dismissal "is intended as a safeguard against delay in litigation and the harassment of a defendant." 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d, § 2370 at 642 (2008); *accord Zaczek v. Fauquier County, Va.*, 764 F. Supp. 1071, 1076 (E.D. Va. 1991) ("the sanction [of dismissal] protects those litigants who are direct victims of abusive litigation"). Moreover, dismissal under Rule 41(b) fosters the "administration of justice and dignity of the courts" and "provides the control necessary to achieve the orderly and expeditious disposition of cases." *Id*. (citations omitted). Soto respectfully submits that the Court's power under Rule 41(b) should be used to dismiss Quill's DMCA claim with prejudice.

When deciding whether to dismiss a claim involuntarily under Rule 41(b), the Court "should weigh" the following factors:

> (1) the plaintiff's degree of personal responsibility;
> (2) the amount of prejudice caused the defendant;
> (3) the presence of a drawn-out history of deliberately proceeding in a dilatory fashion; and
> (4) the effectiveness of sanctions less drastic than dismissal.

*Attkinson*, 925 F.3d at 625 (citations omitted). "Those criteria, however, 'are not a rigid four-prong test.'" *Id*. (citing *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (Powell, J.)). "Rather, the propriety of an involuntary dismissal ultimately depends on 'the facts of each case,' which we review to determine 'whether the trial court exercised sound discretion.'" *Id*. (citations omitted). Here all four factors strongly point to involuntary dismissal with prejudice.

First, Quill bears personal responsibility. As shown in Soto's prior filings, Quill admittedly set up the omegaverselitigation.com website and abused discovery and litigation papers by posting them (Doc. 71 [sealed version Doc. 73] at 6 n.3, 17-18). Quill fired its counsel in an obvious effort to derail and delay deposition discovery and adjudication on the merits (Doc. 71 at 3-6). Quill and its "principal author," Zoey Ellis sat for an interview with the *New York Times* but refused to be deposed in this action (Doc. 71 at 1 & n.1). Quill provided Soto's discovery materials to the *New York Times* (Doc. 71 at 1) despite having been expressly warned by this Court not to do that (Doc. 71 at 6 n.3). And Quill, together with its Texas and Oklahoma counsel, have persistently ignored or violated the rules and orders of the Court—in this action and in the Oklahoma action—for the obvious purpose of inflicting professional and financial harm on Soto (Doc. 71 at 4-8). Quill, under oath, provided deliberately false discovery responses, failed to produce emails and social media communications, and spoliated evidence (Doc. 71 at 8-18). These are not the actions of Quill's former counsel of record—they are actions taken by or at the direction of Quill.

Second, as shown in Soto's prior filings, she has been prejudiced by Quill's dilatory conduct, as well as Quill's haphazard and inadequate discovery responses (Doc. 44, 50, 64, and 71). As happened in Oklahoma, Quill knew it had no damages, and strung out the litigation as long possible to punish Soto for a perceived slight that caused little or no financial injury, and to force Soto to incur enormous litigation expenses. It cannot be gainsaid that Quill has been on a personal vendetta to harass and punish Soto and to inflict enormous legal fees on Soto.

Third, as shown in Soto's sealing motions in connection with her motion to compel (Doc. 51 & 58), Quill has repeatedly trampled upon Soto's privacy interests. Moreover, Quill has actively litigated the case in the press and online, while ignoring its obligations to the Court. In Oklahoma and here, Quill has quixotically pursued untenable claims and unattainable remedies

with no hope of prevailing. In the eighteen months of litigation in Oklahoma and this Court, Quill has refused to produce competent damages discovery—fact or expert—and has otherwise disobeyed its discovery obligations, disregarded the rules, and disregarded the Court's numerous orders (Doc. 71 at 8-11). As the evidence shows, Quill suffered lost sales from the DMCA take-down notices amounting, at most, to a few hundred dollars, not $735,000. It is now obvious that Quill acted with implacable indifference to the rules and orders because it has always intended to pull the ripcord and bail out of this case before trial, just as it did in Oklahoma. Obviously, the sole purpose of this litigation was to punish Soto with litigation expenses and embarrass her in the press and online.

Fourth, no other sanctions are sufficient. The Court has issued a scheduling order (Doc. 38)—which Quill has ignored or disobeyed. The Oklahoma court entered an order compelling Quill to produce damages evidence, which Quill also ignored or disobeyed (Doc. 44 at 4; Doc. 50 at 6-8). Quill provided wholly inadequate discovery responses, forcing Soto to file a motion to compel and an emergency motion to enforce (Doc. 43 & 70). Quill still failed to comply. Quill served untimely and deficient expert disclosures in disregard of the scheduling order, which have been excluded (Doc. 81). Quill litigated its claims in the press and online, while refusing to follow the rules and requirements for litigation in court (Doc. 71 at 1, 6 n.3). Quill's willful, persistent, and deliberate disregard of the rules and orders more than justifies involuntary dismissal of the DMCA claim with prejudice.

Accordingly, the Court can and should dismiss the DMCA claim, with prejudice, under Rule 41(b).

## CONCLUSION

For the reasons argued above and in Soto's motion to enforce, the Court should (a) strike the *Notice* and enter an order under Rule 41(b) dismissing Quill's DMCA claim with prejudice.

June 3, 2020

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*

*Of Counsel for Defendant:*
Shawn M. Dellegar, OBA # 20973
Crowe & Dunlevy, P.C.
321 South Boston Avenue, Sutie 500
Tulsa, Oklahoma 74103
T: (918) 592-9800
E: shawn.dellegar@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

Tynia A. Watson, OBA # 30765
Crowe & Dunlevy, P.C.
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
T: (405) 235-7500
E: tynia.watson@crowedunlevy.com
*Counsel for Defendant (Pro Hac Vice)*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to all counsel of record and to office@quillinkbooks.com.

/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com
*Counsel for Defendant*